HALPERN MAY YBARRA GELBERG LLP
   Marc D. Halpern (CA Bar No. 216426)
   Gwendolyn M. Toczko (CA Bar No. 255984)
   600 West Broadway, Suite 1060
San Diego, California 92101
Telephone: (619) 618-7000
marc.halpern@halpernmay.com
gwendolyn.toczko@halpernmay.com

Attorneys for Plaintiff Viasat Inc.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (SYNDICATES 2623 and 623),<br><br>    Defendants. | CASE NO. '22CV1169 JAH BGS<br><br>**COMPLAINT FOR:**<br>1) **DECLARATORY RELIEF**<br>2) **BREACH OF CONTRACT**<br>3) **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

# INTRODUCTION

1. This coverage and bad faith action addresses the improper delay and denial of coverage by Viasat's insurer, Beazley (aka Lloyd's Syndicates 2623 and 623) for the various losses and liabilities arising from a cyber-attack that impacted Viasat's KA-SAT satellite network and some of its customers.

2. Viasat is a leading provider of high-speed satellite broadband services. To protect against many of the risks associated with its specialized business, including loss or liability resulting from a cyber-attack, Viasat purchased the 2021-2022 Beazley MediaTech policy at issue in this action.

3. The policy expressly provides broad property loss, business interruption and third-party liability coverage for the exact type of cyber-attack at issue – an infiltration of part of the KA-SAT network that rendered inoperable thousands of the specialized modems provided to end-users that serve as their access-points for the Viasat system.

4. However, as Viasat submitted its various claims for coverage under the policy, Beazley either incorrectly denied coverage outright or, for many claims, has allowed many months to pass with Beazley failing or refusing to acknowledge coverage. While the policy retention has long been exhausted, Beazley has yet to pay a single penny of coverage.

5. Accordingly, Viasat has been forced to bring this action to affirm and enforce its coverage rights and obtain the money that is owed from Beazley. Viasat also seeks bad faith damages because of, *inter alia*, Beazley's unreasonable coverage positions and delays.

# THE PARTIES

6. Plaintiff Viasat Inc. ("Viasat") is a Delaware corporation with its principal place of business at all times relevant to this Complaint in California, at 6155 El Camino Real, Carlsbad, CA 92009.

7. Lloyd's of London is comprised of various syndicate and company underwriters who share liability as subscribers to insurance policies issued out of the so-called London market. Such policies typically have multiple subscribers who collectively are responsible for 100 percent of the coverage liability.

8. Defendants Certain Underwriters at Lloyd's London, specifically Syndicate 2623 and Syndicate 623 (together "Beazley"),[1] are the two subscribers to the policy at issue in this action and are together responsible for the insurance afforded by the policy.

9. On information and belief, at all times relevant to this Complaint, each Defendant was authorized to transact and did, in fact, transact the business of insurance in the State of California, as a "non-admitted" or "surplus lines" insurer.

10. On information and belief, all of the members of each Defendant are United Kingdom residents or United Kingdom companies, with principal places of business in the United Kingdom.

# JURISICTION AND VENUE

11. This Complaint has an independent basis of jurisdiction due to the complete diversity of the parties, and because the amount in controversy set forth in this Complaint exceeds $75,000, exclusive of costs. *See* 28 U.S.C. §

---

[1] On information and belief, the two Defendants are sometimes referred to together as Syndicate 2623/623 or as Beazley (such as in the Policy), and are part of the Beazley Group. For simplicity Defendants shall each and together be referred to herein as "Beazley."

1332.

12. Venue is proper in this District under 28 U.S.C. §1391 because jurisdiction is based only upon diversity of citizenship, and a substantial part of the events giving rise to this claim occurred in this District.

13. Beazley also has contractually agreed to submit to the jurisdiction of this Court. In particular, the policy at issue provides that "It is agreed that in the event of the Underwriters' failure to pay any amount claimed to be due under this Insurance, the Underwriters will, at the Insured's request, submit to the jurisdiction of a court of competent jurisdiction within the United States."

## GENERAL ALLEGATIONS

**Viasat's Business**

14. Viasat is a world leader in satellite communications and network services, infrastructure, and technology. One of Viasat's principal business endeavors is providing satellite internet capabilities to customers around the world.

15. Through its wholly-owned subsidiary, Euro Broadband Infrastructure Sàrl ("EBI"), Viasat owns the KA-SAT satellite and associated ground network, which provides satellite internet capabilities throughout Europe and parts of North Africa. The KA-SAT network is operated on Viasat's behalf by an unaffiliated third-party operator, Skylogic..

16. Numerous European internet distributors contract with EBI for the right to provide satellite internet access to their customers using the KA-SAT network. In order to access the network, customers must use specially designed and programmed modems provided to the distributors.

