# EXHIBIT 1

Exhibit 1 | Page 3



# Beazley MediaTech

**THIS POLICY'S LIABILITY INSURING AGREEMENTS PROVIDE COVERAGE ON A CLAIMS MADE AND REPORTED BASIS AND APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENSION PERIOD (IF APPLICABLE) AND REPORTED TO THE UNDERWRITERS IN ACCORDANCE WITH THE TERMS OF THIS POLICY. AMOUNTS INCURRED AS CLAIMS EXPENSES UNDER THIS POLICY WILL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO RETENTIONS.**

These Declarations along with the statements contained in the information and materials provided to the Underwriters in connection with the underwriting and issuance of this Policy, and the Policy with endorsements shall constitute the contract between the **Insureds** and the Underwriters.

| GENERAL INFORMATION | |
|---|---|
| **Insurer/Underwriter:** | Syndicate 2623/623 at Lloyd's. |
| **Authority Reference Number:** | B6012BUSANMSL2101 |
| **Named Insured:** | ViaSat, Inc. |
| **Named Insured Address:** | 6155 El Camino Real<br>Carlsbad, CA 92009 |
| **Notice of Claim, Loss or Circumstance:** | Beazley Group<br>Attn: Cyber & Tech Claims Group<br>45 Rockefeller Plaza, 16th floor<br>New York, NY 10111<br>cyber&techclaims@beazley.com |
| **Administrative Notice:** | Beazley USA Services, Inc.<br>30 Batterson Park Road<br>Farmington, CT 06032<br>Tel: (860) 677-3700<br>Fax: (860) 679-0247 |

F00730
022019 ed.
Date Issued: 30-Nov-2021 11:02:46 AM

Page 1 of 5

Exhibit 1 | Page 4

## POLICY INFORMATION

| | |
|---|---|
| **Policy Number:** | W11051211101 |
| **Policy Form:** | Beazley MediaTech (F00731 022019 ed.) |
| **Policy Period:** | From: 31-Oct-2021          To: 31-Oct-2022 |
| | Both at 12:01 AM Local Time at the Named Insured Address |
| **Retroactive Date:** | Full Prior Acts |
| **Continuity Date:** | 30-Sep-2010 |
| **Optional Extension Period:** | 12 Months |
| **Optional Extension Premium:** | 100% of the Annual Policy Premium |
| **Waiting Period:** | 10 Hours |
| **Premium:** | █████ |

F00730
022019 ed.
Date Issued: 30-Nov-2021 11:02:46 AM

Page 2 of 5

Exhibit 1 | Page 5

| COVERAGE SCHEDULE (Currency in USD) | | |
|---|---|---|
| | **Limit** | **Retention** |
| **Policy Aggregate Limit of Liability:** | $10,000,000 | |
| **Media, Tech, Data & Network Liability** | | |
| Tech & Professional Services: | $10,000,000 | each Claim $1,500,000 |
| Tech Product: | $10,000,000 | each Claim $1,500,000 |
| Media: | $10,000,000 | each Claim $1,500,000 |
| Data & Network: | $10,000,000 | each Claim $1,500,000 |
| **Breach Response** | | |
| Breach Response Costs: | $10,000,000 | each incident $1,500,000 |
| **Regulatory Defense & Penalties** | | |
| Regulatory Defense & Penalties: | $10,000,000 | each Claim $1,500,000 |
| **Payment Card Liabilities & Costs** | | |
| Payment Card Liabilities & Costs: | $10,000,000 | each Claim $1,500,000 |
| **First Part Data & Network Loss** | | |
| Business Interruption Loss: | | |
| *Resulting from Security Breach:* | $10,000,000 | each incident $1,500,000 |
| *Resulting from System Failure:* | $10,000,000 | each incident $1,500,000 |
| Dependent Business Loss: | | |
| *Resulting from Dependent Security Breach:* | $5,000,000 | each incident $1,500,000 |
| *Resulting from Dependent System Failure:* | $1,000,000 | each incident $1,500,000 |
| Cyber Extortion Loss: | $10,000,000 | each incident $1,500,000 |
| Data Recovery Costs: | $10,000,000 | each incident $1,500,000 |
| **eCrime** | | |
| Fraudulent Instruction: | $100,000 | each loss $1,500,000 |
| Funds Transfer Fraud: | $250,000 | each loss $1,500,000 |
| Telephone Fraud: | $250,000 | each loss $1,500,000 |
| **Criminal Reward** | | |
| Criminal Reward: | $50,000 | |

F00730
022019 ed.
Date Issued: 30-Nov-2021 11:02:46 AM

Page 3 of 5

Exhibit 1 | Page 6

## ENDORSEMENTS EFFECTIVE AT INCEPTION

| | | |
|---|---|---|
| 1. | BSLMUNMA2868 | Lloyd's Certificate - No policy language |
| 2. | SCHEDULE2021 | Lloyd's Security Schedule 2021 |
| 3. | LMA9099A | CA Surplus Lines Disclosure Statement (Pre Bind) |
| 4. | LMA9098A | CA Surplus Lines Notice (Post Bind) |
| 5. | NMA1256 | Nuclear Incident Exclusion Clause-Liability-Direct (Broad) (U.S.A.) |
| 6. | NMA1477 | Radioactive Contamination Exclusion Clause-Liability-Direct (U.S.A.) |
| 7. | E02804 032011 ed. | Sanction Limitation and Exclusion Clause |
| 8. | E10596 122019 ed. | Choice of Law and Service of Suit |
| 9. | E12287 022019 ed. | Asbestos, Pollution, and Contamination Exclusion Endorsement |
| 10. | E12254 022019 ed. | War and Civil War Exclusion |
| 11. | E12266 022019 ed. | Amend Definition of Fraudulent Instruction |
| 12. | E12289 022019 ed. | Computer Hardware Replacement Cost |
| 13. | E12972 052019 ed. | CryptoJacking Endorsement |
| 14. | E12269 022019 ed. | GDPR Cyber Endorsement |
| 15. | E12240 022019 ed. | Amend Definition of Control Group |
| 16. | E12242 022019 ed. | Amend Definition of Subsidiary |
| 17. | E13062 062019 ed. | Amend Definition of Tech Services Endorsement |
| 18. | E12277 022019 ed. | Amend Notice of Circumstance (Compliance with Law Enforcement) |
| 19. | E12279 022019 ed. | Amend Notice of Claim or Loss |
| 20. | E12233 022019 ed. | Amend Notice of Claim or Loss |
| 21. | E12986 052019 ed. | Amend Representation By The Insured |
| 22. | E12980 052019 ed. | Amend Settlement  Of Claims |
| 23. | E12261 022019 ed. | Consequential Reputational Loss |
| 24. | E12293 022019 ed. | Invoice Manipulation Coverage |
| 25. | E12231 022019 ed. | Optional Extension Period and Optional Extension Premium |
| 26. | E12631 022019 ed. | Other Insurance Clause - Primary With Respect to First Party Loss |
| 27. | E12716 022019 ed. | Post Breach Remedial Services Endorsement |
| 28. | E13373 092019 ed. | State Consumer Privacy Statutes Endorsement |
| 29. | E12299 022019 ed. | Territory |
| 30. | EVS029 112019 ed. | ViaSat Amendatory Endorsement |
| 31. | E12971 052019 ed. | Voluntary Shutdown Coverage |

F00730
022019 ed.
Date Issued: 30-Nov-2021 11:02:46 AM

Page 4 of 5

Exhibit 1 | Page 7

Dated:    30-Nov-2021

At:      30 Batterson Park Road
          Farmington
          Connecticut 06032
          (the office of the Correspondent)

by _____

Beazley USA Services, Inc. (Correspondent)

F00730
022019 ed.
Date Issued: 30-Nov-2021 11:02:46 AM

Page 5 of 5

Exhibit 1 | Page 8



# Beazley MediaTech

## TABLE OF CONTENTS

### INSURING AGREEMENTS    1

Media, Tech, Data & Network Liability .......................1
Breach Response .........................................................1
Regulatory Defense & Penalties ................................1
Payment Card Liabilities & Costs ..............................1
First Party Data & Network Loss ...............................2
eCrime ...........................................................................2
Criminal Reward ..........................................................2

### DEFINITIONS    2

Additional Insured ......................................................2
Breach Notice Law ......................................................3
Breach Response Costs .............................................3
Business Interruption Loss ........................................3
Claim ..............................................................................4
Claims Expenses .........................................................4
Computer Systems ......................................................4
Continuity Date ............................................................5
Control Group ...............................................................5
Criminal Reward Funds ..............................................5
Cyber Extortion Loss ..................................................5
Damages .......................................................................5
Data ...............................................................................6
Data Breach .................................................................6
Data & Network Wrongful Act ....................................6
Data Recovery Costs ..................................................6
Dependent Business ...................................................6
Dependent Business Loss ..........................................6
Dependent Security Breach ........................................7
Dependent System Failure .........................................7
Digital Currency ...........................................................7
Extortion Payment .......................................................7
Extortion Threat ...........................................................7
Extra Expense ..............................................................7
Financial Institution ....................................................7
Forensic Expenses ......................................................8
Fraudulent Instruction ................................................8
Funds Transfer Fraud ..................................................8
Income Loss .................................................................9
Individual Contractor ..................................................9
Insured ..........................................................................9
Insured Organization ................................................10
Loss ..............................................................................10
Media Activities .........................................................10
Media Material ...........................................................10
Media Wrongful Act ..................................................10
Merchant Services Agreement ................................11
Money ..........................................................................11
Named Insured ..........................................................11
PCI Fines Expenses and Costs ...............................11
Penalties .....................................................................11
Period of Restoration ...............................................11
Personally Identifiable Information .........................12
Policy Period ..............................................................12
Privacy Policy ............................................................12
Privacy Policy Violation ...........................................12
Professional Services ...............................................12
Regulatory Proceeding .............................................13
Retroactive Date ........................................................13
Securities ....................................................................13
Security Breach .........................................................13

Subsidiary ...................................................................13
System Failure ...........................................................13
Tech Products ............................................................14
Tech & Professional Services Wrongful Act ..........14
Tech Product Wrongful Act ......................................14
Tech Services .............................................................14
Telephone Fraud ........................................................14
Third Party Information .............................................14
Transfer Account .......................................................14
Unauthorized Access or Use ...................................14
Unauthorized Disclosure ..........................................14
Waiting Period ............................................................15

### EXCLUSIONS    15

Bodily Injury or Property Damage ...........................15
Deceptive Business Practices, Antitrust &
Consumer Protection ................................................15
Distribution of Information ........................................15
Prior Known Acts & Prior Noticed Claims .............15
Racketeering, Benefit Plans, Employment
Liability & Discrimination .........................................16
Sale or Ownership of Securities & Violation of
Securities Laws .........................................................16
Criminal, Intentional or Fraudulent Acts ................16
Patent & Misappropriation of Information ..............16
Governmental Actions ...............................................17
Other Insureds & Related Enterprises ....................17
Trading Losses & Loss of Money ............................17
Contractual .................................................................17
Retroactive Date ........................................................17
Recall ...........................................................................18
Infrastructure Failure ................................................18
Licensing Bodies & Joint Ventures .........................18
Over-Redemption .......................................................18
First Party Data & Network Loss .............................18

### LIMIT OF LIABILITY AND COVERAGE    19

### RETENTIONS    19

### OPTIONAL EXTENSION PERIOD    19

### GENERAL CONDITIONS    20

Notice of Claim or Loss ............................................20
Beazley Breach Response Services .........................20
Notice of Circumstance ............................................21
Defense of Claims .....................................................21
Settlement of Claims .................................................22
Assistance and Cooperation ....................................22
Subrogation ................................................................23
Other Insurance .........................................................23
Action Against the Underwriters ..............................23
Entire Agreement .......................................................23
Mergers or Consolidations .......................................23
Assignment .................................................................24
Cancellation ...............................................................24
Singular Form of a Word ...........................................24
Headings .....................................................................24
Representation by the Insured ..................................24
Named Insured As Agent ..........................................24



# Beazley MediaTech

**THIS POLICY'S LIABILITY INSURING AGREEMENTS PROVIDE COVERAGE ON A CLAIMS MADE AND REPORTED BASIS AND APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENSION PERIOD (IF APPLICABLE) AND REPORTED TO THE UNDERWRITERS IN ACCORDANCE WITH THE TERMS OF THIS POLICY. AMOUNTS INCURRED AS CLAIMS EXPENSES UNDER THIS POLICY WILL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO RETENTIONS.**

Please refer to the Declarations, which show the insuring agreements that the **Named Insured** purchased. If an insuring agreement has not been purchased, coverage under that insuring agreement of this Policy will not apply.

