# Exhibit 1

HALPERN MAY YBARRA GELBERG LLP
Marc D. Halpern (CA Bar No. 216426)
Gwendolyn M. Toczko (CA Bar No. 255984)
600 West Broadway, Suite 1060
San Diego, California 92101
Telephone: (619) 618-7000
marc.halpern@halpernmay.com
gwendolyn.toczko@halpernmay.com

HALPERN MAY YBARRA GELBERG LLP
Susan P. Welch (CA Bar No. 145952)
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Telephone: (213) 402-1900
susan.welch@halpernmay.com

Attorneys for Plaintiff Viasat Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIASAT INC.,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (SYNDICATES 2623 and 623),<br><br>Defendants. | CASE NO. 3:22-CV-1169 JAH BGS<br><br>**PLAINTIFF VIASAT INC.'S SURREPLY TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Judge: Hon. John A. Houston |

Plaintiff Viasat Inc. ("Viasat") filed this lawsuit against Syndicates 2623 and 623 ("Underwriters") after they improperly refused to acknowledge coverage for a cyber-attack causing millions of dollars of covered losses under the Policy they issued to Viasat. Underwriters have a pending Motion to Dismiss (the "Motion") alleging lack of subject matter jurisdiction. Viasat's Opposition showed the Motion to be both legally unfounded and inconsistent with these same syndicate Underwriters repeatedly availing themselves of federal jurisdiction when they have so chosen, including in California with equivalent amounts in controversy. Underwriters' representations to other federal courts for the purpose of securing or maintaining diversity jurisdiction in analogous cases are fundamentally at odds with Underwriters' representations to this Court in their Motion.

In their Reply, Underwriters argued that those other federal cases in which they are a party are distinguishable – principally because they were filed in 2020 and because the identities of their members *may* have changed. While the purported differences Underwriters pointed to were not actually meaningful, those rebuttals are immediately discredited by the same syndicate Underwriters' assertions of federal diversity jurisdiction in an even more recent case. This is new information that Viasat hereby submits via surreply.

Specifically, Viasat recently became aware of a more recent case pending in the United States District Court for the Northern District of California where ***these same syndicate Underwriters again have asserted federal diversity jurisdiction*** in a very similar context, ***against a California citizen corporation***, including in a case management statement ***filed nine days after Underwriters' Reply in support of the Motion.***

At bottom, Underwriters are availing themselves of federal diversity jurisdiction when it suits them and then arguing diversity jurisdiction is improper when they prefer to litigate elsewhere, all the while making fundamentally

contradictory and irreconcilable representations to numerous federal courts, including this one.

## I. PRIOR BRIEFING

Viasat filed its Complaint in this action on August 9, 2022. Dkt. 1. On August 31, 2022, Underwriters filed the Motion asserting lack of subject matter jurisdiction. Dkt. 7. On September 28, 2022, Viasat filed its Opposition to the Motion. Dkt. 11. In its Opposition, Viasat pointed out that these exact same Syndicates filed complaints in various federal district courts, including in California, alleging that diversity jurisdiction was established under equivalent circumstances to here, because all the members of both Syndicates were citizens of the United Kingdom and the amount in controversy exceeded $75.000. Viasat cited the First Amended Complaint in *Certain Underwriters At Lloyd's v. Kleinberg & Lerner*, Case No. 2:19-cv-10143-PSG-GJS, 2020 WL 2309297 at ¶ 4 (C.D. Cal. Jan. 16, 2020) ("Syndicates 623 and 2623 are exclusively comprised of Names that are citizens of the United Kingdom and, as such, are citizens of a foreign state within the meaning of 28 U.S.C. §1332(c)(1)") and the Complaint in *Certain Underwriters At Lloyd's of London v. CB Solutions*, Case No. 3:20-cv-05043, 2020 WL 289164 at ¶¶ 2-3 (W.D. Wash. Jan. 17, 2020) ("The sole member of Syndicate 2623 is Beazley Underwriting Limited, a corporation organized and existing under the laws of England and Wales, with its principal place of business located in London, England . . . All of the members for Syndicate 623 are resident in the United Kingdom.").[1]

[1] See Dkt. 12 (Declaration of Marc D. Halpern Exs. 2-3). These prior exhibits and the additional court filings submitted with this Surreply (Welch Dec. Exs. A and B) are properly subject to judicial notice. Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (court filings and other matters of public records are properly subject to judicial notice).

In their October 5, 2022 Reply, Underwriters attempted to distinguish *Kleinberg & Lerner* and *CB Solutions* and continued to challenge both diversity of citizenship and the amount in controversy. Dkt. 15. Despite implying that certain Names may not be diverse from Viasat, Underwriters have not identified any person or entity that destroys diversity. Underwriters improperly contend that Viasat cannot satisfy the amount in controversy requirement by claiming that one of the "Names" within one of the syndicate parties holds a small share of the risk and is severally liable to Viasat (on the $10 million policy) for less than $75,000.

Before Underwriters filed their Reply, the Court took the matter under submission and took the hearing off calendar. Dkt. 14. Thus, Viasat has not had an opportunity to address Underwriters' attempts to distinguish their complaints in *Kleinberg & Lerner* and *CB Solutions*, particularly in the context of a more recent filing by Underwriters in a federal case that again directly contradicts their representations to this Court regarding jurisdiction.

## II. <u>UNDERWRITERS TAKE ADVANTAGE OF FEDERAL JURISDICTION WHEN IT SUITS THEM</u>

Underwriters are defendants and counterclaimants in *United Brands Products Design Development & Marketing, Inc. v. Certain Underwriters at Lloyd's, London Denoted as Syndicate Numbers AFB 2623 and AFB 623*, Case No. 4:22-cv-00649-TLT, pending in the United States District Court for the Northern District of California ("*United Brands*"). *United Brands*: (1) involves a California insured (like Viasat); (2) involves a 2021-22 policy (like Viasat's) with a $2 million aggregate limit (materially *less* than Viasat's $10 million policy); and (3) was filed in 2022 (like this action). Welch Dec. ¶ 3 and Ex. A p. 20 ¶ 2, pp. 48-49.

***If Underwriters' representations and arguments in this case were true, federal subject matter jurisdiction could not exist in the <u>United Brands</u> case. Yet nine days after filing its Reply asserting the absence of federal jurisdiction in this***

***case, the same exact syndicate Underwriters signed and filed (through counsel) an Amended Joint Case Management Statement ("CMS") in United Brands confirming diversity jurisdiction.*** The CMS included the following language: "1. JURISDICTION & SERVICE The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332. No issues exist regarding jurisdiction or venue, and no parties remain to be served with United's Complaint [ECF 1] or Beazley's operative Second Amended Answer and Counterclaim [ECF 32]." Welch Dec. Ex. B; *see also* Ex. A p. 21 ¶ 3.

Underwriters' position in *United Brands* is particularly striking because it is subject to ***none*** of the argument Underwriters asserted (albeit unpersuasively) in their Reply to try to distinguish their representations of federal jurisdiction in *Kleinberg & Lerner* and *CB Solutions*. Underwriters argued in their October 5, 2022 Reply that, "the two complaints Viasat relies upon do not reflect any inconsistency on the part of Defendants" because (1) the complaints involve different policy years than are at issue in this case and the Syndicate members may change; (2) the complaints predate the decision in *Rooftop Restoration, Inc. v. Certain Underwriters at Lloyd's of London*, 2021 U.S. Dist. LEXIS 168727, at *10-11 (D. Colo. Sep. 7, 2021); and (3) Underwriters dismissed the complaint in *CB Solutions* without prejudice after the policyholder challenged jurisdiction

Underwriters try to make it sound like the syndicates *may* have some turnover of names from when *CB Solutions* and *Kleinberg & Lerner* were filed. But Underwriters are careful only to assert that "the makeup of a syndicate from one year cannot be attributed to other years." However, Underwriters fail to assert that the syndicates were *actually* different in any way that impacts jurisdiction (or even that they actually were different *at all*). **And, of course, *United Brands* and this case both commenced in 2022**, thus there is every reason to believe that the composition of the syndicate Underwriters here and there are the same.

Underwriters also strangely attempt to distinguish *Kleinberg & Lerner* and *CB Solutions* by saying they were filed before *Rooftop* ─ which is just one case from the various cases Underwriters have cited and a rather irrelevant one at that, as the sole issue was the whether the citizenship allegations were sufficient to avoid remand. *Rooftop* did not address amount in controversy at all. Therefore, Underwriters representations in *Kleinberg & Lerner* and *CB Solutions* that the amount in controversy requirement was met are unimpacted by *Rooftop*. Underwriters provide no basis to believe that this off-point and non-binding decision from a district court in another circuit caused a sea change in how Underwriters have represented themselves to federal courts. **Indeed, *United Brands* was filed after *Rooftop***.

Finally, Underwriters weakly suggest that *CB Solutions* is not relevant because Underwriters ultimately voluntarily dismissed the case without prejudice. It is unclear why Underwriters chose to dismiss *CB Solutions*– whether it was because they could not prove diversity of citizenship or because Underwriters did not want to provide the information needed to demonstrate diversity or some other reason. Nor is it relevant – since Underwriters had already represented to the Court that there was diversity jurisdiction. Furthermore, this argument is entirely irrelevant as to *Kleinberg & Lerner* as well as *United Brands*, which is currently pending in federal court on the basis of diversity jurisdiction.

## III. CONCLUSION

For the foregoing additional reasons, Viasat respectfully requests that the Court deny Underwriters' Motion to Dismiss in full.

DATED: March 22, 2023

HALPERN MAY YBARRA GELBERG LLP

By: *s/ Marc D. Halpern*

MARC D. HALPERN
Attorneys for Plaintiff Viasat, Inc.

HALPERN MAY YBARRA GELBERG LLP
Marc D. Halpern (CA Bar No. 216426)
Gwendolyn M. Toczko (CA Bar No. 255984)
600 West Broadway, Suite 1060
San Diego, California 92101
Telephone: (619) 618-7000
marc.halpern@halpernmay.com
gwendolyn.toczko@halpernmay.com

HALPERN MAY YBARRA GELBERG LLP
Susan P. Welch (CA Bar No. 145952)
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Telephone: (213) 402-1900
susan.welch@halpernmay.com

Attorneys for Plaintiff Viasat Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIASAT INC.,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (SYNDICATES 2623 and 623),<br><br>Defendants. | CASE NO. 22-cv-01169-JAH-DDL<br><br>**DECLARATION OF SUSAN P. WELCH IN SUPPORT OF PLAINTIFF VIASAT INC.'S SURREPLY TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Judge: Hon. John A. Houston |

I, Susan P. Welch, declare as follows.

1. I am an attorney with the law firm of Halpern May Ybarra Gelberg LLP, and counsel for Viasat Inc. ("Viasat") in this action. Accordingly, I have personal knowledge of each matter stated herein, except where stated on information and belief, and if called as a witness, I could and would testify competently to those facts under oath.

2. On March 21, 2023, I informed Chet Kronenberg, counsel for Defendants, via email that Viasat would be filing an ex parte application for permission to file a surreply in support of their opposition to Defendant's motion to dismiss.

3. Attached as **Exhibit A** is a true and correct copy of Underwriters' Second Amended Answer and Counterclaims (with only select pages from the insurance policy attached thereto) in *United Brands Products Design Development & Marketing, Inc. v. Certain Underwriters at Lloyd's, London Denoted as Syndicate Numbers AFB 2623 and AFB 623*, Case No. 4:22-cv-00649-TLT, United States District Court for the Northern District of California ("*United Brands*"), as obtained from Pacer. The *United Brands* docket report available on Pacer states the original complaint was filed on January 31, 2022.

4. Attached as **Exhibit B** is a true and correct copy of the Amended Joint Case Management Statement, dated October 14, 2022, in *United Brands*, as obtained from Pacer.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 22, 2023.

*/s/ Susan P. Welch*
Susan P. Welch

# Exhibit A



TROUTMAN PEPPER HAMILTON SANDERS LLP
Kevin F. Kieffer, Bar No. 192193
kevin.kieffer@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

TROUTMAN PEPPER HAMILTON SANDERS LLP
Brandon D. Almond (admitted *pro hac vice*)
brandon.almond@troutman.com
401 9th Street, N.W.
Suite 1000
Washington, D.C. 20004-2134
Telephone: 202.274.2950
Facsimile: 202.274.2994

Attorneys for Defendants
Certain Underwriters at Lloyd's, London Denoted as
Syndicate Numbers AFB 623 and AFB 2623

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

UNITED BRANDS PRODUCTS DESIGN DEVELOPMENT & MARKETING, INC.

Plaintiff/Counter-Defendant,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON DENOTED AS SYNDICATE NUMBERS AFB 2623 AND AFB 623

Defendant/Counter-Plaintiff.