17. Viasat and EBI have various contractual arrangements with distributors by which fees are paid to Viasat for the modems, KA-SAT access and other services.

**The Beazley MediaTech Policy**

18. Beazley sold MediaTech Insurance Policy No. W11051211101 to Viasat, with a policy period of at least October 31, 2021, to October 31, 2022 (the "Policy").[2]

19. At all relevant times, the required premiums have been fully paid for the Policy and the Policy has been in full force and effect.

20. The Policy contains, *inter alia*, several pertinent insuring agreements that provide coverage for Viasat's losses and liabilities arising from a "Security Breach" or "Dependent Security Breach". The term Security Breach in the Policy is defined to include, *inter alia*:

> "a failure of computer security to prevent:
> 1. Unauthorized Access or Use of Computer Systems . . .
> 2. a denial of service attack affecting Computer Systems;
> 3. with respect to coverage under the Liability insuring agreements, a denial of service attack affecting computer systems that are not owned, operated, or controlled by an Insured;
> 4. infection of Computer Systems by malicious code or transmission of malicious code from Computer Systems."

The term Dependent Security Breach in the Policy is defined as "a failure of computer security to prevent a breach of computer systems operated by a Dependent Business."

21. Relevant insuring agreements in the Policy include, among others, "Media, Tech, Data & Network Liability" coverage, under which Beazley

---

[2] The Policy and its terms are incorporated by reference into the allegations of this Complaint. A copy has not been attached due to its volume and also because the document contains certain proprietary and otherwise commercially sensitive information. Each party to this action has a complete copy of the Policy, and a copy can be provided to the Court upon request.

owes defense and indemnity coverage for third-party claims against Viasat arising from various covered alleged wrongful acts, including a Security Breach. This Complaint will refer to the various applicable liability coverage parts as the Policy's "Liability Coverage."

22. Other relevant insuring agreements in the Policy also include, but are not limited to, (1) "First Party Data & Network Loss" which provides coverage for, *inter alia*, business interruption losses resulting from a Security Breach or Dependent Security Breach, (2) "Breach Response" which provides coverage for various other losses and expenses arising from a Security Breach, and (3) Consequential Reputational Loss which covers, *inter alia*, lost income due to reputational damage due to a Security Breach. This Complaint will refer to these and any other applicable first-party coverage parts as the Policy's "First-Party Coverage."

23. The coverages in the Policy are subject to the limits and retention set forth in the Policy.

**The Hacking Incident and Viasat's Losses**

24. On or about February 23, 2022, a security breach occurred on Viasat's KA-SAT network wherein an unknown party (or parties) obtained unauthorized access and took a series of steps that rendered inoperable thousands of the Viasat system modems through Europe. The affected modems could no longer access the KA-SAT network or the internet, and were not readily repairable. The result was the loss of system access for numerous end-user individual and business customers of Viasat's various European distributors. (the "Cyber-Attack").

25. The best available solution has been to get new modems to the distributors and/or end-users, which could then be installed to re-establish system access. Viasat immediately began such efforts to restore connectivity and to mitigate any losses or liabilities. However, the provision and installation of new

modems has sometimes been a difficult exercise, due to supply, transport and other issues. In the interim, Viasat has been unable to provide many distributors the level of satellite network access the distributors were expecting, and Viasat's distributors in turn have been unable to provide their affected customers with the internet access their customers were expecting.

26. Viasat has also engaged in various other Breach Response efforts, such as investigation of the cause and scope of the Cyber-Attack and other measures.

27. Altogether, since late February, the Cyber-Attack has resulted in extensive losses covered by the Policy's First-Party Coverage well in excess of the applicable Policy retention. Some of these losses continue to accrue.

28. Also, in the months following the Cyber-Attack, numerous distributors have made claims against Viasat related to their own alleged losses, alleging, among other things, that Viasat breached its contractual and commercial obligations by failing to provide promised internet services and that Viasat is liable for direct and consequential harm. These claims have resulted in significant defense costs, which continue to accrue. Many of the claims have been settled or are in the process of being settled.

**Viasat's Coverage Claims And Beazley's Failure To Provide The Required Coverage**

29. The Policy provides coverage for Viasat's and its subsidiaries' various losses and liabilities arising from the Cyber-Attack – both under the Policy's Liability Coverage and its First-Party Coverage.

30. Viasat timely provided notice to Beazley of the Cyber-Attack, and indicated that Viasat would be seeking all available coverage including, but not limited to, the losses and liabilities described in the paragraphs above.