The Underwriters agree with the **Named Insured**, in consideration of the payment of the premium and reliance upon the statements contained in the information and materials provided to the Underwriters in connection with the underwriting and issuance of this Insurance Policy (hereinafter referred to as the "Policy") and subject to all the provisions, terms and conditions of this Policy:

## INSURING AGREEMENTS

### Media, Tech, Data & Network Liability

To pay **Damages** and **Claims Expenses**, which the **Insured** is legally obligated to pay because of any **Claim** first made against any **Insured** during the **Policy Period** for a:

1.  **Tech & Professional Services Wrongful Act**;

2.  **Tech Product Wrongful Act**;

3.  **Media Wrongful Act**; or

4.  **Data & Network Wrongful Act**.

### Breach Response

To indemnify the **Insured Organization** for **Breach Response Costs** incurred by the **Insured Organization** because of an actual or reasonably suspected **Data Breach** or **Security Breach** that the **Insured** first discovers during the **Policy Period**.

### Regulatory Defense & Penalties

To pay **Penalties** and **Claims Expenses**, which the **Insured** is legally obligated to pay because of a **Regulatory Proceeding** first made against any **Insured** during the **Policy Period** for a **Data Breach** or a **Security Breach**.

### Payment Card Liabilities & Costs

To indemnify the **Insured Organization** for **PCI Fines, Expenses and Costs** which it is legally obligated to pay because of a **Claim** first made against any **Insured** during the **Policy Period**.

### First Party Data & Network Loss

To indemnify the **Insured Organization** for:

*Business Interruption Loss*

> **Business Interruption Loss** that the **Insured Organization** sustains as a result of a **Security Breach** or **System Failure** that the **Insured** first discovers during the **Policy Period**.

*Dependent Business Interruption Loss*

> **Dependent Business Loss** that the **Insured Organization** sustains as a result of a **Dependent Security Breach** or a **Dependent System Failure** that the **Insured** first discovers during the **Policy Period**.

*Cyber Extortion Loss*

> **Cyber Extortion Loss** that the **Insured Organization** incurs as a result of an **Extortion Threat** first made against the **Insured Organization** during the **Policy Period**.

*Data Recovery Costs*

> **Data Recovery Costs** that the **Insured Organization** incurs as a direct result of a **Security Breach** or **System Failure** that the **Insured** first discovers during the **Policy Period**.

### eCrime

To indemnify the **Insured Organization** for any direct financial loss sustained resulting from:

1. **Fraudulent Instruction**;

2. **Funds Transfer Fraud**; or

3. **Telephone Fraud**;

that the **Insured** first discovers during the **Policy Period**.

### Criminal Reward

To indemnify the **Insured Organization** for **Criminal Reward Funds**.

## DEFINITIONS

**Additional Insured** means any person or entity that the **Insured Organization** has agreed in writing to add as an **Additional Insured** under this Policy prior to the commission of any act for which such person or entity would be provided coverage under this Policy, but only to the extent the **Insured Organization** would have been liable and coverage would have been afforded under the terms and conditions of this Policy had such **Claim** been made against the **Insured Organization**.

**Breach Notice Law** means any statute or regulation that requires notice to persons whose personal information was accessed or reasonably may have been accessed by an unauthorized person. **Breach Notice Law** also includes any statute or regulation requiring notice of a **Data Breach** to be provided to governmental or regulatory authorities.

**Breach Response Costs** means the following fees and costs incurred by the **Insured Organization** with the Underwriters' prior written consent in response to an actual or reasonably suspected **Data Breach** or **Security Breach**:

1.      for an attorney to provide necessary legal advice to the **Insured Organization** to evaluate its obligations pursuant to **Breach Notice Laws** or a **Merchant Services Agreement**;

2.      for a computer security expert to determine the existence, cause and scope of an actual or reasonably suspected **Data Breach**, and if such **Data Breach** is actively in progress on the **Insured Organization's Computer Systems**, to assist in containing it;

3.      for a PCI Forensic Investigator to investigate the existence and extent of an actual or reasonably suspected **Data Breach** involving payment card data and for a Qualified Security Assessor to certify and assist in attesting to the **Insured Organization's** PCI compliance, as required by a **Merchant Services Agreement**;

4.      to notify those individuals whose **Personally Identifiable Information** was potentially impacted by a **Data Breach**;

5.      to provide a call center to respond to inquiries about a **Data Breach**;

6.      to provide a credit monitoring, identity monitoring or other personal fraud or loss prevention solution, to be approved by the Underwriters, to individuals whose **Personally Identifiable Information** was potentially impacted by a **Data Breach**; and

7.      public relations and crisis management costs directly related to mitigating harm to the **Insured Organization** which are approved in advance by the Underwriters in their discretion.

    **Breach Response Costs** will not include any internal salary or overhead expenses of the **Insured Organization**.

**Business Interruption Loss** means:

1.      **Income Loss**;

2.      **Forensic Expenses**; and

3.      **Extra Expense**;

    actually sustained during the **Period of Restoration** as a result of the actual interruption of the **Insured Organization's** business operations caused by a **Security Breach** or **System Failure**. Coverage for **Business Interruption Loss** will apply only after the **Waiting Period** has elapsed.

**Business Interruption Loss** will not include (i) loss arising out of any liability to any third party; (ii) legal costs or legal expenses; (iii) loss incurred as a result of unfavorable business conditions; (iv) loss of market or any other consequential loss; (v) **Dependent Business Loss**; or (vi) **Data Recovery Costs**.

**Claim** means:

1. a written demand received by any **Insured** for money, services, or any non-monetary or injunctive relief;

2. a written request for mediation or arbitration received by any **Insured**;

3. a civil proceeding against any **Insured** commenced by service of a complaint or similar proceeding;

4. a written request to toll or waive any applicable statute of limitations;

5. with respect to coverage provided under the Regulatory Defense & Penalties insuring agreement only, institution of a **Regulatory Proceeding** against any **Insured**; and

Multiple **Claims** arising from the same or a series of related, repeated or continuing acts, errors, omissions or events will be considered a single **Claim** for the purposes of this Policy. All such **Claims** will be deemed to have been made at the time of the first such **Claim**.

**Claims Expenses** means:

1. all reasonable and necessary legal costs and expenses resulting from the investigation, defense and appeal of a **Claim**, if incurred by the Underwriters, or by the **Insured** with the prior written consent of the Underwriters; and

2. the premium cost for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation; provided the Underwriters will have no obligation to appeal or to obtain bonds.

**Claims Expenses** will not include any salary, overhead, or other charges by the **Insured** for any time spent in cooperating in the defense and investigation of any **Claim**, or costs to comply with any regulatory orders, settlements or judgments.

**Computer Systems** means computers, any software residing on such computers and any associated devices or equipment (including computers, hardware, software and input and output devices which are part of an industrial control system, including a supervisory control and data acquisition (SCADA) system):

1. operated by and either owned by or leased to the **Insured Organization**; or

2. with respect to coverage under Part 4. of the Media, Tech, Data & Network Liability insuring agreement, as well as the Breach Response, Regulatory Defense & Penalties and Payment Card Liabilities & Costs insuring agreements, operated by a third party pursuant to written contract with the **Insured Organization** and used for the purpose of providing hosted computer application services to the **Insured Organization** or for processing, maintaining, hosting or storing the **Insured Organization's** electronic data.

**Continuity Date** means:

1.    the Continuity Date listed in the Declarations; and

2.    with respect to any **Subsidiaries** acquired after the Continuity Date listed in the Declarations, the date the **Named Insured** acquired such **Subsidiary**.

**Control Group** means any principal, partner, corporate officer, director, general counsel (or most senior legal counsel) or risk manager of the **Insured Organization** and any individual in a substantially similar position.

**Criminal Reward Funds** means any amount offered and paid by the **Insured Organization** with the Underwriters' prior written consent for information that leads to the arrest and conviction of any individual(s) committing or trying to commit any illegal act related to any coverage under this Policy; but will not include any amount based upon information provided by the **Insured**, the **Insured's** auditors or any individual hired or retained to investigate the illegal acts.  All **Criminal Reward Funds** offered pursuant to this Policy must expire no later than 6 months following the end of the **Policy Period**.

**Cyber Extortion Loss** means:

1.    any **Extortion Payment** that has been made by or on behalf of the **Insured Organization** with the Underwriters' prior written consent to prevent or terminate an **Extortion Threat**; and

2.    reasonable and necessary expenses incurred by the **Insured Organization** with the Underwriters' prior written consent to prevent or respond to an **Extortion Threat**.

**Damages** means a monetary judgment, award or settlement, including any award of prejudgment or post-judgment interest. With the prior written consent of the Underwriters, **Damages** also include the direct net cost of providing any future service credits offered by the **Insured Organization** in lieu of a monetary payment.

**Damages** will not include:

1.    future profits, restitution, disgorgement of unjust enrichment or profits by an **Insured**, or the costs of complying with orders granting injunctive or equitable relief;

2.    return or offset of fees, charges or commissions charged by or owed to an **Insured** for goods or services already provided or contracted to be provided;

3.    taxes or loss of tax benefits;

4.    fines, sanctions or penalties against any **Insured**;

5.    punitive or exemplary damages or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

6.    discounts, coupons, prizes, awards or other incentives offered to the **Insured's** customers or clients;

7.   liquidated damages, but only to the extent that such damages exceed the amount for which the **Insured** would have been liable in the absence of such liquidated damages agreement;

8.   fines, costs or other amounts an **Insured** is responsible to pay under a **Merchant Services Agreement**; or

9.   any amounts for which the **Insured** is not liable, or for which there is no legal recourse against the **Insured**.

**Data** means any software or electronic data that exists in **Computer Systems** and that is subject to regular back-up procedures.

**Data Breach** means the theft, loss, or **Unauthorized Disclosure** of **Personally Identifiable Information** or **Third Party Information** that is in the care, custody or control of the **Insured Organization** or a third party for whose theft, loss or **Unauthorized Disclosure** of **Personally Identifiable Information** or **Third Party Information** the **Insured Organization** is liable.

**Data & Network Wrongful Act** means:

1.   a **Data Breach**;

2.   a **Security Breach**;

3.   failure to timely disclose a **Data Breach** or **Security Breach**; or

4.   a **Privacy Policy Violation**.

**Data Recovery Costs** means the reasonable and necessary costs incurred by the **Insured Organization** to regain access to, replace, or restore **Data**, or if **Data** cannot reasonably be accessed, replaced, or restored, then the reasonable and necessary costs incurred by the **Insured Organization** to reach this determination.

**Data Recovery Costs** will not include: (i) the monetary value of profits, royalties, or lost market share related to **Data**, including but not limited to trade secrets or other proprietary information or any other amount pertaining to the value of **Data**; (ii) legal costs or legal expenses; (iii) loss arising out of any liability to any third party; or (iv) **Cyber Extortion Loss**.

**Dependent Business** means any entity that is not a part of the **Insured Organization** but which provides necessary products or services to the **Insured Organization** pursuant to a written contract.

**Dependent Business Loss** means:

1.   **Income Loss**; and

2.   **Extra Expense**;

actually sustained during the **Period of Restoration** as a result of an actual interruption of the **Insured Organization's** business operations caused by a **Dependent Security Breach** or **Dependent System Failure**.  Coverage for **Dependent Business Loss** will apply only after the **Waiting Period** has elapsed.

**Dependent Business Loss** will not include (i) loss arising out of any liability to any third party; (ii) legal costs or legal expenses; (iii) loss incurred as a result of unfavorable business conditions; (iv) loss of market or any other consequential loss; (v) **Business Interruption Loss**; or (vi) **Data Recovery Costs**.

**Dependent Security Breach** means a failure of computer security to prevent a breach of computer systems operated by a **Dependent Business**.

**Dependent System Failure** means an unintentional and unplanned interruption of computer systems operated by a **Dependent Business**.

**Dependent System Failure** will not include any interruption of computer systems resulting from (i) a **Dependent Security Breach**, or (ii) the interruption of computer systems that are not operated by a **Dependent Business**.

**Digital Currency** means a type of digital currency that:

1. requires cryptographic techniques to regulate the generation of units of currency and verify the transfer thereof;

2. is both stored and transferred electronically; and

3. operates independently of a central bank or other central authority.