Case No. 4:22-cv-00649-HSG

**DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S LONDON DENOTED AS SYNDICATE NUMBERS AFB 2623 AND AFB 623'S SECOND AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIM**

**JURY TRIAL DEMANDED**

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Defendant Certain Underwriters at Lloyd's, London Denoted as Syndicate Numbers AFB 623 and AFB 2623 ("Beazley"), by and through its undersigned counsel, hereby answers Plaintiff United Brands Products Design Development & Marketing, Inc.'s ("United") Complaint (the "Complaint") as follows:

**INTRODUCTION**[1]

1. In answer to Paragraph 1, Beazley admits it entered into a contract of insurance with United. United's description of its Complaint and the relief it seeks are not allegations to which a response is required. To the extent any response is required, Beazley denies the remaining allegations in Paragraph 1 and denies that United is entitled to the relief it seeks.

**THE PARTIES**

2. In answer to Paragraph 2, Beazley lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein, and on that basis, denies the allegations.

3. In answer to Paragraph 3, Beazley states that Defendants are the certain Underwriters at Lloyd's, London under Binding Authority Reference B0180PNF200123 that comprise the two syndicates at Lloyd's, London denoted as Syndicate Nos. 2623 and 623. Beazley admits that Syndicates 2623 and 623 are syndicates operating in the Lloyd's of London insurance market and are unincorporated associations organized and existing under the laws of the United Kingdom with principal offices in London, United Kingdom, and transact business in the State of California. To the extent any further response is required, Beazley denies the remaining allegations in Paragraph 3.

4. In answer to Paragraph 4, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations in Paragraph 4.

[1] The headings in this Answer are the ones that United included in its Complaint, and not ones added by Beazley, which denies each and every allegation in the headings.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**JURISDICTION & VENUE**

5. Beazley admits this Court has jurisdiction over this action. The allegations in Paragraph 5 otherwise state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley does not dispute the allegations in Paragraph 5.

6. Beazley admits it conducts insurance business in California and that this Court has personal jurisdiction over it. Beazley denies that the allegations fully and accurately state the terms of any insurance policies, which policies speak for themselves, and on that basis, denies the allegations. The remaining allegations in Paragraph 6 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the remaining allegations in Paragraph 6.

7. Beazley admits that this Court is a proper venue for this action. The remaining allegations in Paragraph 7 state legal conclusions to which no response is required. To the extent a further response is required, Beazley denies the remaining allegations in Paragraph 7.

**INTRADISTRICT ASSIGNMENT**

8. In answer to Paragraph 8, Beazley does not dispute that assignment of this case to the San Francisco Division of this Court would be appropriate, but notes that, since the filing of the Complaint seeking assignment to the San Francisco Division, the Court has assigned this matter to the Oakland Division, and Beazley does not dispute the assignment of this case to the Oakland Division. Beazley otherwise denies each and every allegation in Paragraph 8 to the extent they state a legal conclusion.

**FACTUAL BACKGROUND**

9. In answer to Paragraph 9, Beazley admits upon information and belief that United markets dispensers of food grade nitrous oxide for use in the food service, coffee, tea, and beverage industries, and that the dispensers are marketed under the brand name "Whip-It!". To the extent Paragraph 9 implies the dispensers are only used to create whipped cream and to aerate other toppings for appetizers, desserts, beverages, and other culinary items, Beazley denies the allegations. Beazley lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 9, and on that basis, denies the allegations.

10. In answer to Paragraph 10, Beazley admits that Commercial General Liability Insurance Policy No. B0180PN2004369 was issued to more than one Named Insured for the February 6, 2020 to February 6, 2021 Policy Period (referred to in United's Complaint as the "Original Policy") and that a renewal for that policy was issued for the February 6, 2021 to February 6, 2022 Policy Period (referred to in United's Complaint as the "Renewal Policy") (collectively, the Original Policy and the Renewal Policy are referred to in United's Complaint and herein as the "Policies"). To the extent United alleges as such in its Complaint, Beazley denies that the policy numbers for the Original Policy and the Renewal Policy are the same. Beazley denies the remaining allegations in Paragraph 10.

11. In answer to Paragraph 11, Beazley denies that the allegations fully and accurately state the terms of the Policies, which speak for themselves. Beazley lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein. On the foregoing bases, Beazley denies the allegations in Paragraph 11.

12. In answer to Paragraph 12, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies that the allegations fully and accurately interpret California law or the terms of the Policies, which policies speak for themselves, and on that basis, Beazley denies the allegations.

**The *Chaplin* Claim**

13. In answer to Paragraph 13, Beazley admits that in or about April 2021, Karen Chaplin and Jason Politte filed a First Amended Petition against United and other parties in the action entitled *Chaplin, et al. v. Geiger, et al.*, in the Circuit Court of St. Louis County in the State of Missouri, Case No. 20SL-CC06071 (referred to by United in its Complaint as the "Chaplin Claim"). The First Amended Petition in the Chaplin Claim sets forth its allegations and speaks for itself. Beazley denies that United's allegations in Paragraph 13 fully and accurately restate the allegations in the First Amended Petition filed in the Chaplin Claim, and on that basis, denies the allegations. Beazley also lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 respecting service of the First Amended Petition on United and therefore denies the allegations.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

14. In answer to Paragraph 14, Beazley admits it received notice of the First Amended Petition filed in the Chaplin Claim during the policy period of the Renewal Policy. Beazley lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 14, and on that basis, denies the allegations.

**Other Claims**

15. In answer to Paragraph 15, Beazley admits the existence of a February 26, 2021 letter addressed to United from counsel for Traci Grech and Ronald Sampson alleging that on December 1, 2020, there was an explosion caused by a defective canister of Whip-It butane (the "Grech/Sampson Letter"). To the extent Paragraph 15 refers to the Grech/Sampson Letter, Beazley denies that Paragraph 15 fully and accurately restates the contents of the letter, which speaks for itself. To the extent United qualifies the Grech/Sampson Letter as a "Claim" as that term is defined by the Renewal Policy, this allegation is a legal conclusion to which no response is required. Beazley admits that it received a copy of the Grech/Sampson Letter during the policy period of the Renewal Policy. Beazley lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 15, and on that basis, denies the allegations.

16. In answer to Paragraph 16, Beazley admits the existence of a November 30, 2021 letter from counsel for Marcellus Randolph referencing claims for personal injury damages resulting from an incident referred to as "the faulty whip-it charger incident on November 2, 2021" (the "Randolph Letter"). To the extent Paragraph 16 refers to the Randolph Letter, Beazley denies that Paragraph 16 fully and accurately restates the contents of the letter, which speaks for itself. To the extent United qualifies the Randolph Letter as a "Claim" as that term is defined by the Renewal Policy, this allegation is a legal conclusion to which no response is required. Beazley admits that it received a copy of the Randolph Letter during the policy period of the Renewal Policy. Beazley lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 16, and on that basis, denies the allegations.

**DEFENDANTS' DENIAL OF COVERAGE AND REFUSAL TO DEFEND UNITED**

17. In answer to Paragraph 17, Beazley admits that during the policy period of the Renewal Policy, it received notice of the First Amended Petition filed in the Chaplin Claim, a copy of the Grech/Sampson Letter, and a copy of the Randolph Letter. The remaining allegations in Paragraph 17 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

18. In answer to Paragraph 18, Beazley admits that, by letter dated July 15, 2021 (the "July 15, 2021 Letter"), Beazley informed United that, based on the materials and information available, coverage was not available under the Renewal Policy for the Chaplin Claim or Grech/Sampson Letter. Beazley further admits that, by letter dated January 31, 2022 (the "January 31, 2022 Letter"), Beazley informed United that, based on the materials and information available, coverage was not available under the Renewal Policy for the Randolph Letter. Beazley denies that the allegations in Paragraph 18 fully and accurately restate the contents of the July 15, 2021 Letter and January 31, 2022 Letter, which speak for themselves, and on that basis, Beazley denies the allegations. The remaining allegations in Paragraph 18 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

19. In answer to Paragraph 19, Beazley denies that the allegations fully and accurately restate the Specified Exclusion Endorsement, which speaks for itself. Beazley also denies that the allegations fully and accurately restate the contents of the July 15, 2021 Letter, which speaks for itself. On the foregoing bases, Beazley denies the allegations. Further, the remaining allegations in Paragraph 19 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

20. In answer to Paragraph 20, Beazley admits that the July 15, 2021 Letter and the January 31, 2022 Letter are authored by an attorney who is licensed to practice law in Texas and not in California. Beazley also admits that the two letters analyze Beazley's right to deny coverage under California law, but the letters speak for themselves and Beazley denies that the allegations in Paragraph 20 fully and accurately restate their contents. The remaining allegations

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

in Paragraph 20 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

21. Denied.

22. In answer to Paragraph 22, Beazley admits that the July 15, 2021 Letter and January 31, 2022 Letter requested documents, but the letters speak for themselves and Beazley denies that the allegations in Paragraph 22 fully and accurately restate their contents. The remaining allegations in Paragraph 22 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

23. In answer to Paragraph 23, Beazley admits that United's counsel sent a letter dated September 29, 2021. Beazley denies the allegations in Paragraph 23 to the extent they allege the letter was sent directly to Beazley. Further, the September 29, 2021 letter speaks for itself. The remaining allegations in Paragraph 23 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

24. In answer to Paragraph 24, Beazley admits that by letter dated October 18, 2021, its counsel responded to a September 29, 2021 letter from United's counsel. Beazley denies that the allegations in Paragraph 24 fully and accurately restate the contents of the October 18, 2021 letter, which speaks for itself, and on that basis denies the allegations. Beazley denies the remaining allegations of Paragraph 24.

25. In answer to Paragraph 25, Beazley admits its counsel wrote a letter dated November 19, 2021. Beazley denies that the allegations in Paragraph 25 fully and accurately restate the contents of the November 19, 2021 letter, which speaks for itself, and on that basis denies the allegations. The remaining allegations in Paragraph 25 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the remaining allegations of Paragraph 25.

26. The allegations in Paragraph 26 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

27. The allegations in Paragraph 27 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**FIRST CAUSE OF ACTION**
**(Declaratory Relief)**

28. Beazley incorporates by reference its responses to Paragraphs 1 through 27 as though fully set forth herein.

29. In answer to Paragraph 29, Beazley admits that there exists an actual controversy between United and Beazley concerning whether Beazley has an obligation to defend United against the Chaplin Claim. Beazley admits that it has denied coverage for, and refused to defend United against, the Chaplin Claim and that Beazley contends it has no obligation to cover that claim under the Renewal Policy. Beazley admits that Paragraph 29 asserts United's contention. The remaining allegations in Paragraph 29 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

30. In answer to Paragraph 30, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

31. In answer to Paragraph 31, Beazley admits that United is seeking a judicial determination and seeks relief as set forth in its Complaint, but Beazley denies that United is entitled to any of that relief.

**SECOND CAUSE OF ACTION**
**(Declaratory Relief)**

32. Beazley incorporates by reference its responses to Paragraphs 1 through 31 as though fully set forth herein.

33. In answer to Paragraph 33, Beazley admits that it denied coverage for the Chaplin Claim, the Grech/Sampson Letter, and the Randolph Letter. Beazley admits that it denied coverage for the foregoing on grounds that United made material misrepresentations and omissions of fact in its application for the Renewal Policy, but denies that the allegations accurately and fully set forth the full bases for Beazley's denials. Beazley admits that there exists an actual controversy between United and Beazley concerning whether Beazley has an obligation to defend and indemnity United in connection with the Chaplin Claim, Grech/Sampson Letter,

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

and Randolph Letter. Beazley admits that Paragraph 33 asserts United's contentions. Beazley denies the remaining allegations of Paragraph 33.

34. In answer to Paragraph 34, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations.

35. In answer to Paragraph 35, Beazley admits that United is seeking a judicial determination and that it seeks relief as set forth in its Complaint, but Beazley denies that United is entitled to any of that relief.

**THIRD CAUSE OF ACTION**
**(Breach of Contract)**

36. Beazley incorporates by reference its responses to Paragraphs 1 through 35 as though fully set forth herein.

37. In answer to Paragraph 37, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations in Paragraph 37.

38. In answer to Paragraph 38, Beazley admits that United has requested that Beazley provide or pay for United's defense of the Chaplin Claim and that Beazley has denied coverage for the Chaplin Claim, Grech/Sampson Letter, and Randolph Letter. To the extent Paragraph 38 alleges that United requested that Beazley provide or pay for Defendants' defense, Beazley denies the allegations.

39. In answer to Paragraph 39, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations in Paragraph 39.

40. In answer to Paragraph 40, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations in Paragraph 40.

41. In answer to Paragraph 41, Beazley admits that United prays for relief in its Complaint but denies that United is entitled to any of the relief it seeks. Beazley denies the

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

remaining allegations in Paragraph 41.