31. Thereafter, Viasat began submitting its various losses to Beazley for payment or reimbursement, and tendering all claims against Viasat to

Beazley for defense and indemnity coverage. These specific demands for First-Party Coverage and Liability Coverage began in early March 2022 and continued over the ensuing months through the time of this Complaint. Taken together, all coverage requests and obligations under the Policies concerning the Cyber-Attack will be referred to as the "Coverage Claims."

32. Beazley has agreed to the retention of certain vendors to assist in the response to the Cyber-Attack and has agreed to the retention of various defense counsel for the third-party claims. Beazley also has waived consent objections to settlements of certain third-party claims.

33. However, to date, Beazley has failed and refused to acknowledge coverage for Viasat's losses, liabilities, and defense costs arising from the Cyber-Attack, instead typically contending that Beazley's investigation in on-going. Beazley also has incorrectly denied certain coverage outright.

34. For example, on March 4, 2022, Beazley sent an email to Viasat stating that the Policy would not cover the cost of replacement modems or business interruption losses. To support its denial, Beazley misapprehended facts and misinterpreted various Policy provisions. As just one example, Beazley contended that coverage did not apply because "Viasat's ability to provide services is not impacted" by the Cyber-Attack -- ignoring the obvious impact of the lack of functional modems. Beazley also cited the Policy's inapplicable War and Civil War Exclusion.

35. On March 21, 2022, Viasat responded with an eight-page letter explaining in detail why Beazley's coverage positions were incorrect and why Beazley was obligated to provide coverage under the Policy's Liability Coverage and First Party Coverage.

36. Over the ensuing months, Viasat repeatedly pressed Beazley to confirm whether it would acknowledge and fulfill its coverage obligations. Viasat continued to keep Beazley updated on developments, provided Beazley

detailed information and analysis about the losses and liabilities, and frequently proposed next steps to Beazley.

37. Viasat also responded to Beazley's inquiries on specific coverage issues, in the hope of getting movement or substantive responses. For example, and even though Beazley bears the burden when it comes to policy exclusions, Viasat provided substantial additional information and analysis addressing Beazley's incorrect position that the War and Civil War Exclusion may apply..

38. Viasat also went to great efforts to mitigate its losses and liabilities, through providing replacement modems, making arrangement with distributors, settling claims, and various other measures.

39. However, Beazley failed to reverse its denials as to various First Party Coverage and failed and refused to agree to any of the other coverage demands. Instead, Beazley dragged its feet and feigned that its investigation was ongoing, while implying that Beazley's ultimate answer would be a denial. As to the requests for settlement coverage, Beazley merely responded by waiving any consent obligations, but refused to confirm coverage.

40. Meanwhile, as Viasat incurred defense costs, expenses, and other losses and liabilities arising from the Cyber-Attack, the applicable Policy retention eroded, such that any applicable Policy retentions were fully exhausted by no later than late May 2022.

41. At the time of the filing of this Complaint, Beazley is still failing and/or refusing to acknowledge coverage for the Cyber-Attack, and still has not paid a single penny in coverage for the Cyber-Attack.

42. It has become clear to Viasat that Beazley has no intention of timely or willingly providing the coverage owed under the Policy or responding in good faith to the Coverage Claims.

43. Viasat continues to incur defense costs, expenses, and other

losses and liabilities which Viasat is paying out of pocket even though the Policy retention has been exhausted and coverage payments are owed.

44. Likewise, Viasat is unfairly being forced to make important decisions in the absence of an acknowledgement of coverage and the certainty that Beazley will timely be providing funding.

45. Accordingly, Beazley's delay tactics and improper treatment of the Coverage Claims has begun to significantly prejudice Viasat.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

46. Viasat incorporates the allegations of Paragraphs 1 through 45 of this Complaint, as though fully set forth herein.

47. There presently exists an actual justiciable controversy between Viasat, on the one hand, and Beazley, on the other hand, concerning the existence and extent of Beazley's coverage obligations under the Policy for the Coverage Claims.

48. The controversy between Viasat and Beazley is ripe for judicial review.

49. Accordingly, Viasat seeks a declaration confirming that under the Policy:

(a) Viasat is entitled to coverage from Beazley under the Policy's First Party Coverage provisions for Viasat's various losses relating to the Cyber-Attack including, but not limited to, the cost of new modems, business interruption loss, dependent business interruption loss, breach response costs, and reputation damages.

(b) Viasat is entitled to coverage from Beazley under the Policy's Liability Coverage for the defense and settlement of the distributor and other third-party claims against Viasat relating to the Cyber-Attack.

(c) Beazley's denial of coverage is improper.

(d) Beazley must provide coverage to Viasat for future losses, expenses, defense costs and liabilities arising from the Cyber-Attack.