**Extortion Payment** means **Money**, **Digital Currency**, marketable goods or services demanded to prevent or terminate an **Extortion Threat**.

**Extortion Threat** means a threat to:

1. alter, destroy, damage, delete or corrupt **Data**;

2. perpetrate the **Unauthorized Access or Use** of **Computer Systems**;

3. prevent access to **Computer Systems** or **Data**;

4. steal, misuse or publicly disclose **Data**, **Personally Identifiable Information** or **Third Party Information**;

5. introduce malicious code into **Computer Systems** or to third party computer systems from **Computer Systems**; or

6. interrupt or suspend **Computer Systems**;

unless an **Extortion Payment** is received from or on behalf of the **Insured Organization**.

**Extra Expense** means reasonable and necessary expenses incurred by the **Insured Organization** during the **Period of Restoration** to minimize, reduce or avoid **Income Loss**, over and above those expenses the **Insured Organization** would have incurred had no **Security Breach**, **System Failure**, **Dependent Security Breach** or **Dependent System Failure** occurred.

**Financial Institution** means a bank, credit union, saving and loan association, trust company or other licensed financial service, securities broker-dealer, mutual fund, or liquid assets fund or similar investment company where the **Insured Organization** maintains a bank account.

**Forensic Expenses** means reasonable and necessary expenses incurred by the **Insured Organization** to investigate the source or cause of a **Business Interruption Loss**.

**Fraudulent Instruction** means the transfer, payment or delivery of **Money** or **Securities** by an **Insured** as a result of fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions provided by a third party, that is intended to mislead an **Insured** through the misrepresentation of a material fact which is relied upon in good faith by such **Insured**.

> **Fraudulent Instruction** will not include loss arising out of:
>
> 1. fraudulent instructions received by the **Insured** which are not first authenticated via a method other than the original means of request to verify the authenticity or validity of the request;
>
> 2. any actual or alleged use of credit, debit, charge, access, convenience, customer identification or other cards;
>
> 3. any transfer involving a third party who is not a natural person **Insured**, but had authorized access to the **Insured's** authentication mechanism;
>
> 4. the processing of, or the failure to process, credit, check, debit, personal identification number debit, electronic benefit transfers or mobile payments for merchant accounts;
>
> 5. accounting or arithmetical errors or omissions, or the failure, malfunction, inadequacy or illegitimacy of any product or service;
>
> 6. any liability to any third party, or any indirect or consequential loss of any kind;
>
> 7. any legal costs or legal expenses; or
>
> 8. proving or establishing the existence of **Fraudulent Instruction**.

**Funds Transfer Fraud** means the loss of **Money** or **Securities** contained in a **Transfer Account** at a **Financial Institution** resulting from fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a third party issued to a **Financial Institution** directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by the **Insured Organization** at such institution, without the **Insured Organization's** knowledge or consent.

> **Funds Transfer Fraud** will not include any loss arising out of:
>
> 1. the type or kind covered by the **Insured Organization's** financial institution bond or commercial crime policy;
>
> 2. any actual or alleged fraudulent, dishonest or criminal act or omission by, or involving, any natural person **Insured**;
>
> 3. any indirect or consequential loss of any kind;
>
> 4. punitive, exemplary or multiplied damages of any kind or any fines, penalties or loss of any tax benefit;
>
> 5. any liability to any third party, except for direct compensatory damages arising directly from **Funds Transfer Fraud**;

6.      any legal costs or legal expenses; or proving or establishing the existence of **Funds Transfer Fraud**;

7.      the theft, disappearance, destruction of, unauthorized access to, or unauthorized use of confidential information, including a PIN or security code;

8.      any forged, altered or fraudulent negotiable instruments, securities, documents or instructions; or

9.      any actual or alleged use of credit, debit, charge, access, convenience or other cards or the information contained on such cards.

**Income Loss** means an amount equal to:

1.      net profit or loss before interest and tax that the **Insured Organization** would have earned or incurred; and

2.      continuing normal operating expenses incurred by the **Insured Organization** (including payroll), but only to the extent that such operating expenses must necessarily continue during the **Period of Restoration**.

**Individual Contractor** means any natural person who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement with the **Insured Organization**. The status of an individual as an **Individual Contractor** will be determined as of the date of an alleged act, error or omission by any such **Individual Contractor**.

**Insured** means:

1.      the **Insured Organization**;

2.      any director or officer of the **Insured Organization**, but only with respect to the performance of his or her duties as such on behalf of the **Insured Organization**;

3.      an employee (including a part time, temporary, leased or seasonal employee or volunteer) or **Individual Contractor** of the **Insured Organization**, but only for work done while acting within the scope of his or her employment and related to the conduct of the **Insured Organization's** business;

4.      a principal if the **Named Insured** is a sole proprietorship, or a partner if the **Named Insured** is a partnership, but only with respect to the performance of his or her duties as such on behalf of the **Insured Organization**;

5.      any person who previously qualified as an **Insured** under parts 2. through 4., but only with respect to the performance of his or her duties as such on behalf of the **Insured Organization**;

6.      an **Additional Insured**, but only as respects **Claims** against such person or entity for acts, errors or omissions of the **Insured Organization**;

7.      the estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this Policy; and

8.     the lawful spouse, including any natural person qualifying as a domestic partner of any **Insured**, but solely by reason of any act, error or omission of an **Insured** other than such spouse or domestic partner.

**Insured Organization** means the **Named Insured** and any **Subsidiaries**.

**Loss** means **Breach Response Costs**, **Business Interruption Loss**, **Claims Expenses**, **Criminal Reward Funds**, **Cyber Extortion Loss**, **Damages**, **Data Recovery Costs**, **Dependent Business Loss**, **PCI Fines, Expenses and Costs**, **Penalties**, loss covered under the eCrime insuring agreement and any other amounts covered under this Policy.

Any **Loss** arising from the same or a series of related, repeated or continuing acts, errors, omissions, incidents or events will be considered a single **Loss** for the purposes of this Policy.

With respect to the Breach Response and First Party Data & Network Loss insuring agreements, all acts, errors, omissions, incidents or events (or series of related, repeated or continuing acts, errors, omissions, incidents or events) giving rise to **Loss** in connection with such insuring agreements will be deemed to have been discovered at the time the first such act, error, omission, incident or event is discovered.

**Media Activities** means creating, displaying, broadcasting, disseminating or releasing **Media Material** by or on behalf of the **Insured Organization** to the public, including any blog, webcasts, websites, broadcast or cable stations, or social media web pages, created and maintained by or on behalf of the **Insured Organization**.

**Media Material** means any information, including words, sounds, numbers, images or graphics, but will not include computer software or the actual goods, products or services described, illustrated or displayed in such **Media Material**.

**Media Wrongful Act** means one or more of the following acts committed on or after the **Retroactive Date** and before the end of the **Policy Period** in the course of the **Insured Organization's** performance of **Media Activities**, **Professional Services** or **Tech Services**:

1.     defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;

2.     a violation of the rights of privacy of an individual, including false light, intrusion upon seclusion and public disclosure of private facts;

3.     invasion or interference with an individual's right of publicity, including misappropriation of any name, persona, voice or likeness for commercial advantage;

4.     false arrest, detention or imprisonment;

5.     invasion of or interference with any right to private occupancy, including trespass, wrongful entry or wrongful eviction;

6.     plagiarism, piracy or misappropriation of ideas under implied contract;

7.     infringement of copyright;

8.      infringement of trade dress, domain name, title or slogan, or the dilution or infringement of trademark or service mark, or improper deep-linking or framing or infringement of domain name including cybersquatting violations;

9.      negligence regarding the content of any **Media Activities**, including harm caused through any reliance or failure to rely upon such content;

10.     misappropriation of a trade secret;

11.     unfair competition including a violation of Section 43(a) of the Lanham Act, but only if alleged in conjunction with and arising out of any of the acts listed in paragraphs 7. or 8. above.

**Merchant Services Agreement** means any agreement between an **Insured** and a financial institution, credit/debit card company, credit/debit card processor or independent service operator enabling an **Insured** to accept credit card, debit card, prepaid card or other payment cards for payments or donations.

**Money** means a medium of exchange in current use authorized or adopted by a domestic or foreign government as a part of its currency.

**Named Insured** means the Named Insured listed in the Declarations.

**PCI Fines, Expenses and Costs** means the monetary amount owed by the **Insured Organization** under the terms of a **Merchant Services Agreement** as a direct result of a suspected **Data Breach**.  With the prior consent of the Underwriters, **PCI Fines, Expenses and Costs** includes reasonable and necessary legal costs and expenses incurred by the **Insured Organization** to appeal or negotiate an assessment of such monetary amount.  **PCI Fines, Expenses and Costs** will not include any charge backs, interchange fees, discount fees or other fees unrelated to a **Data Breach**.

**Penalties** means:

1.      any monetary civil fine or penalty payable to a governmental entity that was imposed in a **Regulatory Proceeding**; and

2.      amounts which the **Insured** is legally obligated to deposit in a fund as equitable relief for the payment of consumer claims due to an adverse judgment or settlement of a **Regulatory Proceeding** (including such amounts required to be paid into a "Consumer Redress Fund");

but will not include: (i) costs to remediate or improve **Computer Systems**; (ii) costs to establish, implement, maintain, improve or remediate security or privacy practices, procedures, programs or policies; (iii) audit, assessment, compliance or reporting costs; or (iv) costs to protect the confidentiality, integrity and/or security of **Personally Identifiable Information** or other information.

The insurability of **Penalties** will be in accordance with the law in the applicable venue that most favors coverage for such **Penalties**.

**Period of Restoration** means the 180-day period of time that begins upon the actual and necessary interruption of the **Insured Organization's** business operations.

**Personally Identifiable Information** means:

1.  any information concerning an individual that is defined as personal information under any **Breach Notice Law**; and

2.  an individual's drivers license or state identification number, social security number, unpublished telephone number, and credit, debit or other financial account numbers in combination with associated security codes, access codes, passwords or PINs; if such information allows an individual to be uniquely and reliably identified or contacted or allows access to the individual's financial account or medical record information.

but will not include information that is lawfully made available to the general public.

**Policy Period** means the period of time between the inception date listed in the Declarations and the effective date of termination, expiration or cancellation of this Policy and specifically excludes any Optional Extension Period or any prior policy period or renewal period.

**Privacy Policy** means the **Insured Organization's** public declaration of its policy for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to **Personally Identifiable Information**.

**Privacy Policy Violation** means the failure by the **Insured** to comply with that part of a **Privacy Policy** that specifically:

1.  prohibits or restricts the **Insured Organization's** disclosure, sharing or selling of **Personally Identifiable Information**;

2.  requires the **Insured Organization** to provide an individual access to **Personally Identifiable Information** or to correct incomplete or inaccurate **Personally Identifiable Information** after a request is made;

3.  mandates procedures and requirements to prevent the loss of **Personally Identifiable Information**;

4.  prevents or prohibits improper, intrusive or wrongful collection of **Personally Identifiable Information** from another person;

5.  requires notice to a person of the **Insured Organization's** collection or use of, or the nature of the collection or use of his or her **Personally Identifiable Information**; or

6.  provides a person with the ability to assent to or withhold assent for (e.g. opt-in or opt-out) the **Insured Organization's** collection or use of his or her **Personally Identifiable Information**;

provided the **Insured Organization** has in force, at the time of such failure, a **Privacy Policy** that addresses those subsections above that are relevant to such **Claim**.

**Professional Services** means professional services performed for others by or on behalf of the **Insured Organization** for a fee.

**Professional Services** will not include activities performed by or on behalf of the **Insured Organization** as an accountant, architect, surveyor, health care provider, lawyer, insurance or real estate agent or broker, or civil or structural engineer.

**Regulatory Proceeding** means a request for information, civil investigative demand, or civil proceeding brought by or on behalf of any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

**Retroactive Date** means the applicable date listed in the Declarations.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or tangible property that has intrinsic value.

**Security Breach** means a failure of computer security to prevent:

    1.      **Unauthorized Access or Use** of **Computer Systems**, including **Unauthorized Access or Use** resulting from the theft of a password from a **Computer System** or from any **Insured**;

    2.      a denial of service attack affecting **Computer Systems**;

    3.      with respect to coverage under the Liability insuring agreements, a denial of service attack affecting computer systems that are not owned, operated or controlled by an **Insured**; or

    4.      infection of **Computer Systems** by malicious code or transmission of malicious code from **Computer Systems**.