**FOURTH CAUSE OF ACTION**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

42. Beazley incorporates by reference its responses to Paragraphs 1 through 41 as though fully set forth herein.

43. In answer to Paragraph 43, Beazley admits that it has refused to defend or indemnify United in connection with the Chaplin Claim, Grech/Sampson Letter, and Randolph Letter. The remaining allegations in Paragraph 43 state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the remaining allegations of Paragraph 43 including each subparagraph therein from a. through i, inclusive.

44. In answer to Paragraph 44, Beazley admits that United prays for relief in its Complaint but denies that United is entitled to any of the relief it seeks. Beazley denies the remaining allegations in Paragraph 44.

45. In answer to Paragraph 45, the allegations state legal conclusions to which no response is required. To the extent a response is deemed necessary, Beazley denies the allegations in Paragraph 45.

**PRAYER FOR RELIEF**

No response is required for United's demands for relief. To the extent a response is required, Beazley denies that United is entitled to any relief whatsoever, including any relief sought in subparagraphs 1 through 7 of the Prayer for Relief.

Beazley denies any allegation in the Complaint that is not expressly admitted or denied herein.

**AFFIRMATIVE DEFENSES**

By alleging the following affirmative defenses, Beazley does not assume any burden of production, proof, or persuasion as to such affirmative defenses not otherwise imposed by law. Beazley reserves the right to assert, modify, and/or remove affirmative defenses based on further investigation and discovery, and will seek to amend this Answer accordingly.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**FIRST AFFIRMATIVE DEFENSE**

Pursuant to California Insurance Code § 331, Beazley has no duty to defend or indemnify United in connection with the Chaplin Claim, Grech/Sampson Letter, or Randolph Letter (together, the "Whip-It Matters") under Commercial General Liability – Claims Made Policy No. B0180PNF2000123 issued to United Brands Prods Designs Dev & Marketing Inc; United Brands Product Design & Development, Inc.; and Aeration Industries LLC DBS Aeration Technologies for the February 6, 2021 to February 6, 2022 Policy Period (the "Policy").

**SECOND AFFIRMATIVE DEFENSE**

Beazley has no duty to defend or indemnify United in connection with the Whip-It Matters under the Policy pursuant to California Insurance Code § 332.

**THIRD AFFIRMATIVE DEFENSE**

Beazley has no duty to defend or indemnify United in connection with the Whip-It Matters under the Policy pursuant to California Insurance Code § 359.

**FOURTH AFFIRMATIVE DEFENSE**

United is barred from obtaining relief against Beazley because United failed to provide Beazley with information that Beazley reasonably requested and required in handling claims under the Policy, including but not limited to United's concealment of material facts in connection with Beazley's handling of claims under the Policy.

**FIFTH AFFIRMATIVE DEFENSE**

United is barred from obtaining relief against Beazley on grounds that United or a person or entity acting on behalf of United misrepresented, concealed, and/or failed to disclose material facts in the course of applying for, and/or during the underwriting process leading to the issuance of, the Policy, as well as in the course of applying for and/or during the underwriting process leading to the issuance of Commercial General Liability – Claims Made Policy No. B0180PN2004369 issued to the Named Insureds for the February 6, 2020 to February 6, 2021 Policy Period.

**SIXTH AFFIRMATIVE DEFENSE**

Any obligation on the part of Beazley to pay defense or indemnity costs under the Policy

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

is barred by United's, or a person or entity acting on behalf of United's, breach of one or more of the Policy's conditions including but not limited to Section V.13.

**SEVENTH AFFIRMATIVE DEFENSE**

Beazley has the right to rescind the Policy pursuant to California Insurance Code § 331.

**EIGHTH AFFIRMATIVE DEFENSE**

Beazley has the right to rescind the Policy pursuant to California Insurance Code § 332.

**NINTH AFFIRMATIVE DEFENSE**

Beazley has the right to rescind the Policy pursuant to California Insurance Code § 359.

**TENTH AFFIRMATIVE DEFENSE**

Beazley has the right to rescind the Policy pursuant to Policy Section V.13.

**ELEVENTH AFFIRMATIVE DEFENSE**

United is barred from obtaining relief against Beazley because United failed to comply with Policy Section V.8. DUTIES IN THE EVENT OF AN **OCCURRENCE**[2], **OFFENSE**, or **SUIT**, which requires, among other things, that "[**y**]**ou** must see to it that [Beazley is] notified immediately of an **occurrence** or offense which may result in a **claim**. Notice should include . . . [h]ow, when and where the **occurrence** or offense took place; . . . [t]he names and addresses of any injured persons and witnesses; and . . . [t]he nature and location of any injury or damage arising out of the **occurrence** or offense." Further, "[i]f a **claim** is brought against **you**, **you** must . . . "[i]mmediately record the specifics of the **claim** or **suit** and the date received, and . . . notify [Beazley] as soon as practicable, but not more than ten (10) days following initial notice of the **claim**. **You** must see to it that [Beazley] receive[s] written notice of the **claim** or **suit** as soon as practicable, but no greater than ten (10) days following initial notice of an **occurrence** or offense. Failure to comply with this notice provision may result in the elimination of coverage under this policy." Additionally, Policy Section V.8 requires an insured to cooperate in the investigation of a **claim** or **suit**. Beazley alleges that United failed to comply with the conditions of coverage set forth in Policy Section V.8. by, among other things, failing to provide Beazley with information

[2] For purposes of Beazley's Affirmative Defenses, terms in **bold**, with the exception of headings, are defined in the Policy.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

and documents it requested, as well as failing to provide notice of the Grech/Sampson Letter and/or Randolph Letter in a manner that complied with Policy Section V.8. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## TWELFTH AFFIRMATIVE DEFENSE

Beazley has no duty to defend or indemnify United with respect to any of the Whip-It Matters where the damages alleged against United do not constitute "damages for 'bodily injury'" as required by the Policy. Section I.A.1. of the Policy provides, in relevant part: "**We** will pay those sums that **you** become legally obligated to pay . . . as **damages** for **bodily injury** . . . to which this insurance applies. **We** will have the right and duty to defend any **suit** seeking those **damages** to which this insurance applies. However, **we** will have no duty to defend **you** or pay those sums that **you** become legally obligated to pay as **damages** for **bodily injury** . . . to which this insurance does not apply." Policy Section VI.3. defines "**bodily injury**" as "physical injury, physical sickness or physical disease sustained by any person, including death resulting therefrom. **Bodily injury** does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar conditions." Plaintiffs in the Chaplin Claim seeks damages for, *inter alia*, pecuniary losses suffered by reason of their daughter's death; funeral expenses; the reasonable value of their daughter's services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support; and "mitigating or aggravating circumstances." Plaintiffs also seek damages based on United's alleged unfair and deceptive trade practices and unlawful civil conspiracy. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## THIRTEENTH AFFIRMATIVE DEFENSE

Beazley has no duty to defend or indemnify United with respect to any of the Whip-It Matters for damages alleged therein that were not caused by an **occurrence**, which is defined by the Policy to mean "an accident, including continuous or repeated exposure to substantially the same general harm, that first takes place during the policy period." Policy, Section VI.18. United sold and/or distributed its products to tobacco stores, smoke shops, head shops, and/or gas stations with the knowledge that the products were then sold to consumers for illicit uses.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Furthermore, Plaintiffs in the Chaplin Claim allege United sold "outrageous quantities" of nitrous oxide chargers to Coughing Cardinal despite having actual knowledge of the nature of Coughing Cardinal's store, and knowing that Coughing Cardinal was going to sell nitrous oxide to the public for use as a recreational drug. Plaintiffs in the Chaplin Claim also allege United "has intentionally poured illicit drugs into Missouri, with complete disregard for the safety of others," and "knowingly and deceptively distributed nitrous oxide to the public knowing and intending that it was going to be sold and used as a recreational drug." Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## FOURTEENTH AFFIRMATIVE DEFENSE

Beazley has no duty to defend United with respect to any of the Whip-It Matters that fail to constitute a **suit**, which is defined in the Policy, in part, as "a civil proceeding in which damage because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which [the] insurance applies are alleged." Policy, Section VI.26. At a minimum, the Grech/Sampson Letter and Randolph Letter do not constitute a **suit**. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## FIFTEENTH AFFIRMATIVE DEFENSE

Beazley has no duty to defend or indemnify United with respect to any of the Whip-It Matters because coverage is barred by the Specified Exclusion Endorsement, pursuant to which coverage under the Policy "does not apply to any **Claim** or **Claims** arising out of any of the following . . . Excluding and [sic – any] known circumstances including further claims arising from Jacob Snyder claim[.]" This exclusionary language was added to the Policy to bar coverage for claims such as the Chaplin Claim. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## SIXTEENTH AFFIRMATIVE DEFENSE

Beazley has no duty to defend or indemnify United with respect to any of the Whip-It Matters because coverage is barred by the Expected or Intended Injury Exclusion, which bars coverage under the Policy for "[**b**]**odily injury** or **property damage** expected or intended from **your** standpoint." Policy, Section I, Exclusions: Coverage A, Exclusion a. United sold and/or

distributed its products to tobacco stores, smoke shops, head shops, and/or gas stations with the knowledge that the products were then sold to consumers for illicit uses. Furthermore, Plaintiffs in the Chaplin Claim allege United sold "outrageous quantities" of nitrous oxide chargers to Coughing Cardinal despite having actual knowledge of the nature of Coughing Cardinal's store, and knowing that Coughing Cardinal was going to sell nitrous oxide to the public for use as a recreational drug. Plaintiffs in the Chaplin Claim also allege United "has intentionally poured illicit drugs into Missouri, with complete disregard for the safety of others," and "knowingly and deceptively distributed nitrous oxide to the public knowing and intending that it was going to be sold and used as a recreational drug." Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Beazley has no duty to defend or indemnify United with respect to any of the Whip-It Matters because coverage is barred by the Contractual Liability Exclusion, which bars coverage under the Policy for "[**b**]**odily injury** or **property damage** for which **you** are obligated to pay **damages** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for **damages**: . . . [a]ssumed by **you** in a written contract or written agreement that is an **Insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the written contract or written agreement and provided the **property damage** or **bodily injury** results from **your** negligence, fault or comparative fault and is not otherwise excluded by the terms of th[e] Policy; or . . . [t]hat **you** would have in the absence of a contract or agreement. Policy, Section I, Exclusions: Coverage A, Exclusion b. United sold and/or distributed its products to tobacco stores, smoke shops, head shops, and/or gas stations pursuant to contract or agreement. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Beazley alleges that in the event there is a determination that Beazley has any obligation to pay defense or indemnity costs in connection with any of the Whip-It Matters, any such obligation may be barred or limited by the Policy's "Other Insurance" provision, Policy Section

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

V.10, which provides, in part, that if "other insurance is available to **you** for a damage **we** cover under Coverages A, B or C of th[e] [P]olicy, [Beazley's] obligations are limited" as provided in the provision. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense, including the existence of other insurance available to United providing coverage with respect to the Whip-It Matters.

**NINETEENTH AFFIRMATIVE DEFENSE**

United is barred from obtaining relief against Beazley, in whole or in part, where other insurance policies or risk transfer agreements provide coverage or indemnity to United for amounts for which United seeks coverage under the Policy. Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense, including the existence of other insurance policies or risk transfer agreements that provide coverage or indemnity to United for amounts for which United seeks coverage under the Policy.

**TWENTIETH AFFIRMATIVE DEFENSE**

Beazley alleges that if it is found to owe any obligation to United under the Policy, it nevertheless has no obligation to pay any amounts that are within the Policy's deductible.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Beazley has no obligation, if any obligation is found at all, to pay any amounts that exceed the Policy's "per occurrence" or aggregate limits of liability.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

There is no coverage under the Policy for fines, penalties, punitive damages, or exemplary damages as such amounts are barred by the Policy's provisions, applicable law, and/or public policy.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

United has failed to plead its allegations with sufficient particularity including but not limited to its allegations of malice, fraud, and oppression.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

United's claims are barred in whole or in part by the doctrine of estoppel. Although Beazley anticipates that discovery in this action will reveal further facts supporting this

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

affirmative defense, at a minimum, Beazley alleges that United knowingly misrepresented or withheld information in applications for insurance and during the underwriting process leading to the issuance of the Policies; Beazley was ignorant of the true facts that were misrepresented or withheld; United intended its conduct to be acted upon, or acted in a manner that Beazley had a right to believe it so intended; and Beazley relied on United's conduct to its detriment.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

United's claims are barred in whole or in part by the doctrine of waiver. Although Beazley anticipates that discovery in this action will reveal further facts supporting this affirmative defense, at a minimum, Beazley alleges that United relinquished any right to coverage or acted so inconsistent with an intent to enforce any right to coverage as to induce a reasonable belief that such right was relinquished, by knowingly misrepresenting or withholding information in applications for insurance and during the underwriting process leading to the issuance of the Policies.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

United's claims are barred in whole or in part by the doctrine of unclean hands, because United acted wrongfully, inequitably, and/or in bad faith by misrepresenting and/or omitting material facts in the course of procuring insurance from Beazley under which insurance United now asserts that it is owed coverage.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

United's claims are barred where United failed to mitigate, minimize, or avoid the damage for which United is seeking coverage under the Policy. Alternatively, if this Court finds that any such damage is covered under the Policy, any recovery against Beazley must be reduced because of the failure to mitigate, minimize, or avoid the damage.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

United is barred from obtaining relief against Beazley based on public policy. It would contravene public policy to allow United to recover any damages in this action after

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

misrepresenting and/or omitting material facts in the course of procuring insurance from Beazley.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

United's claims are barred where United has failed to join a party required under Fed. R. Civ. P. 19.