(e) Beazley is obligated to provide timely and regular payments to Viasat for the Coverage Claims according to a reasonable protocol determined by the Court.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

50. Viasat incorporates the allegations of Paragraphs 1 through 49 of this Complaint, as though fully set forth herein.

51. The Policy is a valid and enforceable contract between Viasat and Beazley.

52. Beazley has coverage obligations for the Coverage Claims under the terms of the Policies.

53. Viasat has performed each and every material obligation imposed upon it by the Policy in order to obtain full coverage for the Coverage Claims, except to the extent such performance was either prevented or excused by Beazley.

54. All other applicable conditions or prerequisites pertaining to the Coverage Claims under the Policy, if any, have been satisfied.

55. Nonetheless, Beazley has denied or otherwise has failed to provide the coverage owed to Viasat for the Coverage Claims, including having failed to make payments of monies owed to Viasat under the Policy terms.

56. As a direct and proximate result of these breaches, Viasat has suffered and continues to suffer damages, comprised of the coverage owed by Beazley under the Policy for the Coverage Claims.

57. Because Beazley was at all relevant times a non-admitted foreign insurer which has failed for more than 30 days after demand prior to the

commencement of this action to make payment in accordance with the Policy, and because Beazley's refusal was vexatious and without reasonable cause, as alleged through the Complaint and in the Third Cause of Action below, Viasat also is entitled to recover reasonable attorney's fees in accordance with California Insurance Code §1619.

### THIRD CAUSE OF ACTION
### (Bad Faith)

58. Viasat incorporates the allegations of Paragraphs 1 through 57 of this Complaint, as though fully set forth herein.

59. The Policy contains an implied covenant by Beazley, and associated duty, that Beazley will act in good faith and deal fairly with Viasat and that Beazley would do nothing to interfere with the rights of Viasat to receive the benefits of the Policy.

60. Beazley's improper efforts to delay or avoid its obligations with respect to the Coverage Claims is unreasonable and constitutes bad faith.

61. This conduct includes, among other things, the improper actions and inactions described throughout this Complaint – such as delaying or refusing to provide a definitive coverage position while effectively denying coverage, taking unreasonable positions to avoid or delay coverage obligations, and improperly denying claims without reasonable basis.

62. In so doing, Beazley has also improperly put its own financial interests above the interests of its policyholder, and ignored Beazley's obligations to its policyholder.

63. Beazley has also done all of this with the clear intention of avoiding or delaying its obligations.  As a result, Beazley's bad faith conduct was also willful and malicious.

64. By these actions and inactions, Beazley has breached the covenants of good faith and fair dealing with respect to the Policy and has conducted itself tortiously in bad faith.

65. As a direct and proximate result of the above-referenced bad faith, Plaintiff has suffered and will continue to suffer damages. These damages include Viasat's attorney's fees in prosecuting this action, as well as special damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Viasat prays for judgment as follows:

(a) On the First Cause of Action, for a judicial declaration adopting each of Viasat's contentions set forth in the above Cause of Action for Declaratory Relief, and providing such further guidance as to the parties' respective rights and obligations under the Policy as useful to fully resolve the parties' disputes regarding the Coverage Claims and the Policy;

(b) On the Second Cause of Action, for an order and declaration that Beazley has breached its obligations to Viasat under the Policy with respect to each of the Coverage Claims, and awarding compensatory damages in the amount of all unpaid portions of the Coverage Claims, further compensatory and/or consequential damages as may be proven at trial, and reasonable attorney's fees pursuant to California Insurance Code §1619.

(c) On the Third Cause of Action, for an order and declaration that Beazley breached its duty of good faith and fair dealing under the Policy with respect to the Coverage Claims, and awarding compensatory damages in an amount to be proven at trial, including attorney's fees, expenses and costs prosecuting the other causes of action in this lawsuit, and awarding such consequential, exemplary and/or punitive damages as may be available and appropriate in amounts to be proven at trial.

(d) On all Causes of Action, for an award of Viasat's costs of suit incurred herein, for an award of all legally available interest, and for such other and further relief as the Court may deem just and proper.

Dated:  August 9, 2022

HALPERN MAY YBARRA GELBERG LLP
  Marc D. Halpern
  Gwendolyn M. Toczko


By:  s/ Marc D. Halpern
  Marc D. Halpern
  Attorneys for Plaintiff Viasat Inc.

## JURY TRIAL DEMAND

Plaintiff Viasat Inc. demands a trial by jury.

Dated: August 9, 2022         HALPERN MAY YBARRA GELBERG LLP
                              Marc D. Halpern
                              Gwendolyn M Toczko

                              By: _s/ Marc D. Halpern_
                                  Marc D. Halpern
                              Attorneys for Plaintiff Viasat Inc.