**Subsidiary** means any entity:

    1.      which, on or prior to the inception date of this Policy, the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding voting securities ("Management Control"); and

    2.      which the **Named Insured** acquires Management Control after the inception date of this Policy; provided that:

        (i)      the revenues of such entity do not exceed 15% of the **Named Insured's** annual revenues; or

        (ii)      if the revenues of such entity exceed 15% of the **Named Insured's** annual revenues, then coverage under this Policy will be afforded for a period of 60 days, but only for any **Claim** that arises out of any act, error, omission, incident or event first occurring after the entity becomes so owned.  Coverage beyond such 60 day period will only be available if the **Named Insured** gives the Underwriters written notice of the acquisition, obtains the written consent of Underwriters to extend coverage to the entity beyond such 60 day period and agrees to pay any additional premium required by Underwriters.

This Policy provides coverage only for acts, errors, omissions, incidents or events that occur while the **Named Insured** has Management Control over an entity.

**System Failure** means an unintentional and unplanned interruption of **Computer Systems**.

    **System Failure** will not include any interruption of computer systems resulting from (i) a **Security Breach**, or (ii) the interruption of any third party computer system.

**Tech Products** means a computer or telecommunications hardware or software product, or related electronic product, that is created, manufactured or developed by the **Insured Organization** for others, or distributed, licensed, leased or sold by the **Insured Organization** to others, for compensation, including software updates, service packs and other maintenance releases provided for such products.

**Tech & Professional Services Wrongful Act** means any negligent act, error, omission, misstatement, misleading statement, misrepresentation or unintentional breach of a contractual obligation by the **Insured**, or by any person or entity for whom the **Insured** is legally liable, in rendering or failing to render **Professional Services** or **Tech Services** that occurs on or after the **Retroactive Date** and before the end of the **Policy Period**, but does not mean a **Media Wrongful Act**.

**Tech Product Wrongful Act** means:

1.   any negligent act, error, omission, misstatement, misleading statement, misrepresentation or unintentional breach of a contractual obligation by the **Insured** that results in the failure of **Tech Products** to perform the function or serve the purpose intended; or

2.   software copyright infringement by the **Insured** with respect to **Tech Products**;

that occurs on or after the **Retroactive Date** and before the end of the **Policy Period**.

**Tech Services** means computer, cloud computing, and electronic technology services, including:

1.   data processing, software as a service (SaaS), platform as a service (PaaS), infrastructure as a service (IaaS), network as a service (NaaS);

2.   data and application hosting, computer systems analysis, and technology consulting and training; or

3.   custom software programming for a specific client of the **Insured Organization** and, computer and software systems installation and integration;

performed by the **Insured**, or by others acting under the **Insured Organization's** trade name, for others for a fee.

**Telephone Fraud** means the act of a third party gaining access to and using the **Insured Organization's** telephone system in an unauthorized manner.

**Third Party Information** means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not insured under this Policy which is not available to the general public.

**Transfer Account** means an account maintained by the **Insured Organization** at a **Financial Institution** from which the **Insured Organization** can initiate the transfer, payment or delivery of **Money** or **Securities**.

**Unauthorized Access or Use** means the gaining of access to or use of **Computer Systems** by an unauthorized person(s) or the use of **Computer Systems** in an unauthorized manner.

**Unauthorized Disclosure** means the disclosure of (including disclosure resulting from phishing) or access to information in a manner that is not authorized by the **Insured Organization** and is without knowledge of, consent or acquiescence of any member of the **Control Group**.

**Waiting Period** means the period of time that begins upon the actual interruption of the **Insured Organization's** business operations caused by a **Security Breach**, **System Failure**, **Dependent Security Breach** or **Dependent System Failure**, and ends after the elapse of the number of hours listed as the **Waiting Period** in the Declarations.

## EXCLUSIONS

The coverage under this Policy will not apply to any **Loss** arising out of:

### Bodily Injury or Property Damage

1.  physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress resulting from such physical injury, sickness, disease or death; or

2.  physical injury to or destruction of any tangible property, including the loss of use thereof; but electronic data will not be considered tangible property;

### Deceptive Business Practices, Antitrust & Consumer Protection

any actual or alleged false, deceptive or unfair trade practices, antitrust violation, restraint of trade, unfair competition (except as provided under part 3. of the Media, Tech, Data & Network Liability insuring agreement), violation of consumer protection law, false, deceptive or misleading advertising, inaccurate cost estimates or failure of goods or services to conform with any represented quality or performance, or violation of the Sherman Antitrust Act, the Clayton Act, or the Robinson-Patman Act; but this exclusion will not apply to:

1.  the Breach Response insuring agreement; or

2.  coverage for a **Data Breach** or **Security Breach**, provided no member of the **Control Group** participated or colluded in such **Data Breach** or **Security Breach**;

### Distribution of Information

the distribution of unsolicited email, text messages, direct mail, facsimiles or other communications, wire tapping, audio or video recording, or telemarketing, if such distribution, wire tapping, recording or telemarketing is done by or on behalf of the **Insured Organization**; but this exclusion will not apply to **Claims Expenses** incurred in defending the **Insured** against allegations of unlawful audio or video recording;

### Prior Known Acts & Prior Noticed Claims

1.  any act, error, omission, incident or event committed or occurring prior to the inception date of this Policy if any member of the **Control Group** on or before the **Continuity Date** knew or could have reasonably foreseen that such act, error or omission, incident or event might be expected to be the basis of a **Claim** or **Loss**;

2.  any **Claim**, **Loss**, incident or circumstance for which notice has been provided under any prior policy of which this Policy is a renewal or replacement;

### Racketeering, Benefit Plans, Employment Liability & Discrimination

1. any actual or alleged violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced and Corrupt Organizations Act or RICO), as amended;

2. any actual or alleged acts, errors or omissions related to any of the **Insured Organization's** pension, healthcare, welfare, profit sharing, mutual or investment plans, funds or trusts;

3. any employer-employee relations, policies, practices, acts or omissions, or any actual or alleged refusal to employ any person, or misconduct with respect to employees; or

4. any actual or alleged discrimination;

but this exclusion will not apply to coverage under the Breach Response insuring agreement or coverage for a **Data Breach** or **Security Breach**, provided no member of the **Control Group** participated or colluded in such **Data Breach** or **Security Breach**;

### Sale or Ownership of Securities & Violation of Securities Laws

1. the ownership, sale or purchase of, or the offer to sell or purchase stock or other securities; or

2. an actual or alleged violation of a securities law or regulation;

### Criminal, Intentional or Fraudulent Acts

any criminal, dishonest, fraudulent, or malicious act or omission, or intentional or knowing violation of the law, if committed by an **Insured**, or by others if the **Insured** colluded or participated in any such conduct or activity; but this exclusion will not apply to:

1. **Claims Expenses** incurred in defending any **Claim** alleging the foregoing until there is a final non-appealable adjudication establishing such conduct; or

2. with respect to a natural person **Insured**, if such **Insured** did not personally commit, participate in or know about any act, error, omission, incident or event giving rise to such **Claim** or **Loss**.

For purposes of this exclusion, only acts, errors, omissions or knowledge of a member of the **Control Group** will be imputed to the **Insured Organization**;

### Patent & Misappropriation of Information

1. infringement, misuse or abuse of patent or patent rights;

2. misappropriation of trade secret arising out of or related to **Tech Products** or any other products;

3. with respect to any **Data & Network Wrongful Act**, misappropriation of any **Third Party Information** (i) by or on behalf of the **Insured Organization**, or (ii) by any other person or entity if such misappropriation is done with the knowledge, consent or acquiescence of a member of the **Control Group**; or

4.      disclosure, misuse or misappropriation of any ideas, trade secrets or confidential information that came into the possession of any person or entity prior to the date he or she became an **Insured** or **Subsidiary** of the **Insured Organization**;

### Governmental Actions

a **Claim** brought by or on behalf of any state, federal, local or foreign governmental entity, in such entity's regulatory or official capacity; but this exclusion will not apply to the Regulatory Defense & Penalties insuring agreement, or any **Claim** made against the **Insured Organization** by a governmental entity solely in its capacity as a customer of the **Insured Organization**;

### Other Insureds & Related Enterprises

a **Claim** made by or on behalf of:

1.      any **Insured**; but this exclusion will not apply to a **Claim** made by an individual that is not a member of the **Control Group** for a **Data & Network Wrongful Act**, or a **Claim** made by an **Additional Insured**; or

2.      any business enterprise in which any **Insured** has greater than 15% ownership interest or made by any parent company or other entity which owns more than 15% of the **Named Insured**;

### Trading Losses & Loss of Money

1.      any trading losses, trading liabilities or change in value of accounts;

2.      any loss, transfer or theft of monies, securities or tangible property of the **Insured** or others in the care, custody or control of the **Insured Organization**; or

3.      the monetary value of any transactions or electronic fund transfers by or on behalf of the **Insured** which is lost, diminished, or damaged during transfer from, into or between accounts;

but this exclusion will not apply to coverage under the eCrime insuring agreement;

### Contractual

with respect to coverage under parts 1. and 3. of the Media, Tech, Data & Network Liability insuring agreement:

any obligation the **Insured** has under contract; but this exclusion will not apply to:

1.      the obligation to perform **Professional Services** or **Tech Services**;

2.      a **Claim** for misappropriation of ideas under implied contract, or

3.      to the extent the **Insured** would have been liable in the absence of such contract;

### Retroactive Date

any related or continuing act, error, omission, misstatement, misleading statement, misrepresentation, unintentional breach of a contractual obligation, incident or event where the first such act, error, omission, misstatement, misleading statement,

misrepresentation or unintentional breach of a contractual obligation, incident or event was committed or occurred prior to the **Retroactive Date**;

### Recall

any costs or expenses incurred or to be incurred by the **Insured** or others for the reprinting, reposting, recall, inspection, repair, replacement, removal or disposal of any **Tech Products**, **Media Material** or work product, including when resulting from or incorporating the results of **Professional Services** or **Tech Services**; but this exclusion will not apply to the resulting loss of use of such **Tech Products**, **Media Material** or work product resulting from or incorporating the results of **Professional Services** or **Tech Services**;

### Infrastructure Failure

failure or malfunction of satellites or of power, utility, mechanical or telecommunications (including internet) infrastructure or services that are not under the **Insured Organization's** direct operational control;

### Licensing Bodies & Joint Ventures

1.    the actual or alleged obligation to make licensing fee or royalty payments; or any **Claim** brought by or on behalf of any intellectual property licensing bodies or organizations;

2.    any **Claim** made by or on behalf of any independent contractor, joint venturer or venture partner arising out of or resulting from disputes over ownership of rights in **Media Material** or services provided by such independent contractor, joint venturer or venture partner;

### Over-Redemption

1.    any actual or alleged gambling, contest, lottery, promotional game or other game of chance; or

2.    the value of coupons, price discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount;

### First Party Data & Network Loss

with respect to the First Party Data & Network Loss insuring agreements:

1.    seizure, nationalization, confiscation, or destruction of property or data by order of any governmental or public authority;

2.    costs or expenses incurred by the **Insured** to identify or remediate software program errors or vulnerabilities or update, replace, restore, assemble, reproduce, recollect or enhance data or **Computer Systems** to a level beyond that which existed prior to a **Security Breach**, **System Failure**, **Dependent Security Breach**, **Dependent System Failure** or **Extortion Threat**;

3.    fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical event.

## LIMIT OF LIABILITY AND COVERAGE

The Policy Aggregate Limit of Liability listed in the Declarations (the "**Policy Aggregate Limit of Liability**") is the Underwriters' combined total limit of liability for all **Loss** payable under this Policy.

The limit of liability payable under each insuring agreement will be an amount equal to the **Policy Aggregate Limit of Liability** unless another amount is listed in the Declarations.  Such amount is the aggregate amount payable under this Policy pursuant to such insuring agreement and is part of, and not in addition to, the **Policy Aggregate Limit of Liability**.

All **Dependent Business Loss** payable under this Policy is part of and not in addition to the **Business Interruption Loss** limit listed in the Declarations.

The Underwriters will not be obligated to pay any **Loss,** or to defend any **Claim**, after the **Policy Aggregate Limit of Liability** has been exhausted, or after deposit of the **Policy Aggregate Limit of Liability** in a court of competent jurisdiction.