**THIRTIETH AFFIRMATIVE DEFENSE**

United's claims are barred where other parties and third persons not parties to this action were legally responsible or otherwise at fault for the amounts sought in the Whip-It Matters. Beazley requests that, in the event of a finding of any liability in favor of United or settlement or judgment against Beazley, an apportionment of fault be made among all parties by the Court or jury. Beazley further requests a judgment and declaration of indemnification, contribution, settlement offset, and/or any other allocation against all other parties or persons in accordance with the apportionment of fault.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

There is no coverage for any amounts that are properly the responsibility of third parties.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

United's claim is barred, in whole or in part, because Beazley's coverage decisions with respect to the Whip-It Matters were based upon and made with the advice of counsel.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

Beazley affirmatively asserts any other matter constituting an avoidance or affirmative defense that proves applicable and reserves the right to assert additional defenses that may be revealed or become available during further investigation or discovery in this action.

**RESERVATION OF RIGHTS**

Beazley does not waive any applicable provisions of the Policy, equity, or the law. Beazley reserves the right to rely on all applicable provisions of the Policy, equity, or law which may pertain to United's Complaint, and each purported cause of action therein, whether or not specifically referenced or quoted above. Beazley reserves the right to amend its answer, in whole or in part, including to add and/or remove defenses, and to assert crossclaims or third-party actions as additional facts are obtained through investigation and discovery.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**PRAYER FOR RELIEF**

**WHEREFORE**, Beazley prays for judgment as follows:

1. That United takes nothing by reason of its Complaint;

2. That judgment be entered in favor of Beazley and against United on all causes of action;

3. That all claims against Beazley be dismissed with prejudice;

4. That Beazley be awarded its costs of suit incurred herein; and

5. That the Court grant Beazley such other, further, and different relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Beazley demands a trial by jury on all issues triable by jury.

**COUNTERCLAIM**

Defendant/Counter-Plaintiff Certain Underwriters at Lloyd's, London Denoted as Syndicate Numbers AFB 623 and AFB 2623 ("Beazley"), by and through its undersigned counsel, hereby submits this Counterclaim against Plaintiff/Counter-Defendant United Brands Products Design Development & Marketing, Inc. ("United") and complains and alleges as follows:

**PARTIES**

1. Certain Underwriters at Lloyd's, London Denoted as Syndicate Numbers AFB 623 and AFB 2623 under Binding Authority Reference B0180PNF200123 are underwriters that operate in and subscribe to insurance policies issued from the Lloyd's of London insurance market, are underwriters of the subject policy issued to United, and are authorized to transact business in the State of California.

2. Beazley is informed and believes, and on that basis alleges, that United Brands Products Design Development & Marketing, Inc. is a corporation formed under California law with its principal place of business in South San Francisco, California.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between United and Beazley.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391.

## DIVISIONAL ASSIGNMENT

5. Pursuant to N.D. Cal. Local Rules 3-5(b) and 3-2(c), Beazley believes that the convenience of parties and witnesses and the interests of justice will be served by assigning this action to the Oakland Division of this Court.

## FACTUAL ALLEGATIONS

### A. The Policies

6. Beazley issued Commercial General Liability – Claims Made Insurance Policy No. B0180PNF2000123 to United Brands Prods Designs Dev & Marketing Inc; United Brands Product Design & Development, Inc.; and Aeration Industries LLC DBS Aeration Technologies (collectively, the "Named Insureds") for the February 6, 2021 to February 6, 2022 Policy Period (the "Policy," a copy of which is attached as **Exhibit A**). The Policy is a renewal of Commercial General Liability – Claims Made Policy No. B0180PN2004369 issued to the Named Insureds for the February 6, 2020 to February 6, 2021 Policy Period (the "2020 Policy") (collectively, for purposes of this Counterclaim, the 2020 Policy and the Policy are referred to as the "Policies").

7. Subject to its respective terms, conditions, and limitations, the Policy generally provides commercial general liability coverage on a claims-made-and-reported basis for certain **claims**[3] for **damages** for, among other things, **bodily injury** and **property damage**.

8. Section I.A.1. of the Policy provides, in relevant part:

> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. INSURING AGREEMENT**
> **We** will pay those sums that **you** become legally obligated to pay in excess of the self-insured retention as **damages**

---

[3] For purposes of Beazley's Counterclaim, terms in **bold**, with the exception of headings, are defined in the Policy.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

for **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend any **suit** seeking those **damages** to which this insurance applies. However, **we** will have no duty to defend **you** or pay those sums that **you** become legally obligated to pay as **damages** for **bodily injury** or **property damage** to which this insurance does not apply.

9. Section VI.26. of the Policy defines **suit** or **suits** as "a civil proceeding in which **damage** because of **bodily injury**, **property damage**, **personal injury**, or **advertising** injury to which this insurance applies are alleged. **Suit** or **Suits** includes: a. An arbitration proceeding in which such **damages** are claimed and to which **you** must submit or do submit with **our** consent; or b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which **you** submit with **our** consent."

10. Pursuant to Section V.5. of the Policy, the term "**Claim** or **Claims** means a request or a demand received by **you** or **us** for money or services, including the service of **suit** or institution of arbitration proceedings against **you**."

11. Section V.13 of the Policy provides:

13. REPRESENTATIONS

By accepting this policy, **you** agree:

a. The statements in the Declarations, application, any application for Insurance of which this Policy is a renewal and any supplemental materials submitted therewith are accurate and complete;

b. Those statements are based upon **your** agreements and representations made to **us**; and

c. **We** have issued this policy in reliance upon your representations.

d. **Your** representations were express warranties.

e. A determination that **your** representations were false or as a result of non-disclosure of any matter by **you** or **your** agent, will result in rescission of this agreement and relieve **us** from all liability under this Policy.

f. The application and any application for Insurance of

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

which this Policy is a renewal, and any supplemental materials submitted therewith are deemed incorporated into and made a part of this Policy.

12. The Policy is modified by a Specified Exclusion Endorsement that provides, in relevant part, that the insurance "does not apply to any **Claim** or **Claims** arising out of any of the following . . . Excluding and [sic – any] known circumstances including further claims arising from Jacob Snyder claim."

**B. <u>The *Chaplin* Lawsuit</u>**

13. On or about December 16, 2020, Karen Chaplin and Jason Politte (the "*Chaplin* Plaintiffs") filed a Petition in the lawsuit captioned *Chaplin, et al. v. Geiger, et al.*, Case No. 20SL-CC06071 (Missouri Circuit Court, St. Louis County) (the "*Chaplin* Lawsuit").

14. On April 22, 2021, the *Chaplin* Plaintiffs filed a First Amended Petition against United Brands Products Design Development and Marketing dba United Brands Corporation, Coughing Cardinal, LLC ("Coughing Cardinal"), and other parties.

15. In the First Amended Petition, the *Chaplin* Plaintiffs allege, among other things, that their daughter was killed on October 18, 2020, when she was struck by a vehicle driven by Trenton Geiger, who was allegedly addicted to, and under the influence of, nitrous oxide he had inhaled for illicit, recreational use.

16. The *Chaplin* Plaintiffs allege that nitrous oxide, also known as laughing gas, is a colorless, odorless, non-flammable gas that is manufactured and sold for various purposes including as a whipping propellant for food-grade aerosols. Unlike medical-grade nitrous oxide, food-grade nitrous oxide is allegedly not combined with oxygen, resulting in higher concentrations of pure nitrous oxide that, when inhaled, deprives the body of oxygen and can cause nerve damage, unconsciousness, or death. According to the First Amended Petition, it is well known to the public, including United, that nitrous oxide is often sold and used as an illicit drug, known as "Whip-its" or "whippits" to users, either by puncturing and inhaling canisters (often called "chargers") or filling balloons and inhaling the balloons, and that it is addictive and used illicitly by millions of people throughout the United States.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

17. The *Chaplin* Plaintiffs allege United designs, manufactures, sells, and distributes nitrous oxide chargers under the "WhipIt!®" trade name. Since the early 2000s, United has allegedly known about the illicit market for its chargers, and has improperly and unethically sought to exploit this market through marketing and making sales to retailers, including tobacco stores and "head shops" like Coughing Cardinal, that allegedly have no plausible reason to sell food products, but rather sell only smoke inhalation products and drug paraphernalia such as pipes, bongs, one-hitters, roach clips, dabs, and drug detox kits. The *Chaplin* Plaintiffs further allege United sold "outrageous quantities" of its nitrous oxide chargers directly to Coughing Cardinal despite having actual knowledge of the nature of Coughing Cardinal's store and that Coughing Cardinal was going to sell nitrous oxide to the public for use as a recreational drug. The *Chaplin* Plaintiffs also allege United sold its nitrous oxide chargers to Coughing Cardinal and other similar retailers knowing that multiple states' legislatures and attorneys general have tried to prohibit sales of such products by such retailers, and that United hired lobbyists to fight against such legislative measures so that it could continue selling, directly and indirectly, to Coughing Cardinal.

18. In the First Amended Petition, the *Chaplin* Plaintiffs further allege that Mr. Geiger was addicted to nitrous oxide sold by Coughing Cardinal and United, that Coughing Cardinal sold Whip-It! brand nitrous oxide to Mr. Geiger though it knew or should have known he intended to inhale it for recreational use, and that the nitrous oxide sold by Coughing Cardinal to Mr. Geiger was designed, manufactured, and/or distributed to Coughing Cardinal by United. The *Chaplin* Plaintiffs also allege United targeted potential users of recreational nitrous oxide through internet and social media advertising, and marketed nitrous oxide with items associated with drug culture, including butane torches, in packaging and merchandising suggestive of recreational use.

19. As against United, the *Chaplin* Plaintiffs assert four counts in the First Amended Petition for negligence, strict products liability, unfair and deceptive practices in violation of the Missouri Merchandising Practices Act, and civil conspiracy.

**C. <u>The Grech/Sampson Letter</u>**

20. By February 26, 2021 letter addressed to United, counsel for Traci Grech and Ronald Sampson alleged that Ms. Grech and Mr. Sampson were injured on December 1, 2020 by an explosion caused by a defective can of Whip-It butane, and asked United to open and investigate a products liability claim (the "Grech/Sampson Letter").

**D. <u>The Randolph Letter</u>**

21. By November 30, 2021 letter addressed to Whip-It! Brand, counsel for Marcellus Randolph wrote that it represented Mr. Randolph's claims for personal injury damages resulting from a faulty whip-it charger incident on November 2, 2021, and suggested that Whip-It! Brand report the incident and the involvement of Mr. Randolph's counsel to its "liability or other insurance coverage" (the "Randolph Letter") (together with the *Chaplin* Lawsuit and Grech/Sampson Letter, the "Whip-It Matters").

**E. <u>United's Material Misrepresentations and Omissions During the Course of Applying for the Policies</u>**

22. During the course of applying for the Policies, and during the underwriting process leading to the issuance of the Policies, United failed to disclose the full nature of its business involving the attendant risks of distributing its products to retailers specializing in selling customers drug paraphernalia – for example, United failed to expressly disclose that it sold or distributed its products to tobacco stores, smoke shops, head shops, or gas stations, with the knowledge that the products were then sold to consumers for illicit uses. United additionally failed to disclose that it had been sued in multiple lawsuits alleging United knowingly sold its products to such businesses to then be sold to customers for recreational drug use.

***1. The Application Process for the 2020 Policy***

23. United made material misrepresentations and omissions in the course of applying for the 2020 Policy.

24. For instance, on December 30, 2019, United's broker wrote to Beazley's underwriting department with a "New Business Submission," seeking to purchase insurance from Beazley. The email stated, "Insured provides wholesale distribution of different restaurant industry supplies like the whip cream No2 gas chargers, dispensers, and drink siphons as well as

butane aerosol cans used by coffee companies. These items are used by coffee companies to in essence put foam on your drink." The email additionally provided certain information regarding the estimated sales for 2019, with a product split of 70% chargers, 5% dispensers, 20% butane, and 5% torches. However, United did not disclose information as to whom those sales were made. In fact, the provision of the sales data along with quotes from the company's website touting United's products as the "best choice for bringing your culinary imagination to life," whether "you are a culinary professional, barista, bartender, or enthusiast home cook," gave absolutely no indication that United distributed its products anywhere outside the restaurant/culinary industry.