## RETENTIONS

The Retention listed in the Declarations applies separately to each act, error, omission, incident, event or related acts, errors, omissions, incidents or events giving rise to a **Claim** or **Loss**. The Retention will be satisfied by monetary payments by the **Named Insured** of covered **Loss** under each insuring agreement. If any **Loss** arising out of an incident or **Claim** is subject to more than one Retention, the Retention for each applicable insuring agreement will apply to such **Loss**, provided that the sum of such Retention amounts will not exceed the largest applicable Retention amount.

Coverage for **Business Interruption Loss** and **Dependent Business Loss** will apply after the **Waiting Period** has elapsed and the Underwriters will then indemnify the **Named Insured** for all **Business Interruption Loss** and **Dependent Business Loss** sustained during the **Period of Restoration** in excess of the Retention.

Satisfaction of the applicable Retention is a condition precedent to the payment of any **Loss** under this Policy, and the Underwriters will be liable only for the amounts in excess of such Retention.

## OPTIONAL EXTENSION PERIOD

Upon non-renewal or cancellation of this Policy for any reason except the non-payment of premium, the **Named Insured** will have the right to purchase, for additional premium in the amount of the Optional Extension Premium percentage listed in the Declarations of the full Policy Premium listed in the Declarations, an Optional Extension Period for the period of time listed in the Declarations. Coverage provided by such Optional Extension Period will only apply to **Claims** first made against any **Insured** during the Optional Extension Period and reported to the Underwriters during the Optional Extension Period, and arising out of any act, error or omission committed on or after the **Retroactive Date** (if applicable) and before the end of the **Policy Period**. In order for the **Named Insured** to invoke the Optional Extension Period option, the payment of the additional premium for the Optional Extension Period must be paid to the Underwriters within 60 days of the termination of this Policy.

The purchase of the Optional Extension Period will in no way increase the **Policy Aggregate Limit of Liability** or any sublimit of liability. At the commencement of the Optional Extension Period the entire premium will be deemed earned, and in the event the **Named Insured** terminates the

Optional Extension Period for any reason prior to its natural expiration, the Underwriters will not be liable to return any premium paid for the Optional Extension Period.

All notices and premium payments with respect to the Optional Extension Period option will be directed to the Underwriters through entity listed for Administrative Notice in the Declarations.

## GENERAL CONDITIONS

### Notice of Claim or Loss

The **Insured** must notify the Underwriters of any **Claim** as soon as practicable, but in no event later than: (i) 60 days after the end of the **Policy Period**; or (ii) the end of the Optional Extension Period (if applicable).  Notice must be provided through the contacts listed for Notice of Claim, Loss or Circumstance in the Declarations.

With respect to **Breach Response Costs**, the **Insured** must notify the Underwriters of any actual or reasonably suspected **Data Breach** or **Security Breach** as soon as practicable after discovery by the **Insured**, but in no event later than 60 days after the end of the **Policy Period**. Notice must be provided through the contacts listed for Notice of Claim, Loss or Circumstance in the Declarations. Notice of an actual or reasonably suspected **Data Breach** or **Security Breach** in conformance with this paragraph will also constitute notice of a circumstance that could reasonably be the basis for a **Claim**.

With respect to **Cyber Extortion Loss**, the **Named Insured** must notify the Underwriters via the email address listed in the Notice of Claim, Loss or Circumstance in the Declarations as soon as practicable after discovery of an **Extortion Threat** but no later than 60 days after the end of the **Policy Period**.  The **Named Insured** must obtain the Underwriters' consent prior to incurring **Cyber Extortion Loss**.

With respect to **Data Recovery Costs**, **Business Interruption Loss** and **Dependent Business Loss** the **Named Insured** must notify the Underwriters through the contacts for Notice of Claim, Loss or Circumstance in the Declarations as soon as practicable after discovery of the circumstance, incident or event giving rise to such loss.  The **Named Insured** will provide the Underwriters a proof of **Data Recovery Costs**, **Business Interruption Loss** and **Dependent Business Loss**, and this Policy will cover the reasonable and necessary costs, not to exceed USD 50,000, that the **Named Insured** incurs to contract with a third party to prepare such proof. All loss described in this paragraph must be reported, and all proofs of loss must be provided, to the Underwriters no later than 6 months after the end of the **Policy Period**.

The **Named Insured** must notify the Underwriters of any loss covered under the eCrime insuring agreement as soon as practicable, but in no event later than 60 days after the end of the **Policy Period**. Notice must be provided through the contacts listed for Notice of Claim, Loss or Circumstance in the Declarations.

Any **Claim** arising out of a **Loss** that is covered under the Breach Response, First Party Data & Network Loss or eCrime insuring agreements and that is reported to the Underwriters in conformance with the foregoing will be considered to have been made during the **Policy Period**.

### Beazley Breach Response Services

The Underwriters' dedicated business unit focused exclusively on helping **Insureds** successfully prepare for and respond to actual or suspected **Data Breaches** and **Security Breaches** (the "Beazley Breach Response Services Team") will be available to

assist the **Named Insured** in responding to an actual or suspected **Data Breach** or **Security Breach**. The Beazley Breach Response Services Team will work in collaboration with the **Named Insured** to triage and assess the severity of a data breach incident, while assisting the coordination of the range of resources and services the **Named Insured** may need to meet legal requirements and maintain customer confidence. The Beazley Breach Response Services Team may be reached via email at: *bbr.claims@beazley.com* or via a toll-free 24-Hour Hotline: (866) 567-8570.

The **Named Insured** will have access, via the Beazley Breach Response Services Team, to the Underwriters' network of third party breach response service providers, products and services to respond to an actual or suspected **Data Breach** or **Security Breach**. Coverage for the costs of products and services provided by any breach response service provider is subject to the terms and conditions of this Policy.

The **Named Insured** will also have access to educational and loss control information and services made available by the Underwriters from time to time and includes access to beazleybreachsolutions.com, a dedicated portal through which it can access news and information regarding breach response planning, data and network security threats, best practices in protecting data and networks, offers from third party service providers, and related information, tools and services. The **Named Insured** will also have access to communications addressing timely topics in data security, loss prevention and other areas.

Notwithstanding the foregoing, an actual or suspected **Data Breach** or **Security Breach** must be reported to the Underwriters in accordance with the Notice of Claim or Loss clause in order for such incident to be eligible for coverage under the Breach Response insuring agreement. Assistance from and access to the Beazley Breach Response Services Team will terminate after the **Policy Aggregate Limit of Liability** has been exhausted, or after deposit of the **Policy Aggregate Limit of Liability** in a court of competent jurisdiction.

### Notice of Circumstance

With respect to any circumstance that could reasonably be the basis for a **Claim**, the **Insured** may give written notice of such circumstance to the Underwriters through the contacts listed for Notice of Claim, Loss or Circumstance in the Declarations as soon as practicable during the **Policy Period**. Such notice must include:

1.   the specific details of the act, error, omission or event that could reasonably be the basis for a **Claim**;

2.   the injury or damage which may result or has resulted from the circumstance; and

3.   the facts by which the **Insured** first became aware of the act, error, omission or event.

Any subsequent **Claim** made against the **Insured** arising out of any circumstance reported to Underwriters in conformance with the foregoing will be considered to have been made at the time written notice complying with the above requirements was first given to the Underwriters during the **Policy Period**.

### Defense of Claims

Except with respect to coverage under the Payment Card Liabilities & Costs insuring agreement, the Underwriters have the right and duty to defend any covered **Claim** or

**Regulatory Proceeding**. Defense counsel will be mutually agreed by the **Named Insured** and the Underwriters but, in the absence of such agreement, the Underwriters' decision will be final.

With respect to the Payment Card Liabilities & Costs insuring agreement, coverage will be provided on an indemnity basis and legal counsel will be mutually agreed by the **Named Insured** and the Underwriters.

The Underwriters will pay actual loss of salary and reasonable expenses resulting from the attendance by a corporate officer of the **Insured Organization** at any mediation meetings, arbitration proceedings, hearings, depositions, or trials relating to the defense of any **Claim**, subject to a maximum of USD 2,000 per day and USD 100,000 in the aggregate, which amounts will be part of and not in addition to the **Policy Aggregate Limit of Liability**.

### Settlement of Claims

If the **Insured** refuses to consent to any settlement recommended by the Underwriters and acceptable to the claimant, the Underwriters' liability for such **Claim** will not exceed:

1.      the amount for which the **Claim** could have been settled, less the remaining Retention, plus the **Claims Expenses** incurred up to the time of such refusal; plus

2.      sixty percent (60%) of any **Claims Expenses** incurred after the date such settlement or compromise was recommended to the **Insured** plus sixty percent (60%) of any **Damages**, **Penalties** and **PCI Fines**, **Expenses and Costs** above the amount for which the **Claim** could have been settled;

and the Underwriters will have the right to withdraw from the further defense of such **Claim**.

The **Insured** may settle any **Claim** where the **Damages**, **Penalties**, **PCI Fines**, **Expenses and Costs** and **Claims Expenses** do not exceed 50% of the Retention, provided that the entire **Claim** is resolved and the **Insured** obtains a full release on behalf of all **Insureds** from all claimants.

### Assistance and Cooperation

The Underwriters will have the right to make any investigation they deem necessary, and the **Insured** will cooperate with the Underwriters in all investigations, including investigations regarding coverage under this Policy and the information and materials provided to the underwriters in connection with the underwriting and issuance of this Policy. The **Insured** will execute or cause to be executed all papers and render all assistance as is requested by the Underwriters. The **Insured** agrees not to take any action which in any way increases the Underwriters' exposure under this Policy. Expenses incurred by the **Insured** in assisting and cooperating with the Underwriters do not constitute **Claims Expenses** under the Policy.

The **Insured** will not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or dispose of any **Claim** without the written consent of the Underwriters, except as specifically provided in the Settlement of Claims clause above.  Compliance with a **Breach Notice Law** will not be considered an admission of liability.

### Subrogation

If any payment is made under this Policy and there is available to the Underwriters any of the **Insured's** rights of recovery against any other party, then the Underwriters will maintain all such rights of recovery. The **Insured** will do whatever is reasonably necessary to secure such rights and will not do anything after an incident or event giving rise to a **Claim** or **Loss** to prejudice such rights. If the **Insured** has waived its right to subrogate against a third party through written agreement made before an incident or event giving rise to a **Claim** or **Loss** has occurred, then the Underwriters waive their rights to subrogation against such third party. Any recoveries will be applied first to subrogation expenses, second to **Loss** paid by the Underwriters, and lastly to the Retention. Any additional amounts recovered will be paid to the **Named Insured**.

### Other Insurance

The insurance under this Policy will apply in excess of any other valid and collectible insurance available to any **Insured** unless such other insurance is written only as specific excess insurance over this Policy. Provided, however, this Policy will become primary and non-contributory insurance as respects any insurance maintained by an **Additional Insured** if primary insurance is required by a contract in place between the **Additional Insured** and the **Insured Organization**, but only with respect to any **Claim** arising solely from the Media, Tech, Data & Network Liability insuring agreements.

### Action Against the Underwriters

No action will lie against the Underwriters or the Underwriters' representatives unless and until, as a condition precedent thereto, the **Insured** has fully complied with all provisions, terms and conditions of this Policy and the amount of the **Insured's** obligation to pay has been finally determined either by judgment or award against the **Insured** after trial, regulatory proceeding, arbitration or by written agreement of the **Insured**, the claimant, and the Underwriters.

No person or organization will have the right under this Policy to join the Underwriters as a party to an action or other proceeding against the **Insured** to determine the **Insured's** liability, nor will the Underwriters be impleaded by the **Insured** or the **Insured's** legal representative.

The **Insured's** bankruptcy or insolvency of the **Insured's** estate will not relieve the Underwriters of their obligations hereunder.

### Entire Agreement

By acceptance of the Policy, all **Insureds** agree that this Policy embodies all agreements between the Underwriters and the **Insured** relating to this Policy. Notice to any agent, or knowledge possessed by any agent or by any other person, will not effect a waiver or a change in any part of this Policy or stop the Underwriters from asserting any right under the terms of this Policy; nor will the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy signed by the Underwriters.

### Mergers or Consolidations

If during the **Policy Period** the **Named Insured** consolidates or merges with or is acquired by another entity, or sells more than 50% of its assets to another entity, then this Policy will continue to remain in effect through the end of the **Policy Period**, but only with respect to events, acts or incidents that occur prior to such consolidation, merger or acquisition. There will be no coverage provided by this Policy for any other **Claim** or

**Loss** unless the **Named Insured** provides written notice to the Underwriters prior to such consolidation, merger or acquisition, the **Named Insured** has agreed to any additional premium and terms of coverage required by the Underwriters and the Underwriters have issued an endorsement extending coverage under this Policy.