25. The December 30, 2019 email further referenced three known claims involving the illicit use of United's products: (1) a lawsuit by Jacob Snyder seeking to hold United and others responsible for his addiction to nitrous oxide/whippit cannisters to get high (the "*Snyder* Lawsuit"); (2) a lawsuit by Jacob Magley alleging injuries sustained when he was using United's butane Whip-It product to extract cannabinoids from cannabis plant material (the "*Magley* Lawsuit"); and (3) an unidentified lawsuit "by a claimant that alleges our Insured's product caused him to become addicted."

26. Nothing in the December 30, 2019, email indicated that the aspect of United's business of distributing its products to retailers specializing in selling drug paraphernalia, which was unknown to Beazley, was at issue in the three claims identified in the email.

27. In response to the December 30, 2019, email from United's broker, Beazley's underwriting department indicated that it had to take into account claims stemming from illicit use of United's products, and thus would have to include language in the policy excluding any such known circumstances including further claims arising from the Jacob Snyder claim. Such exclusionary language was added to the Policies through the Specified Exclusion Endorsement, plainly illustrating that Beazley did not intend to cover claims arising from the illicit use of United's products. However, United failed to disclose the segment of its business model that sold and/or distributed nitrous oxide products to retailers such as smoke shops, who clearly had no intent to sell the products for culinary use.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

28. On February 6, 2020, in furtherance of United's New Business Submission, United's broker emailed Beazley's underwriting department additional information regarding the nature of United's products, copying the following language from the "Description" section of the Whip-It! brand website:

> Our uncompromising attention to detail means fast, reliable, money-saving, glorious fluffy mounds of additive-free whipped cream. Just a single charger provides enough nitrous oxide propellant to generate more than double the volume of cream whipped by hand or an electric mixer. It is equally useful for producing luscious foams and espuma for molecular gastronomy creations, as well as quick-infusing spirits for inventive cocktails. Whether you are a culinary professional, barista, bartender, or enthusiast home cook, the Whip-It cream charger is the best choice for bringing your culinary imagination to life.

The February 6, 2020, email also attached various website/product packaging warnings and disclaimers advising purchasers of the dangerous effects of using the product improperly, including by inhalation. The fact that United provided copies of product disclaimers and warnings related to misuse of its products underscores that United should also have disclosed that, despite these safety warnings, it sold and/or distributed its products directly to retailers who specialize in selling illicit drug paraphernalia.

29. Nothing about the descriptions of United's business operations and product use put Beazley on notice that United sold or distributed products to retailers specializing in the sale of drug paraphernalia.

30. Notwithstanding United's knowledge and acknowledgment of the illicit use of its products, which it repeatedly described to Beazley as being tailored to the culinary industry, United did not disclose to Beazley that it sold and/or distributed its products to retailers known to specialize in drug paraphernalia. Had Beazley known of this aspect of United's business, it would not have written or renewed the 2020 Policy. The intended use of a product is essential to Beazley's underwriting position, and understanding that United's products were being sold with another intent or in an environment that clearly was not in line with the declared product purpose would have changed the underwriting outlook entirely. The fact that United has been named in at

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

least five lawsuits (in addition to the *Chaplin* Lawsuit), discussed further below, involving its sale and/or distribution to retailers of drug paraphernalia, underscores the importance of this information being disclosed to Beazley.

***2. The November 4, 2020 Application***

31. In its November 4, 2020, application for the Policy (the "November 4, 2020 Application"), which requested and required material information, in the "Nature of Business" section, United indicated: "Wholesale distribution of different restaurant industry supplies like whip cream No2 gas chargers, dispensers and drink siphons as well as butain [sic] aerosol cans used by coffee companies." The November 4, 2020 Application did not disclose that United sold or distributed its products to tobacco stores, smoke shops, head shops, gas stations, or other similar retailers where its products would clearly not be sold for use in the restaurant industry or the like.

32. In the November 4, 2020 Application, United was required to provide its "Loss History," and "enter all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the last 5 years." United listed four total losses as follows (paraphrased from the November 4, 2020 Application):

| Date of Occurrence | Type/Description of Occurrence or Claim | Date of Claim |
|---|---|---|
| 01/28/2013 | Whip it cannister blew off into claimant | 01/28/2013 |
| 09/26/2017 | BI product ignited and alleged caused BI and Burns | 10/16/2016 |
| 10/19/2016 | Injury resulting from explosion of product[4] | 09/19/2017 |
| 12/01/2016 | Alleged fatality while using product | 12/08/2016 |

33. The November 4, 2020 Application also contained the following notice (emphasis original):

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE INQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

34. Notwithstanding the November 4, 2020 Application's requirement to provide all

[4] Beazley determined this is in reference to the *Magley* Lawsuit, discussed further below.

known claims, losses, or occurrences that might give rise to claims, whether covered or not, and regardless of fault, for the 5 years preceding November 4, 2020, United failed to disclose at least the following claims on the November 4, 2020 Application that Beazley has since been able to locate via publicly available information:

a. A lawsuit for trademark infringement and unfair competition filed by KCI Newport, Inc. on or about December 17, 2015, in the U.S. District Court for the Central District of California in an action captioned *KCI Newport, Inc., et al. v. United Brands Products Design Development and Marketing, Inc., et al.*, No. 2:15-cv-09722.

b. The *Snyder* Lawsuit, filed by Jacob Snyder on or about October 25, 2018, in the Circuit Court of the City of St. Louis captioned *Snyder v. Sunshine Daydream, Inc.*, Case No. 1822-CC10880, alleging United designs, manufactures, distributes, and sells nitrous oxide chargers and other products to the public, including by distributing to head shops including specifically Coughing Cardinal, knowing they will be used illicitly.

c. A lawsuit filed by Courtney Burris on or about May 28, 2020, in the San Francisco County Superior Court captioned *Burris v. United Brands, Inc. dba Whip-It, et al.*, Case No. CGC-20-584611 ("*Burris* Lawsuit"), seeking to recover damages from United and defendant A-1 Smoke Shop stemming from injuries she allegedly suffered when a Whip- It dispenser she was using to make mixed drinks exploded.

d. A lawsuit filed by Damon Hammond on or about July 10, 2020, in San Francisco County Superior Court captioned *Hammond v. United Brands Product Design Development and Marketing, Inc., et al.*, Case No. CGC-20-585409 ("*Hammond* Lawsuit"), seeking to recover for injuries he allegedly sustained as a result of inhaling Whip-Its manufactured and distributed by United and sold by co-defendant Safia Qasam dba World of Smoke ("World of Smoke").

e. A complaint for injunction, civil penalties, and other relief filed by the State of California on October 19, 2020, in the San Mateo County, California Superior Court captioned *The People of the State of California v. United Brands Products Design, Development and Marketing, Inc.*, No. 20-CIV-04590 ("*State of California* Lawsuit"), for failing to verify the

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

identity or age of online purchasers of its nitrous oxide cartridges, and failing to provide statutorily required health and safety warnings to such purchasers. United also did not disclose the Stipulated Final Judgment entered in the *State of California* Lawsuit the following day, wherein United agreed to pay $40,000 in civil penalties and $10,000 in costs.

35. Failing to disclose these matters on the November 4, 2020 Application, which per Section V.13. of the Policy was deemed incorporated into and made part of the policy, and upon which Beazley relied in issuing the Policy, implicates Policy Section V.13. and the California Insurance Code.

36. Further, loss runs submitted to Underwriters in connection with applying for the Policies briefly and generically (and at times incorrectly) described the *Snyder*, *Magley*, *Hammond*, and *Burris* Lawsuits noted above, *i.e.*, they described: the *Hammond* Lawsuit as "Bodily Injury: False Advertising"; the *Snyder* Lawsuit as "allegations relating to use of nitrous oxide products such as Whip its"; the *Burris* Lawsuit (incorrectly) as "Bodily Injury: injury due to inhaling Whip Its from a whip cream dispenser"; and the *Magley* Lawsuit as "Plaintiff alleges injury resulting from an explosion involving a butane product known as 'Whip-it'" and "Bodily Injury: product ignited and alleged caused bodily injury and burns." Those loss runs did not contain sufficient information regarding those claims that would have been material to Beazley's decision to issue the Policy – namely, that all four of those lawsuits involved allegations about United's distribution, sale, and/or marketing of its nitrous oxide cannisters to smoke shops, head shops, tobacco stores, gas stations, and/or other similar stores that sell drug paraphernalia. Nothing in the loss run descriptions put Beazley on notice that plaintiffs were making claims against United stemming from its alleged distribution of products to retailers of drug paraphernalia, and certainly nothing contained in these descriptions or any information provided by United put Beazley on notice that United had, in fact, sold or distributed its products to such retailers. Of note:

a. The *Snyder* Lawsuit alleges United designs, manufactures, distributes, or sells nitrous oxide chargers and other products to the public knowing they will be used as intoxicating recreational drugs and/or drug paraphernalia. The

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

complaint also alleges United provides an unreasonable quantity of nitrous oxide chargers to the public, including by distributing its nitrous oxide chargers and paraphernalia to various head shops, including specifically Coughing Cardinal – the same retailer named as a co-defendant in the *Chaplin* Lawsuit – knowing they are going to be sold for illicit purposes.

b. The *Magley* Lawsuit, which stems from claims the plaintiff was injured by an exploding Whip-It! butane product when he was using the product to extract cannabinoids from cannabis plant material, involves allegations that the product plaintiff purchased from a tobacco shop called Under the Bridge Cigarettes was supplied and/or manufactured by United.

c. The *Hammond* Lawsuit seeks to recover for injuries plaintiff allegedly sustained as a result of inhaling Whip-Its manufactured and distributed by United and sold by co-defendant World of Smoke. Of note, plaintiff alleges Whip-Its are regularly sold in head shops, smoke shops, gas stations, and tobacco stores, where they are often displayed on counters alongside cigars and rolling paper. Plaintiff also alleges United and World of Smoke "sell these canisters as drugs to be inhaled," and that plaintiff "began regularly obtaining Whip-Its, manufactured and distributed by United, and accessories for inhaling nitrous oxide from World of Smoke."

d. The *Burris* Lawsuit seeks to recover damages from United and A-1 Smoke Shop stemming from injuries the plaintiff allegedly suffered when a Whip-It dispenser she was using to make mixed drinks exploded. Of note, the complaint alleges United distributed its Whip-It dispensers in California and that plaintiff purchased the defective product from the A-1 Smoke Shop located in California.

37. United's failure to disclose its full and accurate loss history as required by the November 4, 2020 Application, and failure to disclose the full extent of the nature of the lawsuits that were only generally listed on United's loss runs, is a violation of Section V.13 of the Policy

and California Insurance Code §§ 331, 332, and 359. Specifically, had United fully disclosed the existence and nature of the above-discussed claims, all but one of which involved distribution to retailers of drug paraphernalia and/or illicit use of United's products, Beazley would not have issued the Policy or would have issued it on materially different terms.

***3. Materiality of the Misrepresented and Undisclosed Information***

38. Beazley would not have issued the Policies, or would have issued the Policies on different terms, had Beazley been provided with complete, true, and correct information regarding the nature of United's business and the prior claims asserted against United, as requested in insurance applications.

39. Dealing fairly and in good faith with United, Beazley provided United with many opportunities for United to provide information supporting United's contention that it did not make any material misrepresentations or omissions in connection with applying for the Policies. United has not done so.

**F. Beazley's Denials of Coverage**

***1. Chaplin Lawsuit and Grech/Sampson Letter***

40. United tendered the First Amended Petition in the *Chaplin* Lawsuit to Beazley on May 7, 2021, during the policy period for the Policy.

41. Beazley acknowledged receipt of the tender pursuant to a full reservation of rights and requested additional information.

42. In connection with Beazley's investigation of the claim seeking coverage for the *Chaplin* Lawsuit, Beazley requested further information. In response to such requests for information, on May 17, 2021, United acknowledged that it had sold and/or distributed its products to Coughing Cardinal. However, United had not previously disclosed this aspect of its business to Beazley during the underwriting or application process for the Policies, despite having several opportunities to do so.

43. United also provided a copy of the Grech/Sampson Letter to Beazley and requested insurance coverage for same under the Policy.

44. After conducting a thorough investigation, Beazley issued a July 15, 2021 letter

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

denying coverage for the *Chaplin* Lawsuit and the Grech/Sampson Letter under the Policy, explaining that, in the course of applying for coverage, United failed to disclose the full nature of its business and prior claims involving the attendant risks of distributing its products to retailers specializing in selling drug paraphernalia. This was a material misrepresentation and omission that, if disclosed, would have led Beazley to not issue the Policy, or, at a minimum, issue the Policy on substantially different terms. As a result, Beazley determined it had grounds under the Policy and applicable law to rescind the Policy and render it *void ab initio*. However, recognizing the severity of rescission and attendant ramifications to policyholders, Beazley agreed instead to deny coverage for the *Chaplin* Lawsuit and Grech/Sampson Letter in lieu of full rescission of the Policy. In the letter, Beazley reserved all of its rights including the right to conduct a further investigation into the representations made by United in connection with applying for the Policy and whether Beazley had grounds to rescind the Policy altogether instead of denying coverage for the *Chaplin* Lawsuit and Grech/Sampson Letter. To that end, Beazley requested further information and materials from United.