### Assignment

The interest hereunder of any **Insured** is not assignable. If the **Insured** dies or is adjudged incompetent, such insurance will cover the **Insured's** legal representative as if such representative were the **Insured**, in accordance with the terms and conditions of this Policy.

### Cancellation

This Policy may be cancelled by the **Named Insured** by giving written notice to the Underwriters through the entity listed for Administrative Notice in the Declarations stating when the cancellation will be effective.

This Policy may be cancelled by the Underwriters by mailing to the **Named Insured** at the address listed in the Declarations written notice stating when such cancellation will be effective.  Such date of cancellation will not be less than 60 days (or 10 days for cancellation due to non-payment of premium) after the date of notice.

If this Policy is canceled in accordance with the paragraphs above, the earned premium will be computed pro rata; but the premium will be deemed fully earned if any **Claim**, or any circumstance that could reasonably be the basis for a **Claim** or **Loss**, is reported to the Underwriters on or before the date of cancellation.  Payment or tender of unearned premium is not a condition of cancellation.

### Singular Form of a Word

Whenever the singular form of a word is used herein, the same will include the plural when required by context.

### Headings

The titles of paragraphs, clauses, provisions or endorsements of or to this Policy are intended solely for convenience and reference, and are not deemed in any way to limit or expand the provisions to which they relate and are not part of the Policy.

### Representation by the Insured

All **Insureds** agree that the statements contained the information and materials provided to the Underwriters in connection with the underwriting and issuance of this Policy are true, accurate and are not misleading, and that the Underwriters issued this Policy, and assume the risks hereunder, in reliance upon the truth thereof.

### Named Insured as Agent

The **Named Insured** will be considered the agent of all **Insureds**, and will act on behalf of all **Insureds** with respect to the giving of or receipt of all notices pertaining to this Policy, and the acceptance of any endorsements to this Policy.  The **Named Insured** is responsible for the payment of all premiums and Retentions and for receiving any return premiums.



# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Insurance** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Insured** is requested to read their Policy, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding the Policy should be addressed to the following Correspondent:

Beazley USA

**SLC-3 (USA)** NMA2868 (24/08/2000) (amended)



One Lime Street London EC3M 7HA



**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## LLOYD'S SECURITY SCHEDULE

Syndicate 2623        82%
Syndicate 623         18%


ALL OTHER TERMS, conditions and limitations of said Certificate shall remain unchanged.

# CALIFORNIA SURPLUS LINES DISCLOSURE STATEMENT (PRE BIND)

## IMPORTANT NOTICE:

1.   The insurance policy that you have purchased is being issued by an insurer that is not licensed by the state of California.  These companies are called "nonadmitted" or "surplus line" insurers.

2.   The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.

3.   The insurer does not participate in any of the insurance guarantee funds created by California law.  Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

4.   The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer.  You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.

5.   Foreign insurers should be licensed by a state in the United States and you may contact that state's department of

insurance to obtain more information about that insurer.  You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.

6.    For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers.  Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.

7.    California Maintains A "List Of Approved Surplus Line Insurers (LASLI)."  Ask your agent or broker if the insurer is on that list, or view that list at the internet web site of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.

8.    If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure.  If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.

LMA9099A
01 January 2020

# CALIFORNIA SURPLUS LINES NOTICE 1 (POST BIND)

## IMPORTANT NOTICE:

1.    The insurance policy that you have purchased is being issued by an insurer that is not licensed by the state of California.  These companies are called "nonadmitted" or "surplus line" insurers.

2.    The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.

3.    The insurer does not participate in any of the insurance guarantee funds created by California law.  Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

4.    The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer.  You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.

5.    Foreign insurers should be licensed by a state in the United States and you may contact that state's department of

insurance to obtain more information about that insurer.  You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.

6.    For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers.  Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.

7.    California Maintains A "List Of Approved Surplus Line Insurers (LASLI)."  Ask your agent or broker if the insurer is on that list, or view that list at the internet web site of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/la sli.cfm.

8.    If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure.  If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.

LMA9098A
01 January 2020

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

**Beazley MediaTech**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.      Under any Liability Coverage, to injury, sickness, disease, death or destruction:

      (a)      with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (b)      resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

      (a)      the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

      (b)      the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (c)      the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or

17/3/60
NMA1256

Exhibit 1 | Page 42

possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.     As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a)     any nuclear reactor,

(b)      any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)     any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**SANCTION LIMITATION AND EXCLUSION CLAUSE**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02804
032011 ed.

Page 1 of 1

Exhibit 1 | Page 45

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**CHOICE OF LAW AND SERVICE OF SUIT**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **GENERAL CONDITIONS** is amended to include:

**Service of Suit**

It is agreed that in the event of the Underwriters' failure to pay any amount claimed to be due under this Insurance, the Underwriters will, at the **Insured's** request, submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this provision constitutes or should be understood to constitute a waiver of the Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of processing such suit may be made upon the Underwriters' representative:

Foley & Lardner LLP, 555 California Street, Suite 1700, San Francisco, CA 94104-1520

and that in any suit instituted against any one of them upon this contract, the Underwriters will abide by the final decision of such court or of any appellate court in the event of an appeal.
The person or entity named above is authorized and directed to accept service of process on the Underwriters' behalf in any such suit and/or upon the **Insured's** request to give a written undertaking to the **Insured** that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

Pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Underwriters hereby designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on the **Insured's** behalf or any beneficiary hereunder arising out of this Policy, and hereby designate the person or entity named above as the persons to whom said officer is authorized to mail such process or a true copy thereof.

**Choice of Law**

Any disputes involving this Policy will be resolved applying the law of the state of California.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E10596                                                                                                       Page 1 of 1
122019 ed.

Exhibit 1 | Page 46

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### ASBESTOS, POLLUTION, AND CONTAMINATION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the coverage under this Policy will not apply to any **Loss** arising out of either in whole or in part, directly or indirectly arising out of or resulting from or in consequence of, or in any way involving:

1.      asbestos, or any materials containing asbestos in whatever form or quantity;

2.      the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind; any action taken by any party in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins; and any governmental or regulatory order, requirement, directive, mandate or decree that any party take action in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins;

The Underwriters will have no duty or obligation to defend any **Insured** with respect to any **Claim** or governmental or regulatory order, requirement, directive, mandate or decree which either in whole or in part, directly or indirectly, arises out of or results from or in consequence of, or in any way involves the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind;

3.      the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property; or

4.      the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or any governmental, judicial or regulatory directive or request that the **Insured** or anyone acting under the direction or control of the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including gas, acids, alkalis, chemicals, heat, smoke, vapor, soot, fumes or waste. Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

**WAR AND CIVIL WAR EXCLUSION**

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that
**EXCLUSIONS** is amended to include:

**War and Civil War**

> for resulting from, directly or indirectly occasioned by, happening through or in consequence of:
> war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war,
> rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or
> requisition or destruction of or damage to property by or under the order of any government or
> public or local authority; provided, that this exclusion will not apply to **Cyber Terrorism**.

> For purposes of this exclusion, "**Cyber Terrorism**" means the premeditated use of disruptive
> activities, or threat to use disruptive activities, against a computer system or network with the
> intention to cause harm, further social, ideological, religious, political or similar objectives, or to
> intimidate any person(s) in furtherance of such objectives.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND DEFINITION OF FRAUDULENT INSTRUCTION**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Fraudulent Instruction** is deleted in its entirety and replaced with the following:

> **Fraudulent Instruction** means the transfer, payment or delivery of **Money** or **Securities** by an **Insured** as a result of fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions provided by a third party, that is intended to mislead an **Insured** through the misrepresentation of a material fact which is relied upon in good faith by such **Insured**.

> **Fraudulent Instruction** will not include loss arising out of:

> 1.   any actual or alleged use of credit, debit, charge, access, convenience, customer identification or other cards;

> 2.   any transfer involving a third party who is not a natural person **Insured**, but had authorized access to the **Insured's** authentication mechanism;

> 3.   the processing of, or the failure to process, credit, check, debit, personal identification number debit, electronic benefit transfers or mobile payments for merchant accounts;

> 4.   accounting or arithmetical errors or omissions, or the failure, malfunction, inadequacy or illegitimacy of any product or service;

> 5.   any liability to any third party, or any indirect or consequential loss of any kind;

> 6.   any legal costs or legal expenses; or

> 7.   proving or establishing the existence of **Fraudulent Instruction**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## <u>COMPUTER HARDWARE REPLACEMENT COST</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      The definition of **Extra Expense** is deleted in its entirety and replaced with the following:

**Extra Expense** means reasonable and necessary expenses incurred by the **Insured Organization** during the **Period of Restoration** to minimize, reduce or avoid **Income Loss**, over and above those expenses the **Insured Organization** would have incurred had no **Security Breach**, **System Failure**, **Dependent Security Breach** or **Dependent System Failure** occurred; and includes reasonable and necessary expenses incurred by the **Insured Organization** to replace computers or any associated devices or equipment operated by, and either owned by or leased to, the **Insured Organization** that are unable to function as intended due to corruption or destruction of software or firmware directly resulting from a **Security Breach**, provided however that the maximum sublimit applicable to **Extra Expense** incurred to replace such devices or equipment is USD $2,500,000.

2.      Part 2. of the **Bodily Injury or Property Damage** exclusion is deleted in its entirety and replaced with the following:

2.      physical injury to or destruction of any tangible property, including the loss of use thereof; but this will not apply to the loss of use of computers or any associated devices or equipment operated by, and either owned by or leased to, the **Insured Organization** that are unable to function as intended due to corruption or destruction of software or firmware directly resulting from a **Security Breach**. Electronic data shall not be considered tangible property;

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## CRYPTOJACKING ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.       The aggregate sublimit applicable to all loss under this endorsement is USD $250,000.

2        The Retention applicable to each incident, event, or related incidents or events, giving rise to an obligation to pay loss under this endorsement shall be USD $50,000.

3.       **INSURING AGREEMENTS** is amended to include:

   **Cryptojacking**

   To indemnify the **Insured Organization** for any direct financial loss sustained resulting from **Cryptojacking** that the **Insured** first discovers during the **Policy Period**.

4.       **DEFINITIONS** is amended to include:

   **Cryptojacking** means the **Unauthorized Access or Use** of **Computer Systems** to mine for **Digital Currency** that directly results in additional costs incurred by the **Insured Organization** for electricity, natural gas, oil, or internet (the "**Utilities**"); provided, however, that such additional costs for the **Utilities** are:

   1.       incurred pursuant to a written contract between the **Insured Organization** and the respective utility provider, which was executed before the **Cryptojacking** first occurred;

   2.       billed to the **Insured Organization** by statements issued by the respective utility provider, which include usage or consumption information;

   3.       not charged to the **Insured Organization** at a flat fee that does not scale with the rate or use of the respective utility; and

   4.       incurred pursuant to statements issued by the respective utility provider and due for payment during the **Policy Period**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### GDPR CYBER ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Data & Network Wrongful Act** is amended to include the following:

5.      non-compliance with the following obligations under the EU General Data Protection Regulation:

(i)      Article 5.1(f), also known as the Security Principle;

(ii)     Article 32, Security of Processing;

(iii)    Article 33, Communication of a Personal Data Breach to the Supervisory Authority; or

(iv)     Article 34, Communication of a Personal Data Breach to the Data Subject.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

<u>**AMEND DEFINITION OF CONTROL GROUP**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Control Group** is deleted in its entirety and replaced with the following:

**Control Group** means any CEO, CFO, GC, CISO, Head of IT or substantially similar position of the **Insured Organization** and any individual in a substantially similar position.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E12240                                                                                              Page 1 of 1
022019 ed.

Exhibit 1 | Page 54

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND DEFINITION OF SUBSIDIARY**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Subsidiary** is deleted in its entirety and replaced with the following:

**Subsidiary** means any entity:

1.   which, on or prior to the inception date of this Policy, the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding voting securities ("Management Control"); and

2.   which the **Named Insured** acquires Management Control of after the inception date of this Policy, provided that:

(i)   the revenues of such entity do not exceed 20% of the **Named Insured's** annual revenues; or

(ii)   if the revenues of such entity exceed 20% of the **Named Insured's** annual revenues, then coverage under this Policy will be afforded for a period of 60 days, but only for any **Claim** that arises out of any act, error, omission, incident or event first occurring after the entity becomes so owned.  Coverage beyond such 60 day period will only be available if the **Named Insured** gives the Underwriters written notice of the acquisition, obtains the written consent of Underwriters to extend coverage to the entity beyond such 60 day period and agrees to pay any additional premium required by Underwriters.