45. In the July 15, 2021 letter, Beazley also denied coverage pursuant to the Specified Exclusion Endorsement and explained that, while coverage was otherwise unavailable, Beazley had no duty to defend United in connection with the Grech/Sampson Letter because that matter does not constitute a **suit** as defined by the Policy.

46. By letter dated September 29, 2021, counsel for United responded to the July 15, 2021 letter, requesting that Beazley reconsider its denial of coverage. United did not include any responses or further documents requested by Beazley in its July 15, 2021 letter, or any explanation as to why such responses and/or documents were unavailable or did not exist.

47. By letters through counsel dated October 18 and November 19, 2021, Beazley responded to the September 29, 2021 letter from United, reiterating its requests for further information and materials.

48. By letter dated February 1, 2022, counsel for United responded to the October 18 and November 19, 2021 letters from Beazley, asserting that United would not make efforts to search for and provide the requested materials and information unless Beazley agreed to provide

United with a defense of the *Chaplin* Lawsuit.

***2. Randolph Letter***

49. On December 16, 2021, United provided a copy of the Randolph Letter to Beazley and requested coverage under the Policy.

50. By letter dated January 31, 2022, Beazley advised United that Beazley did not have a duty to defend United in connection with the Randolph Letter because the Randolph Letter is not a **suit** as defined by the Policy. Beazley further advised that, even if the matter were a **suit**, Beazley had determined coverage was unavailable because, in the course of applying for the Policy, United failed to disclose the full nature of its business and prior claims involving the attendant risks of distributing its products to retailers specializing in selling customers drug paraphernalia. This was a material misrepresentation and omission that, if disclosed, would have led Beazley to not issue the Policy, or, at a minimum, to issue the Policy on substantially different terms. As a result, Beazley has grounds under the Policy and applicable law to rescind the Policy and render it *void ab initio*. However, recognizing the severity of rescission and attendant ramifications to policyholders, Beazley agreed to deny coverage for the Randolph Letter in lieu of full rescission of the Policy.

51. In the January 31, 2022 letter, Beazley again invited United to provide further information and materials, noting that Beazley was reserving all rights including but not limited to the right to conduct a further investigation into the representations made by United in connection with applying for the Policy, and whether Beazley had grounds to rescind the Policy altogether instead of denying coverage for the Randolph Letter.

52. As of the filing of this Counterclaim, Beazley has not received any further information or materials in response to its requests in the January 31, 2022 letter.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief – No Coverage Under Policy Section V.13)**

53. Beazley hereby re-alleges and incorporates by reference each allegation in the preceding paragraphs of its Counterclaim as though fully set forth herein.

54. Section V.13 of the Policy (the "Representations Clause") provides:

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

13. REPRESENTATIONS

By accepting this policy, **you** agree:

a. The statements in the Declarations, application, any application for Insurance of which this Policy is a renewal and any supplemental materials submitted therewith are accurate and complete;

b. Those statements are based upon **your** agreements and representations made to **us**; and

c. **We** have issued this policy in reliance upon your representations.

d. **Your** representations were express warranties.

e. A determination that **your** representations were false or as a result of non-disclosure of any matter by **you** or **your** agent, will result in rescission of this agreement and relieve **us** from all liability under this Policy.

f. The application and any application for Insurance of which this Policy is a renewal, and any supplemental materials submitted therewith are deemed incorporated into and made a part of this Policy.

55. During Beazley's underwriting process leading to the issuance of the Policy, Beazley asked United and/or its authorized representatives questions and sought or otherwise required material information concerning the nature of its business and prior claims.

56. United and/or its authorized representatives did not provide the requested or required information, and/or failed to disclose material information, that Beazley requested or required during the underwriting for the Policy, including in the application for the Policy.

57. United and/or its authorized representatives' material misrepresentations and/or omissions, if disclosed, would have led Beazley to not issue the Policy, or, at a minimum, to issue the Policy on substantially different terms. Beazley reasonably and detrimentally relied on United's false representations and issued the Policy in reliance on the information that United and/or its authorized representatives provided to Beazley in the course of applying, and during the underwriting process for, the Policy.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

58. United and/or its authorized representatives' material misrepresentations and/or omissions constitute a breach of the Policy's Representations Clause.

59. Beazley has performed pursuant to all of the terms, conditions, and provisions required of it by the Policy, except for those that may be excused, or were prevented as a result of United's breach of the Policy.

60. Although Beazley has grounds under the Representations Clause to rescind the Policy and render it *void ab initio*, Beazley also has grounds under the Policy to deny coverage for the Whip-It Matters.

61. There exists an actual controversy between United and Beazley. Beazley contends that it is not obligated to defend or indemnify United in connection with the Whip-It Matters on the grounds that United and/or its authorized representative(s) made material misrepresentations and/or omissions in the course of applying for and during the underwriting process for the Policies. Beazley is informed and believes, and on that basis alleges, that United disputes Beazley's contentions.

62. Therefore, Beazley is entitled to a declaration that there is no coverage under the Policy for the Whip-It Matters under Policy Section V.13, due to United and/or its authorized representative(s)' failure to fully and truthfully provide material information that Beazley reasonably required and/or requested in connection with the underwriting of, and applications for, the Policies.

**SECOND CAUSE OF ACTION**
**(Declaratory Relief – No Coverage Under California Insurance Code §§ 331, 332 and 359)**

63. Beazley hereby re-alleges and incorporates by reference each allegation in the preceding paragraphs of its Counterclaim as though fully set forth herein.

64. California Insurance Code § 331 states: "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."

65. California Insurance Code § 332 states: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

66. California Insurance Code § 359 states: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

67. During Beazley's underwriting process leading to the issuance of the Policy, Beazley asked United and/or its authorized representatives questions and sought or otherwise required material information concerning the nature of its business and prior claims.

68. United and/or its authorized representatives did not provide the requested or required information, and/or failed to disclose material information, that Beazley requested or required during the underwriting for the Policy, including in the application for the Policy.

69. United and/or its authorized representatives' material misrepresentations and/or omissions, if disclosed, would have led Beazley to not issue the Policy, or, at a minimum, to issue the Policy on substantially different terms. Beazley reasonably and detrimentally relied on United's false representations and issued the Policy in reliance on the information that United and/or its authorized representatives provided to Beazley in the course of applying, and during the underwriting process for, the Policy.

70. United and/or its authorized representatives' material misrepresentations and/or omissions entitle Beazley to rescind the Policy pursuant to California Insurance Code §§ 331, 332, and 359, or, in the alternative, to deny coverage for the Whip-It Matters.

71. Beazley has performed pursuant to all of the terms, conditions, and provisions required of it by the Policy, except for those that may be excused, or were prevented as a result of United's breach of the Policy.

72. There exists an actual controversy between United and Beazley. Beazley contends that it is not obligated to defend or indemnify United in connection with the Whip-It Matters on the grounds that United and/or its authorized representative(s) made material misrepresentations and/or omissions in the course of applying for and during the underwriting process for the Policies. Beazley is informed and believe, and on that basis alleges, that United disputes

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Beazley's contentions.

73. Therefore, Beazley is entitled to a declaration that there is no coverage under the Policy for the Whip-It Matters under California Insurance Code §§ 331, 332, and 359, due to United and/or its authorized representative(s)' failure to fully and truthfully provide material information that Beazley reasonably required and/or requested in connection with the underwriting of, and applications for, the Policies.

**THIRD CAUSE OF ACTION**
**(Declaratory Relief – No Duty to Defend Grech/Sampson Letter or Randolph Letter Because They Do Not Constitute a "Suit" as defined by the Policy)**

74. Beazley hereby re-alleges and incorporates by reference each allegation in the preceding paragraphs of its Counterclaim as though fully set forth herein.

75. Pursuant to Section I.A.1., and subject to its other terms and conditions, the Policy provides, in relevant part, that Beazley "will have the right and duty to defend any **suit** seeking those **damages** to which this insurance applies. However, **we** will have no duty to defend **you** or pay those sums that **you** become legally obligated to pay as **damages** for **bodily injury** or **property damage** to which this insurance does not apply."

76. Section VI.26 of the Policy defines **suit** or **suits** as "a civil proceeding in which **damage** because of **bodily injury**, **property damage**, **personal injury**, or **advertising** injury to which this insurance applies are alleged. **Suit** or **Suits** includes: a. An arbitration proceeding in which such **damages** are claimed and to which **you** must submit or do submit with **our** consent; or b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which **you** submit with **our** consent."

77. The Grech/Sampson Letter does not constitute a **suit** as defined by the Policy.

78. The Randolph Letter does not constitute a **suit** as defined by the Policy.

79. By letters dated July 15, 2021 and January 31, 2022, Beazley advised United that it had no duty to defend United in connection with the Grech/Sampson Letter or Randolph Letter, respectively, on the basis that, among other reasons, they do not constitute a **suit** under the Policy.

80. Although the Grech/Sampson Letter and Randolph Letter fail to constitute a **suit**

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

as defined by the Policy, United nevertheless seeks a defense under the Policy in connection with the Grech/Sampson Letter and Randolph Letter. As such, an actual controversy exists between United and Beazley.

81. Therefore, Beazley seeks a declaration it does have a duty to defend United in connection with the Grech/Sampson Letter or the Randolph Letter under the Policy because, subject to its other terms and conditions, the Policy only provides a defense for **suits**, and neither the Grech/Sampson Letter nor the Randolph Letter constitute a **suit** as defined by the Policy.

**FOURTH CAUSE OF ACTION**
**(Declaratory Relief – No Coverage for the *Chaplin* Lawsuit Pursuant to the Specified Exclusion Endorsement)**

82. Beazley hereby re-alleges and incorporates by reference each allegation in the preceding paragraphs of its Counterclaim as though fully set forth herein.

83. Pursuant to the Policy's Specified Exclusion Endorsement, coverage "does not apply to any **Claim** or **Claims** arising out of any of the following . . . Excluding and [sic – any] known circumstances including further claims arising from Jacob Snyder claim[.] All other terms and conditions of this Policy remain unchanged."

84. As alleged in further detail above, United's broker sent a December 30, 2019, email in connection with the underwriting of the Policies that referenced three claims involving the illicit use of United's products including the *Snyder* Lawsuit, *Magley* Lawsuit, and an unidentified lawsuit "by a claimant that alleges our Insured's product caused him to become addicted." Nothing in the December 30, 2019, email indicated that at issue in the identified claims was the aspect of United's business of distributing its products to retailers specializing in selling drug paraphernalia, which was unknown to Beazley.

85. In response to the December 30, 2019, email from United's broker, Beazley's underwriting department indicated that it would have to include exclusionary language in the policy because the *Snyder* Lawsuit, *Magley* Lawsuit, and the unnamed lawsuit were indicative of the types of claims that the account could attract, and as such, would have to be taken into account properly.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

86. Such exclusionary language was added to the Policies through the Specified Exclusion Endorsement, which by its plain language does not apply solely to the *Snyder* Lawsuit, but also applies to the *Chaplin* Lawsuit. Both lawsuits were filed in the Circuit Court of St. Louis County by plaintiffs represented by the same counsel and arise out of the allegedly illicit use of United's products. The lawsuits allege, among other things, that United sold its nitrous oxide chargers to Coughing Cardinal with knowledge that the chargers will be used for illicit use.

87. At the time that United was applying for coverage with Beazley, United had distributed and/or was distributing its products to Coughing Cardinal, the retailer at issue in both the *Snyder* and *Chaplin* Lawsuits. Thus, United knew at the time that it applied for the Policy that it had created and/or was creating circumstances that could lead to claims similar to the *Snyder* Lawsuit.

88. Both the *Snyder* and *Chaplin* Lawsuits are the very type of claim that was intended to be excluded by the Specified Exclusion Endorsement, as discussed with United in the course of underwriting the Policies.

89. Although coverage for the *Chaplin* Lawsuit is barred by the Specified Exclusion Endorsement, there exists an actual controversy between United and Beazley because Beazley is informed and believes, and on that basis alleges, that United disputes the Specified Exclusion Endorsement applies to bar coverage for the *Chaplin* Lawsuit under the Policy.