This Policy provides coverage only for acts, errors, omissions, incidents or events that occur while the **Named Insured** has Management Control over an entity.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND DEFINITION OF TECH SERVICES ENDORSEMENT**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      The definition of **Tech Services** is deleted in its entirety and replaced with the following:

      **Tech Services** means:

            1.      computer, cloud computing, and electronic technology services, including:

                  (i)      data processing, software as a service (SaaS), platform as a service (PaaS), infrastructure as a service (IaaS), network as a service (NaaS);

                  (ii)     data and application hosting, computer systems analysis, and technology consulting and training;

                  (iii)    custom software programming for a specific client of the **Insured Organization** and, computer and software systems installation and integration; or

            2.      **Telecommunications Services**;

      performed by the **Insured**, or by others acting under the **Insured Organization's** trade name, for others for a fee.

2.      **DEFINITIONS** is amended by the addition of the following:

      **Telecommunications Services** means switching services, dial tone access, competitive access provider services, 911 emergency services, cellular and wireless communication services, call center services, local access telephone services, long-distance telephone services, cable services, broadband services, Internet telephone services, facsimile services, private line and private network services and telecommunications consulting services.

3.      Solely with respect to **Telecommunications Services**, coverage under this Policy does not apply to **Damages** or **Claims Expenses** in connection with or resulting from and **Claim** arising out of or resulting from (i) the transfer of funds, money, or securities; or (ii) any **Insured's** voluntary waiver or a limitation of liability under a tariff.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

<u>**AMEND NOTICE OF CIRCUMSTANCE (COMPLIANCE WITH LAW ENFORCEMENT)**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **Notice of Circumstance** under **GENERAL CONDITIONS** is amended by the addition of following:

Notwithstanding anything under **Notice of Circumstance** to the contrary, if any law enforcement authority expressly prevents the **Insured** from disclosing to the Underwriters specific information concerning an incident (or reasonably suspected incident) described in parts 1. and 2. of the definition of **Data & Network Wrongful Act**, the notice obligations under **Notice of Circumstance** shall be waived, provided the **Insured**:

1.     requests permission to share information regarding such incident or reasonably suspected incident with the Underwriters as soon as practicable after receiving such direction from law enforcement authority and is prevented from doing so;

2.     withholds only that portion of information it has been restricted from disclosing to the Underwriters, meaning further that the **Insured** shall notify the Underwriters of an incident or reasonably suspected incident even if any information relating to such notice is unable to be shared with the Underwriters; and

3.     the **Insured** provides notice as required under **Notice of Circumstance** as soon as legally possible after law enforcement authority permits.

In all instances, the **Insured** must provide notice no later than one hundred-eighty (180) days after the **Policy Period**, and unless such incident or suspected incident is reported in accordance with the obligations under **Notice of Circumstance**, there shall be no coverage in connection with such incident or suspected incident.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND NOTICE OF CLAIM OR LOSS**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **Notice of Claim or Loss** under **GENERAL CONDITIONS** is deleted in its entirety and replaced with the following:

**Notice of Claim or Loss**

The **Insured** must notify the Underwriters of any **Claim** as soon as practicable upon knowledge of the **Control Group**, but in no event later than: (i) 90 days after the end of the **Policy Period**; or (ii) the end of the Optional Extension Period (if applicable). Notice must be provided through the contacts listed for **Notice of Claim, Loss or Circumstance** in the Declarations.

With respect to **Breach Response Costs**, the **Insured** must notify the Underwriters of any actual or reasonably suspected **Data Breach** or **Security Breach** as soon as practicable after discovery by the **Control Group**, but in no event later than 90 days after the end of the **Policy Period**. Notice must be provided through the contacts listed for Notice of Claim, Loss or Circumstance in the Declarations. Notice of an actual or reasonably suspected **Data Breach** or **Security Breach** in conformance with this paragraph will also constitute notice of a circumstance that could reasonably be the basis for a **Claim**.

With respect to **Cyber Extortion Loss**, the **Named Insured** must notify the Underwriters via the email address listed in the **Notice of Claim, Loss or Circumstance** in the Declarations as soon as practicable after discovery by the **Control Group** of an **Extortion Threat** but no later than 90 days after the end of the **Policy Period**. The **Named Insured** must obtain the Underwriters' consent prior to incurring **Cyber Extortion Loss**.

With respect to **Data Recovery Costs**, **Business Interruption Loss** and **Dependent Business Loss** the **Named Insured** must notify the Underwriters through the contacts for Notice of Claim, Loss or Circumstance in the Declarations as soon as practicable after discovery by the **Control Group** of the circumstance, incident or event giving rise to such loss. The **Named Insured** will provide the Underwriters a proof of **Data Recovery Costs**, **Business Interruption Loss** and **Dependent Business Loss**, and this Policy will cover the reasonable and necessary costs, not to exceed USD 50,000, that the **Named Insured** incurs to contract with a third party to prepare such proof. All loss described in this paragraph must be reported, and all proofs of loss must be provided, to the Underwriters no later than 6 months after the end of the **Policy Period**.

The **Named Insured** must notify the Underwriters of any loss covered under the eCrime insuring agreement as soon as practicable after discovery by the **Control Group**, but in no event later than 90 days after the end of the **Policy Period**. Notice must be provided through the contacts listed for **Notice of Claim, Loss or Circumstance** in the Declarations.

Any **Claim** arising out of a **Loss** that is covered under the Breach Response, First Party Data & Network Loss or eCrime insuring agreements and that is reported to the Underwriters in conformance with the foregoing will be considered to have been made during the **Policy Period**.

For purposes of this endorsement, **Control Group** means any CEO, CFO, GC, CISO, Head of IT or substantially similar position of the **Insured Organization** and any individual in a substantially similar position.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND NOTICE OF CLAIM OR LOSS**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **Notice of Claim or Loss** under **GENERAL CONDITIONS** is deleted in its entirety and replaced with the following:

**Notice of Claim or Loss**

The **Insured** must notify the Underwriters of any **Claim** as soon as practicable upon knowledge of the **Control Group**, but in no event later than: (i) 60 days after the end of the **Policy Period**; or (ii) the end of the Optional Extension Period (if applicable). Notice must be provided through the contacts listed for **Notice of Claim, Loss or Circumstance** in the Declarations.

With respect to **Breach Response Costs**, the **Insured** must notify the Underwriters of any actual or reasonably suspected **Data Breach** or **Security Breach** as soon as practicable after discovery by the **Control Group**, but in no event later than 60 days after the end of the **Policy Period**. Notice must be provided through the contacts listed for **Notice of Claim, Loss or Circumstance** in the Declarations. Notice of an actual or reasonably suspected **Data Breach** or **Security Breach** in conformance with this paragraph will also constitute notice of a circumstance that could reasonably be the basis for a **Claim**.

With respect to **Cyber Extortion Loss**, the **Named Insured** must notify the Underwriters via the email address listed in the **Notice of Claim, Loss or Circumstance** in the Declarations as soon as practicable after discovery by the **Control Group** of an **Extortion Threat** but no later than 60 days after the end of the **Policy Period**. The **Named Insured** must obtain the Underwriters' consent prior to incurring **Cyber Extortion Loss**.

With respect to **Data Recovery Costs**, **Business Interruption Loss** and **Dependent Business Loss** the **Named Insured** must notify the Underwriters through the contacts for **Notice of Claim, Loss or Circumstance** in the Declarations as soon as practicable after discovery by the **Control Group** of the circumstance, incident or event giving rise to such loss. The **Named Insured** will provide the Underwriters a proof of **Data Recovery Costs**, **Business Interruption Loss** and **Dependent Business Loss**, and this Policy will cover the reasonable and necessary costs, not to exceed USD 50,000, that the **Named Insured** incurs to contract with a third party to prepare such proof. All loss described in this paragraph must be reported, and all proofs of loss must be provided, to the Underwriters no later than 6 months after the end of the **Policy Period**.

The **Named Insured** must notify the Underwriters of any loss covered under the eCrime insuring agreement as soon as practicable after discovery by the **Control Group**, but in no event later than 60 days after the end of the **Policy Period**. Notice must be provided through the contacts listed for **Notice of Claim, Loss or Circumstance** in the Declarations.

Any **Claim** arising out of a **Loss** that is covered under the Breach Response, First Party Data & Network Loss or eCrime insuring agreements and that is reported to the Underwriters in conformance with the foregoing will be considered to have been made during the **Policy Period**.

For purposes of this endorsement, **Control Group** means any Chief Executive Officer, Chief Financial Officer, General Counsel, Risk Manager and Chief Technology Officer of the **Insured Organization** and any individual in a substantially similar position.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND REPRESENTATION BY THE INSURED**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **REPRESENTATION BY THE INSURED** under **GENERAL CONDITIONS** is deleted in its entirety and replaced with the following:

The **Control Group** agree that the statements contained the information and materials provided to the Underwriters in connection with the underwriting and issuance of this Policy are true, accurate and are not misleading, and that the Underwriters issued this Policy, and assume the risks hereunder, in reliance upon the truth thereof.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

<u>**AMEND SETTLEMENT OF CLAIMS**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **Settlement of Claims** under **GENERAL CONDITIONS** is deleted in its entirety and replaced with the following:

**Settlement of Claims**

If the **Insured** refuses to consent to any settlement recommended by the Underwriters and acceptable to the claimant, the Underwriters' liability for such **Claim** will not exceed:

1.      the amount for which the **Claim** could have been settled, less the remaining Retention, plus the **Claims Expenses** incurred up to the time of such refusal; plus

2.      70% of any **Claims Expenses** incurred after the date such settlement or compromise was recommended to the **Insured** plus 70% of any **Damages**, **Penalties** and **PCI Fines, Expenses and Costs** above the amount for which the **Claim** could have been settled;

and the Underwriters will have the right to withdraw from the further defense of such **Claim**.

The **Insured** may settle any **Claim** where the **Damages**, **Penalties**, **PCI Fines, Expenses and Costs** and **Claims Expenses** do not exceed 50% the Retention, provided that the entire **Claim** is resolved and the **Insured** obtains a full release on behalf of all **Insureds** from all claimants.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**CONSEQUENTIAL REPUTATIONAL LOSS**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      Limit listed in the Declarations under **COVERAGE SCHEDULE** is amended to include:

**Consequential Reputational Loss**                     USD $2,500,000

2.      Retention listed in the Declarations under **COVERAGE SCHEDULE** is amended to include:

Each incident giving rise to **Consequential Reputational**          USD $250,000
**Loss**

3.      **INSURING AGREEMENTS** is amended by the addition of:

**Consequential Reputational Loss**

to indemnify the **Insured Organization** for **Consequential Reputational Loss**, that the **Insured** incurs during the **Notification Period** as a result of (i) an actual or reasonably suspected **Data Breach** or **Security Breach** that the **Insured** first discovers during the **Policy Period** and (ii) for which individuals have been notified pursuant to part 4. of the **Breach Response Services** definition.

4.      For purposes of this endorsement, **DEFINITIONS** is amended to include:

**Consequential Reputational Loss** means the **Income Loss** during the **Notification Period**; provided that **Consequential Reputational Loss** shall not mean and no coverage shall be available under this endorsement for any of the following:  loss arising out of any liability to any third party for whatever reason; legal costs or legal expenses of any type; loss incurred as a result of unfavorable business conditions, loss of market or any other consequential loss; or costs or expenses the **Insured Organization** incurs to identify, investigate, respond to or remediate an actual or reasonably suspected **Data Breach** or **Security Breach**.

**Income Loss** means the net profit resulting directly from the **Insured Organization's** business operations, before income taxes, that the **Insured Organization** is prevented from earning as a direct result of damage to the **Insured Organization's** reputation caused by an actual or reasonably suspected **Data Breach** or **Security Breach**. In determining **Income Loss**, due consideration shall be given to the prior experience of the **Insured Organization's** business operations before the beginning of the **Notification Period** and to the reasonable and probable business operations the **Insured Organization** could have performed had the actual or reasonably suspected **Data Breach** or **Security Breach** not occurred.

**Income Loss** does not include any internal salary, costs or overhead expenses of the **Insured Organization**.

**Notification Period** means the 30-day period that begins on the specific date on which **Notified Individuals** first receive notification of the incident.