90. Therefore, Beazley seeks a declaration that it does not owe a defense of the *Chaplin* Lawsuit under the Policy because any coverage for the *Chaplin* Lawsuit is barred by the Specified Exclusion Endorsement in the Policy.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Counter-Plaintiff Beazley respectfully prays that the Court:

(1) Enter declaratory judgment on Count I in favor of Beazley and against United that there is no coverage pursuant to the Policy's Representations Clause for the *Chaplin* Lawsuit, Grech/Sampson Letter, or Randolph Letter, because United and/or its authorized representatives failed to fully and truthfully provide material information that Beazley reasonably required and requested in connection with the underwriting of, and applications for, the Policies;

(2) Enter declaratory judgment on Count II in favor of Beazley and against United that there is no coverage pursuant to California Insurance Code §§ 331, 332, and 359 for the *Chaplin* Lawsuit, Grech/Sampson Letter, or Randolph Letter, because United and/or its authorized representatives failed to fully and truthfully provide material information that Beazley reasonably required and requested in connection with the underwriting of, and applications for, the Policies;

(3) Enter declaratory judgment on Count III in favor of Beazley and against United that Beazley does not have a duty to defend United in connection with the Grech/Sampson Letter or Randolph Letter under the Policy because the Policy only provides a defense for **suits**, and neither the Grech/Sampson Letter nor the Randolph Letter constitute a **suit** as defined by the Policy;

(4) Enter declaratory judgment on Count IV in favor of Beazley and against United that there is no coverage under the Policy for the *Chaplin* Lawsuit pursuant to the terms of the Specified Exclusion Endorsement;

(5) Award Beazley fees and costs incurred in this action; and

(6) Award Beazley such additional declaratory and other, further, and additional relief as this Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Beazley demands a trial by jury on all issues triable by jury.

Dated: April 27, 2022

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Kevin F. Kieffer*
Kevin F. Kieffer
Attorneys for Defendant
Certain Underwriters at Lloyd's, London
Denoted as Syndicate Numbers AFB 623
and AFB 2623

# EXHIBIT A




# Certificate of Insurance




# Lloyd's of London

This Insurance is effected 100% with certain Underwriters at Lloyd's, London under Binding Authority Reference B0180PNF200123.

This Certificate is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

The Insured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

In Witness whereof this Certificate has been signed at the place and at the date specified below;

**For And on Behalf of:** **Howden Specialty,**
**One Creechurch Place, London, EC3A 5AF.**

______________________________ Dated in London **5th February 2021**

**CERTIFICATE PROVISIONS**

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the front of the Certificate.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

5. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

# NOTICE:

**1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 1-800-927-4357 OR INTERNET WEB SITE** WWW.INSURANCE.CA.GOV **. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEBSITE AT** WWW.NAIC.ORG **.**

**5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE:** WWW.INSURANCE.CA.GOV **.**

**8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

LMA9098A
04 May 2017

## POLICY DECLARATIONS



## COMMERCIAL GENERAL LIABILITY – CLAIMS MADE

**Claims made Coverage:** The coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period. If exercised and reported, in writing, to the Company pursuant to the terms herein.

**Unique Market Reference:** B0180PN2104369 (Declaration # 132)

**Attaching to Binding Authority Reference:** B0180PNF200123

**Renewal of Policy Number:** B0180PN2004369

**1. Named Insured:** United Brands Prods Designs Dev & Marketing Inc;
United Brands Product Design & Development, Inc.;
Aeration Industries LLC DBS Aeration Technologies

**Address:** 170 Associated Rd
South San Francisco
CA 94080
United States of America

California Premium: [redacted]
Non-Taxable Fees: [redacted]
Taxable Fees:
Surplus Lines Tax: [redacted]
Stamping Fee: [redacted]

**2. Policy Period:** From: 6th February 2021
To: 6th February 2022
(both days at 12:01 a.m. local standard time at the address shown in Item 1. above)

**3. Description of Insurance afforded hereunder:** Commercial General Liability – Claims Made

**4. Retroactive Date:** 6th February 2020

**5. Limit(s) of Liability:**

| | |
|---|---|
| **Defense Costs Outside Limit Capped at an Annual Aggregate of:** (Defense Inside once exhausted) | USD 1,000,000 |
| **General Policy Aggregate:** (Other than Products-Completed Operations) | USD 2,000,000 |
| **Products–Completed Operations Aggregate:** | USD 2,000,000 |
| **For Coverage A (Bodily Injury and Property Damage Liability):** | |
| Each Occurrence: | USD 1,000,000 |
| Fire Damage to Premises – any one fire: | USD 300,000 |
| **For Coverage B (Personal Injury and Advertising Injury Liability):** | |
| Each Person or Organization: | USD 1,000,000 |
| **For Coverage C (Medical Payments Limit):** | |
| Each Person: | USD 5,000 |

**Additional Coverages:**

**Privacy Liability:**
Sublimited to:

| | |
|---|---|
| Computer Network Security and Privacy Liability Each Claim Limit includes Claims Expenses | USD 1,000,000 |
| Computer Network Security and Privacy Liability Term Aggregate including Claims Expenses – but sublimited to: | USD 1,000,000 |
| Aggregate for the Period of Insurance for all Privacy Violation Costs covered under 2.B.4. of this endorsement. | USD 250,000 |
| Aggregate for the Period of Insurance for all Claims Expenses and Penalties covered under 2.B.5. of this endorsement. | USD 250,000 |

**Pollution Legal Liability:**

| | |
|---|---|
| Each Claim: | USD 1,000,000 |
| In the Aggregate: | USD 1,000,000 |

**6. Deductible:** USD 50,000 — Each Occurrence for Bodily Injury and Property Damage, Personal Injury and Advertising Injury, Privacy Liability and Pollution Legal Liability combined, including Defense Costs

**7. Service of Suit Nominee**

FLWA Service Corp, c/o Foley & Lardner LLP, 555 California Street, Suite 1700, San CA 94104-1520

**Choice Of Law And Jurisdiction:**

| | |
|---|---|
| Choice of Law: | California, USA. |
| Jurisdiction: | As per NMA 1998 – endorsement as attached. |

**8. The Named Insured Is:**

| | | |
|---|---|---|
| (  ) Individual | (  ) Partnership | ( X ) Corporation |
| (  ) Joint Venture | (  ) Other; Religious Institution | |

**9. Minimum & Deposit Premium:**

The premium stated herein is the minimum premium for the policy period. Any adjustment upon audit will be upward only. There will be no premium refund of the minimum premium upon audit, if the estimated exposure is less than shown herein. Thirty percent (30%) of the annual premium is fully earned as of the inception date of the policy.

**USD ████ (100%) annual.**

Adjustable at a rate of USD ███ per $███ revenues.*
Based on revenues of USD █████

*It is agreed that if actual revenues exceed USD ██████ then the audit rate shall be USD ██

**Premium Payment Terms:** As per attached Premium Payment Warranty Endorsement.

**Situation:** World-wide (as per form).

**Conditions:** Wording: 180HOW00605 – Howden Specialty CGL ISO Based Form – Claims Made

# Exhibit B

DON A. LESSER (SBN 112887)
HOWARD M. GARFIELD (SBN 43369)
THE LESSER LAW GROUP
315 Montgomery Street, Ninth Floor
San Francisco, CA 94104
Telephone: (415) 453-7600
E-mails: DLesser@LesserGroup.com
HGarfield@LesserGroup.com

*Attorneys for Plaintiff/Counter-Defendant*

TROUTMAN PEPPER HAMILTON SANDERS LLP
Kevin F. Kieffer (Bar No. 192193)
Kevin.Kieffer@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700

TROUTMAN PEPPER HAMILTON SANDERS LLP
Brandon D. Almond (admitted *pro hac vice*)
Brandon.Almond@troutman.com
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004-2134
Telephone: 202.274.2950

*Attorneys for Defendant/Counter-Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

UNITED BRANDS PRODUCTS DESIGN DEVELOPMENT & MARKETING, INC.

Plaintiff/Counter-Defendant,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON DENOTED AS SYNDICATE NUMBERS AFB 2623 and AFB 623,

Defendant/Counter-Plaintiff.
_______________________________________/

Case No. 4:22-cv-00649-TLT

**AMENDED JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

**Civil L.R. 16-9, 16-10(d)**

Plaintiff/Counter-Defendant United Brands Products Design Development & Marketing, Inc. ("United") and Defendant/Counter-Plaintiff Certain Underwriters at Lloyd's, London Denoted as Syndicate Numbers AFB 2623 and AFB 623 ("Beazley") submit this Amended Joint Case Management Statement and Proposed Order pursuant to the Court's August 29, 2022 Order Reassigning Case [ECF 42], Standing Order for All Judges of the Northern District of California dated November 1, 2018, and Civil Local Rules 16-9 and 16-10(d). Pursuant to Fed. R. Civ. P. Rules 26(f) and 16(b), the parties respectfully request the Court adopt the undisputed provisions of this Joint Case Management Statement and concurrently submitted Proposed Order as the Case Management Order in this action.

**1. <u>JURISDICTION & SERVICE</u>**

The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332. No issues exist regarding jurisdiction or venue, and no parties remain to be served with United's Complaint [ECF 1] or Beazley's operative Second Amended Answer and Counterclaim [ECF 32].

**2. <u>FACTS</u>**

**A. <u>Chronology</u>**

Plaintiff United is a California company which markets, among other things, dispensers of food grade nitrous oxide and butane. The nitrous oxide dispensers, also known as "chargers," are used to create whipped cream and to aerate other toppings for appetizers, desserts, beverages and other culinary items. The dispensers are marketed under the brand name "Whip-It!"

In or about February 2020, Beazley issued a Commercial General Liability Insurance Policy to United for successive one-year policy periods beginning February 6, 2020 to February 6, 2021 (the "2020 Policy"), which was renewed for the period February 6, 2021 to February 6, 2022 (the "2021 Policy," together with the 2020 Policy, the "Policies"). United alleges it purchased the Policies for protection against liability claims for bodily injury and property damage arising from its business operations, including its distribution and sale of its nitrous oxide, butane and other products. United submitted applications and other information to Beazley in connection with United's request for insurance leading to the issuance of the Policies.

In or about April 2021, during the 2021 Policy's Policy Period, Karen Chaplin and Jason Politte filed and served a First Amended Petition against United, and others, in the action entitled *Chaplin, et al. v. Geiger, et al.*, in the Circuit Court of St. Louis County in the State of Missouri, Case No. 20SL-CC06071 ("the *Chaplin* Lawsuit"). The *Chaplin* Lawsuit is brought pursuant to Missouri's wrongful death statute, alleging damages for the death of the plaintiffs' daughter when she was struck by a vehicle driven by Trenton Geiger, who the *Chaplin* plaintiffs allege passed out and lost control of his vehicle because he was under the influence of nitrous oxide he had inhaled for recreational use. The *Chaplin* plaintiffs claim that Geiger inhaled the nitrous oxide from a nitrous oxide "charger" designed, manufactured, sold and/or distributed by United to a local retailer, which the *Chaplin* plaintiffs allege is a "head shop" or "smoke shop" that specializes in selling smoke inhalation products and drug paraphernalia. The *Chaplin* plaintiffs claim that United sold and/or supplied its nitrous oxide chargers to retailers which United knew, or should have known, were selling the chargers for use as a recreational drug. They allege causes of action against United for Negligence, Strict Products Liability, Violations of the Missouri Merchandising Practices Act and Civil Conspiracy, claiming that United acted negligently in distributing it products or, alternatively, that United and such retailers committed "unfair and deceptive practices" in distributing nitrous oxide to the public knowing and intending that it was going to be sold and used as a recreational drug. United denies the *Chaplin* plaintiffs' allegations.

Two other claims were made against United during the Policy Period of the 2021 Policy, though at this time neither has been asserted in a lawsuit. One alleges bodily injury caused by an explosion of an allegedly defective canister of Whip-It! Butane fuel (the "Grech/Sampson Matter"); the other alleges personal injury damages caused by an alleged "faulty" Whip-It! nitrous oxide charger (the "Randolph Matter").

United notified Beazley of these three claims and sought coverage under the 2021 Policy for each. United requested that Beazley defend it against the *Chaplin* Lawsuit on or about May 7, 2021. By letter dated July 15, 2021 Beazley reserved its rights and denied coverage for, and declined to defend, the *Chaplin* Lawsuit. Beazley has also reserved its rights and denied coverage

for the Grech/Sampson and Randolph Matters. Beazley denied coverage based on its determination that, in the course of applying for the Policies and during the underwriting process, United allegedly failed to disclose and/or materially misrepresented "the full nature of its business and products" and "the full nature of prior claims involving the attendant risks of distributing its products to retailers specializing in selling customers drug paraphernalia." Based on provisions of the 2021 Policy, the California Insurance Code, and other California law, Beazley alleges that United's alleged failures to disclose these matters constitute grounds for Beazley to deny coverage for all three claims. Beazley's letters denying coverage state that, although Beazley has grounds under the 2021 Policy and applicable law to rescind the 2021 Policy and render it *void ab initio*, in recognition of the severity of rescission and attendant ramifications to policyholders, and because Beazley contends that it has grounds to deny coverage, Beazley agreed to deny coverage in lieu of full rescission. Beazley has not refunded the premiums United paid for the 2021 Policy based on this position.

As an additional ground for Beazley's denial of coverage for the *Chaplin* Lawsuit, Beazley relies on the "Specified Exclusion Endorsement" in the 2021 Policy, which reads, in part, as follows: "[T]his insurance does not apply to any **Claim** or **Claims** arising out of any of the following[:] Excluding and [sic] known circumstances including further claims arising from Jacob Snyder claim." Beazley alleges that, under the terms of the Specified Exclusion Endorsement, the intent of which it alleges was made clear via underwriting communications with United's insurance broker, coverage is unavailable for the *Chaplin* Lawsuit.

Further, Beazley additionally asserts that it does not owe a duty to defend the Grech/Sampson Matter or Randolph Matter because those matters do not constitute a "**suit**" as that term is defined in the 2021 Policy.

United has disputed Beazley's denials of coverage. It denies that it made any material misrepresentations or failed to disclose any material facts in applying for the Policies. United alleges that none of the matters Beazley claims were misrepresented or concealed would have led Beazley to decline to issue the Policies or issue them on different terms. United alleges further that Beazley's allegations that United made material misrepresentations or failed to disclose material

facts do not support its denials of coverage or rescission because the doctrines of waiver, estoppel and laches bar Beazley from asserting those matters.

Moreover, United contends that while these disputes are pending, Beazley must, under California law, defend the *Chaplin* Lawsuit unless and until it obtains this Court's determination that coverage is not available.

United alleges that Beazley's denials of coverage, including its refusal to defend the *Chaplin* Lawsuit, are in bad faith, which Beazley denies. Beazley contends, among other things, that Beazley properly denied coverage and that United and/or its authorized representative(s) material misrepresentations and/or omissions, if disclosed, would have led Beazley to not issue the 2021 Policy, or, at a minimum, to issue the 2021 Policy on substantially different terms.

In the course of their correspondence regarding these disputes, Beazley requested several categories of documents from United which it claimed was to conduct a further investigation into the representations and/or omissions United made in connection with applying for the Policies, and whether Beazley should rescind the 2021 Policy altogether instead of denying coverage for the claims at issue. United refused to provide the requested documents on the ground that Beazley's requests are in bad faith, that they were excessive and unduly burdensome, that complying with them was beyond the scope of United's contractual duties, and many of the documents Beazley sought contain United's trade secrets and other highly sensitive, confidential, and proprietary information. Beazley contends that its requests are proper and that United is obligated to provide the information pursuant to its duties under the Policies.

United has informed Beazley it is defending the *Chaplin* Lawsuit with its own funds.

**B. Principal Factual Issues**

- Whether United and/or its representative(s) failed to disclose and/or materially misrepresented information Beazley claims United was obligated to provide to Beazley during the application and underwriting process for the Policies.
- Whether the information Beazley claims United did not disclose and/or materially misrepresented was material to Beazley's underwriting decisions leading to the issuance of the Policies.

- Whether, before issuing the Policies, Beazley had constructive or actual knowledge of the matters it claims United failed to disclose and/or materially misrepresented.
- Whether Beazley conducted a reasonable investigation of the matters it claims United misrepresented.
- Whether Beazley conducted an objective, fair and thorough investigation before denying coverage.
- Whether any other insurance policies or risk transfer agreements potentially provide defense and/or indemnification to United for amounts for which United seeks coverage from Beazley under the 2021 Policy.
- Whether Beazley's denials of coverage are proper, or alternatively, whether they are unreasonable and in bad faith.
- Whether Beazley acted with malice, fraud, or oppression in denying coverage.

**3. <u>LEGAL ISSUES</u>**

- Whether Beazley has a current duty to defend the *Chaplin* Lawsuit.
- Whether the *Chaplin* Lawsuit, Grech/Sampson Matter, and/or Randolph Matter are within the scope of the 2021 Policy's coverage agreements.
- Whether the Specified Exclusion Endorsement applies to bar coverage for the *Chaplin* Lawsuit.
- Whether United had a duty to disclose information not expressly requested in Beazley's application but which Beazley claims United was legally obligated to provide.
- Whether other policy provisions purporting to limit coverage apply to the claims against United.
- Whether United failed to comply with the Policies.
- Whether Beazley has a right to rescind the 2020 Policy and/or 2021 Policy.
- Whether Beazley waived, or is estopped from asserting, its rights to deny coverage or rescind based United's alleged misrepresentations or concealments.

- Whether United waived, is estopped, or is otherwise barred by the doctrine of unclean hands from any recovery in this action.
- Whether United's claims against Beazley are barred by United's failure to mitigate and/or based on public policy.

**4. MOTIONS**

United anticipates filing an early motion for partial summary judgment, should the parties fail to resolve their disputes via early, private mediation, to establish that Beazley has a current duty to defend the *Chaplin* Lawsuit. Beazley anticipates filing a dispositive motion after conducting certain discovery regarding the information it contends was material and concealed and/or misrepresented by United including, among other things, United's sale and/or distribution of nitrous oxide products to smoke shops, head shops, tobacco stores, gas stations, or other retailers specializing in selling products to the public for illicit and/or recreational drug use, as well as discovery regarding the nature of prior claims involving the distribution and/or sale of United's products to such retailers.

**5. AMENDMENT OF PLEADINGS**

The parties' deadline to amend pleadings and add any additional parties was September 2, 2022. The parties do not seek any modification to that deadline at this time.

**6. EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) with regard to reasonable and proportionate steps taken to preserve evidence, including electronically stored communications and documentation, and believe they have preserved all relevant evidence that was in their possession at the time this action was filed. They anticipate executing an ESI Stipulation prior to the Further Case Management Conference.

**7. DISCLOSURES**

The parties have served their respective Initial Disclosures. The parties reserve their respective rights to amend their disclosures as additional information becomes available in discovery.

**8. DISCOVERY**

**A. Scope and Status of Discovery**

The subjects of written discovery and depositions taken by the parties may include, *inter alia*: (i) the underwriting of and application process for the Policies; (ii) information provided to the parties and coverage positions taken in connection with the *Chaplin* Lawsuit, Grech/Sampson Matter, and Randolph Matter; (iii) the sale and/or distribution of United's products as it relates to United's disclosure obligations in applying for the Policies; (iv) other claims or allegations of illicit or recreational use of United's products; (v) pleadings and other non-privileged documents from the *Chaplin* Lawsuit, Grech/Sampson Matter, and Randolph Matter; and (vi) Beazley's handling, investigation, and denials of United's claims for coverage. The parties agree this is not an exhaustive list of the discovery that may be sought by the parties. The parties also reserve their rights to put forward timely objections to any discovery in this matter, including objections to proposed depositions.

The parties have exchanged initial written discovery requests, which the parties previously agreed would be limited to requests for production of documents and interrogatories seeking the identity and known contact information for potential witnesses other than those disclosed pursuant to Rule 26(a), and documents and materials exchanged and considered in connection with the underwriting of the Policies. The parties are scheduling limited depositions focused on the underwriting of the Policies, after which they will conduct early, private mediation, which has been set for December 6, 2022. Should that mediation fail to resolve the parties' disputes, they will proceed with additional discovery and depositions as warranted. They do not currently request any changes to the Federal Rules' limitations on discovery. The parties stipulate to sharing computer-readable copies of discovery requests and interrogatories if requested by the other party.

All documents produced by United will be Bates-stamped with the prefix "UNITED," followed by consecutive pages numbers. All documents produced by Beazley will be Bates-stamped with the prefix "BEAZ," followed by consecutive page numbers.

**B. Stipulated Protective Order**

The parties negotiated a stipulated protective order that was approved by the Court on May 16, 2022 [ECF 39]. In the event of inadvertent production of privileged information, the parties will follow Fed. R. Civ. P. 26(b)(5)(B).

**9. CLASS ACTIONS**

Not applicable.

**10. RELATED CASES**

None.

**11. RELIEF**

United seeks a declaratory judgment that Beazley has a current duty to defend the *Chaplin* Lawsuit which arose upon United's tender of the claim. United also seeks a declaratory judgment that the Policy covers the three claims of which it has notified Beazley – the *Chaplin* Lawsuit, Grech/Sampson Matter, and Randolph Matter. United seeks contract damages in the amount of its costs of defending the *Chaplin* Lawsuit and either of the Grech/Sampson or Randolph Matters that, prior to trial, becomes a "suit" which Beazley has a duty to defend. United also seeks consequential damages for Beazley's bad faith claims practices including attorney's fees pursuant to *Brandt v. Superior Court.*

Beazley seeks declaratory judgment in its favor and against United that (1) there is no coverage for the *Chaplin* Lawsuit, Grech/Sampson Matter, or Randolph Matter because United and/or its authorized representative(s) failed to fully and truthfully provide material information that Beazley reasonably required and requested in connection with the underwriting of, and applications for, the Policies; (2) there is no coverage pursuant to California Insurance Code §§ 331, 332, and 359 for the *Chaplin* Lawsuit, Grech/Sampson Matter, or Randolph Matter; and (3)

there is no coverage under the 2021 Policy for the *Chaplin* Lawsuit pursuant to the terms of the Specified Exclusion Endorsement. Beazley also seeks its fees and costs incurred in this action.

**12. Settlement and ADR**

The parties are currently scheduling a private mediation for no later than December 14, 2022. [*See* Stipulation and Order, ECF 41]. The mediation is scheduled for December 6, 2022. The parties have met and conferred, and they have also submitted their respective ADR Certifications pursuant to ADR L.R. 3-5.

The parties do not anticipate needing to complete depositions or discovery before attempting initial private mediation, which they agree to attend for purposes of seeing if their disputes can be resolved before incurring further costs. In the event the parties are unable to resolve their disputes via early mediation, they reserve the right to conduct further mediation or alternative dispute resolution efforts after further depositions and discovery have been conducted.

**13. CONSENT TO MAGISTRATE**

The parties have not agreed to proceed before a Magistrate Judge.

**14. OTHER REFERENCES**

This case is not suitable for other references.

**15. NARROWING OF ISSUES**

The parties have no proposals regarding narrowing of issues at this time. The parties are amenable, in principle, to stipulating to facts relating to the policies issued by Beazley, as well as certain facts related to the *Chaplin* Lawsuit, Grech/Sampson Matter, Randolph Matter, and other claims asserted against United. However, the parties have not yet identified the specific facts and therefore reserve the right to decline any proposed stipulation regarding the foregoing.

**16. EXPEDITED TRIAL PROCEDURES**

It is the parties' position that this case is not of a type that can be handled under the Expedited Trial Procedure of General Order No. 64, Attachment A, and therefore, the parties do not propose expedited trial procedures at this time.

**17. SCHEDULING**

Trial in this matter is currently set for June 5, 2023, with a May 23, 2023 pretrial conference. The parties will attend private mediation no later than December 14, 2022. The parties agree that extending the other pre-trial and discovery deadlines will avoid substantial costs if this case can be settled at the December 6 mediation, and therefore propose the following modifications to those deadlines:

- CLOSE OF FACT DISCOVERY: March 17, 2023
- EXCHANGE OPENING EXPERT REPORTS: March 31, 2023
- EXCHANGE REBUTTAL EXPERT REPORTS: April 14, 2023
- CLOSE OF EXPERT DISCOVERY: May 5, 2023
- DISPOSITIVE MOTION HEARING DEADLINE: June 13, 2023
- PRETRIAL CONFERENCE: September 21, 2023
- JURY TRIAL (10 days): October 10, 2023

**18. TRIAL**

The parties currently estimate trial will require 10-12 court days, though the parties also expect it will be more efficiently estimated following the conclusion of discovery and the Court's ruling on the parties' dispositive motions. The parties have requested a trial by jury on all issues triable by jury.

**19. DISCLOSURE OF INTERESTED PARTIES**

The parties have filed their respective "Certification of Interested Entities or Persons" as required by Civ. L. R. 3-15. United has disclosed its sole shareholder, Nesser David Zahriya. Beazley has disclosed that Syndicate 2623's sole corporate capital provider is Beazley Underwriting, Ltd., which is a wholly owned subsidiary of Beazley Furlonge Holdings, Ltd. Beazley Furlonge Holdings, Ltd. is 100% owned by Beazley Group, Ltd., which is 100% owned by Beazley, plc. Beazley, plc is listed on the UK Stock Exchange.

**20. PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional

Conduct for the Northern District of California.

**21. OTHER MATTERS**

None currently.

Dated: October 14, 2022

THE LESSER LAW GROUP

*/s/ Don A Lesser*
DON A. LESSER
Attorneys for Plaintiff/Counter-Defendant

Dated: October 14, 2022

TROUTMAN PEPPER HAMILTON SANDERS LLP

*/s/ Kevin F. Kieffer*
Kevin F. Kieffer
Attorneys for Defendants/Counter-Plaintiff

CASE MANAGEMENT ORDER

The above AMENDED JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated:

Trina L. Thompson
UNITED STATES DISTRICT JUDGE