5.      **Notice of Claim or Loss** under **GENERAL CONDITIONS** is amended to include:

With respect to **Consequential Reputational Loss** the **Named Insured** must notify the Underwriters through the contacts listed for **Notice of Claim, Loss or Circumstance** in the Declarations as soon as practicable after discovery of the circumstance, incident or event giving rise to such loss. The **Named Insured** will provide the Underwriters a proof of **Consequential Reputational Loss**. All loss described in this paragraph must be reported, and all proofs of loss must be provided, to the Underwriters no later than six (6) months after the end of the **Policy Period**. The costs and expenses of preparing and submitting a proof of loss, and establishing or proving **Consequential Reputational Loss** shall be the **Insured's** obligation, and are not covered under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**INVOICE MANIPULATION COVERAGE**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      The aggregate sublimit applicable to all loss under this endorsement is USD $100,000.

2.      The Retention applicable to each incident, event, or related incidents or events, giving rise to an obligation to pay loss under this endorsement shall be USD $50,000.

3.      **INSURING AGREEMENTS** is amended to include:

   **Invoice Manipulation**

   To indemnify the **Insured Organization** for **Direct Net Loss** resulting directly from the **Insured Organization's** inability to collect **Payment** for any goods, products or services after such goods, products or services have been transferred to a third party, as a result of **Invoice Manipulation** that the **Insured** first discovers during the **Policy Period**:

4.      **DEFINITIONS** is amended to include:

   **Direct Net Loss** means the direct net cost to the **Insured Organization** to provide goods, products or services to a third party.  **Direct Net Loss** will not include any profit to the **Insured Organization** as a result of providing such goods, products or services.

   **Invoice Manipulation** means the release or distribution of any fraudulent invoice or fraudulent payment instruction to a third party as a direct result of a **Security Breach** or a **Data Breach**.

   **Payment** means currency, coins or bank notes in current use and having a face value.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

<u>**OPTIONAL EXTENSION PERIOD AND OPTIONAL EXTENSION PREMIUM**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the **Optional Extension Period** and **Optional Extension Premium** listed in the Declarations under **POLICY INFORMATION** are deleted in their entirety and replaced with the following:

| **Optional Extension Period:** | **Optional Extension Premium:** |
|---|---|
| 12 Months | 100% of the Annual Policy Premium |
| 24 Months | 125% of the Annual Policy Premium |
| 36 Months | 150% of the Annual Policy Premium |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E12231
022019 ed.

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**OTHER INSURANCE CLAUSE – PRIMARY WITH RESPECT TO**</u>
<u>**FIRST PARTY LOSS**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **Other Insurance** under **GENERAL CONDITIONS** is deleted in its entirety and replaced with the following:

**Other Insurance**

The insurance under this Policy shall apply in excess of any other valid and collectible insurance available to any **Insured** unless such other insurance is written only as specific excess insurance over this Policy; provided that this Policy shall be primary solely with respect to **Cyber Extortion Loss** covered under the First Party Loss insuring agreements.

The existence of other insurance available to an **Insured** shall not affect the Underwriters' obligations toward an **Insured** in paying **Loss** covered under this Policy nor shall it delay payment of such **Loss**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E12631                                                                                   Page 1 of 1
022019 ed.

Exhibit 1 | Page 69

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### POST BREACH REMEDIAL SERVICES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that, following a covered **Data Breach** or **Security Breach** involving the actual **Unauthorized Access or Use** of the **Insured Organization's Computer Systems** for which the **Insured Organization** has utilized services exclusively from **Beazley Service Providers**, the **Insured Organization** will be eligible to receive **Post Breach Remedial Services**.

**Post Breach Remedial Services** means up to 100 hours per **Policy Period** of post-breach computer security consultation and remedial services to be provided by Lodestone Security ("Lodestone"). Such services will be provided at the **Insured Organization's** request as per the description of services attached to this endorsement. **Post Breach Remedial Services** will be considered **Breach Response Costs**, and will be available in response to incidents in which forensic costs covered under parts 2. and 3. of the definition of **Breach Response Costs** have been incurred, subject to the applicable Retention. **Post Breach Remedial Services** will not include any costs to purchase or upgrade any hardware or software.

To access the **Post Breach Remedial Services**, the **Insured Organization** must:

1. notify the Beazley Breach Response Services Team via email at: *bbr.claims@beazley.com* or via a toll-free 24-Hour Hotline: (866) 567-8570 following any actual or reasonably suspected **Unauthorized Access or Use** of the **Insured Organization's Computer Systems** so that the Beazley Breach Response Services Team can work with the **Insured Organization** to coordinate the provision of services from **Beazley Service Providers**;

2. notify the Underwriters that they desire to receive such services; and

3. enter into an engagement agreement with Lodestone to receive such service,

within sixty (60) days following a determination of the actual **Unauthorized Access or Use** of the **Insured Organization's Computer Systems**,

For purpose of this Endorsement, "**Beazley Service Providers**" means the Underwriters' network of third party breach response service providers listed at www.beazley.com/cyberservices that are to be utilized exclusively in response to incidents in which forensic costs covered under parts 2. and 3. of the definition of **Breach Response Costs** have been/will be incurred, subject to the applicable Retention.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### STATE CONSUMER PRIVACY STATUTES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.    The Policy is amended to include the following insuring agreement:

**State Consumer Privacy Statutes**

To pay **Penalties** and **Claims Expenses** which the **Insured** is legally obligated to pay because of any **Regulatory Proceeding** first made against any **Insured** during the **Policy Period** for a violation of the California Consumer Privacy Act or any similar state statutes or state regulations specifically governing the **Insured Organization's** collection, use, disclosure, sale, processing, profiling, acquisition, sharing, maintenance, retention or storage of or provision of access to personal information or personal data as defined under the California Consumer Privacy Act or similar state statutes or state regulations.

2.    The definition of **Claim** is amended to include institution of a **Regulatory Proceeding** against any **Insured** under the State Consumer Privacy Statutes insuring agreement for a violation of the California Consumer Privacy Act or any similar state statutes or state regulations specifically governing the **Insured Organization's** collection, use, disclosure, sale, processing, profiling, acquisition, sharing, maintenance, retention or storage of or provision of access to personal information or personal data as defined under the California Consumer Privacy Act or similar state statutes or state regulations.

3.    The **Governmental Actions** exclusion will not apply to the State Consumer Privacy Statutes insuring agreement.

4.    Solely with respect to the State Consumer Privacy Statutes insuring agreement, the **Deceptive Business Practices, Antitrust & Consumer Protection** exclusion is deleted in its entirety and replaced with the following:

**Deceptive Business Practices and Consumer Protection**

any actual or alleged false, deceptive or unfair trade practices, unfair competition, or violation of consumer protection law; but this exclusion will not apply to coverage under the State Consumer Privacy Statutes insuring agreement, provided no member of the **Control Group** participated in or colluded in the activities or incidents giving rise to coverage under such insuring agreement;

**Antitrust**

any actual or alleged antitrust violation, restraint of trade,  false, deceptive or misleading advertising, violation of the Sherman Antitrust Act, the Clayton Act, or the Robinson-Patman Act, or inaccurate cost estimates or failure of goods or services to conform with any represented quality or performance;

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### TERRITORY

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that **GENERAL CONDITIONS** is amended to include:

**Territory**

> This Insurance applies to **Claims** made, acts committed, or **Loss** occurring anywhere in the world.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**VIASAT AMENDATORY ENDORSEMENT**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**
In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. The **Optional Extension Period** and **Optional Extension Premium** listed in the Declarations under **POLICY INFORMATION** are deleted in their entirety and replaced with the following:

| Optional Extension Period: | Optional Extension Premium: |
| --- | --- |
| 100% Months | 12 of the Annual Policy Premium |
| Months | 24 of the Annual Policy Premium |
| Months | 36 of the Annual Policy Premium |

2. The definition of **Control Group** is deleted and replaced with the following:

   **Control Group** means the individuals holding the following positions in the **Insured Organization**: President; members of the Board of Directors; executive officers, including the Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer; General Counsel, non-administrative personnel employed in the office of the General Counsel; Chief Information Officer; Chief Security Officer; Chief Privacy Officer; **Manager**; and any individual in a substantially similar position as those referenced above, or with substantially similar responsibilities as those referenced above, irrespective of the exact title of such individual, and any individual who previously held any of the above referenced positions.

3. Part 5. of the definition of **Damages** is deleted and replaced with the following:

   5.      punitive or exemplary damages or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive or exemplary damages;

4. The first paragraph of **Notice of Claim or Loss** under **GENERAL CONDITIONS** is deleted and replaced with the following:

   The **Insured** must notify the Underwriters of any **Claim** as soon as practicable upon knowledge of the **Insured Organization's** President; members of the Board of Directors; executive officers, including the Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer; General Counsel, staff attorneys employed by the **Insured Organization**; Chief Information Officer; Chief Security Officer; Chief Privacy Officer; or **Manager**, and any individual in a substantially similar position as those referenced above, or with substantially similar responsibilities as those referenced above, irrespective of the exact title of such individual, and any individual who previously held any of the above referenced positions, but in no event later than: (i) 60 days after the end of the **Policy Period**; or (ii) the end of the Optional Extension Period (if applicable). Notice must be provided through the contacts listed for Notice of Claim, Loss or Circumstance in the Declarations.

5.  **Subrogation** under **GENERAL CONDITIONS** is deleted and replaced with the following:

    If any payment is made under this Policy and there is available to the Underwriters any of the **Insured's** rights of recovery against any other party, then the Underwriters will maintain all such rights of recovery. The **Insured** will do whatever is reasonably necessary to secure such rights and will not do anything to prejudice such rights without the Underwriters' prior written approval. If the **Insured** has waived its right to subrogate against a third party through written agreement made before an incident or event giving rise to a **Claim** or **Loss** has occurred, then the Underwriters waive their rights to subrogation against such third party. Any recoveries will be applied first to subrogation expenses, second to **Loss** paid by the Underwriters, and lastly to the Retention. Any additional amounts recovered will be paid to the **Named Insured**.

6.  The second and third parts of **Cancellation** under **GENERAL CONDITIONS** is deleted and replaced with the following:

    This Policy may be cancelled by the Underwriters by mailing to the **Named Insured** at the address listed in the Declarations written notice stating when such cancellation will be effective. Such date of cancellation will not be less than 90 days (or 10 days for cancellation due to non-payment of premium) after the date of notice.

    If this Policy is canceled in accordance with the paragraphs above, the earned premium will be computed pro rata and the Named Insured shall be entitled to 90% of the unearned premium; but the premium will be deemed fully earned if any **Claim**, or any circumstance that could reasonably be the basis for a **Claim** or **Loss**, is reported to the Underwriters on or before the date of cancellation.  Payment or tender of unearned premium is not a condition of cancellation.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

**Effective date of this Endorsement: 31-Oct-2021**
**This Endorsement is attached to and forms a part of Policy Number: W11051211101**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**VOLUNTARY SHUTDOWN COVERAGE**</u>

This endorsement modifies insurance provided under the following:

**Beazley MediaTech**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Security Breach** is deleted in its entirety and replaced with the following:

**Security Breach** means:

1.      A failure of computer security to prevent:

     (i)      **Unauthorized Access or Use** of **Computer Systems**, including **Unauthorized Access or Use** resulting from the theft of a password from a **Computer System** or from any **Insured**;

     (ii)     a denial of service attack affecting **Computer Systems**;

     (iii)    with respect to coverage under parts 3. and 4. of the Media, Tech, Data & Network Liability insuring agreement, the Regulatory Defense & Penalties insuring agreement, and the Payment Card Liabilities & Costs insuring agreement, a denial of service attack affecting computer systems that are not owned, operated or controlled by an **Insured**; or

     (iv)    infection of **Computer Systems** by malicious code or transmission of malicious code from Computer Systems; or

2.      Solely with respect to the Business Interruption insuring agreement:

     (i)      the voluntary and intentional shutdown of **Computer Systems** by the **Insured Organization**, but only to the extent necessary to limit the **Loss** during an active or on-going **Unauthorized Access or Use** of **Computer Systems** or infection of **Computer Systems** by malicious code, as covered by 1.(i) or 1.(iv) above; or

     (ii)     the intentional shutdown of **Computer Systems** by the **Insured Organization** as expressly required by any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity resulting from a situation described in 1.(i) or 1.(iv) above.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative