UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATES 2623 AND 623,<br><br>Defendants. | Case No.: 3:22-cv-01169-JAH-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS;**<br><br>**(2) DENYING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO FILE A SURREPLY**<br><br>**(ECF Nos. 7, 30).** |

## I.   INTRODUCTION

Pending before the Court is Defendants Certain Underwriters at Lloyd's London, Syndicates 2623 and 623 ("Defendants") motion to dismiss for lack of subject matter jurisdiction. ("Mot.", ECF No. 7).  Plaintiff Viasat Inc. ("Plaintiff") filed an opposition to the motion, ("Opp'n", ECF No. 11), and Defendants filed a reply, ("Reply", ECF No. 15).[1]

---

[1]   Plaintiff filed an *ex parte* application for leave to file sur-reply. (ECF No. 30). Defendants opposed this request.  (ECF No. 31).  Due to the unreasonable delay in filing,

1

After a careful review of the facts presented and for the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss.

## II.  BACKGROUND

Plaintiff, a Delaware corporation with its principal place of business in Carlsbad, California, globally provides high-speed broadband satellite internet services. ("Compl.", ECF No. 1 ¶¶ 6, 14). Lloyd's of London "is comprised of various syndicate and company underwriters who share liability as subscribers to insurance policies[.]" (*Id.* at ¶ 7). Syndicate 2623 and Syndicate 623[2] are two insurance syndicates at Lloyd's, London, based in the United Kingdom. (*Id.* at ¶ 10).

Plaintiff purchased MediaTech Insurance Policy W110512[3] from Defendants, "with a policy period of at least October 31, 2021, to October 31, 2022." (Compl. ¶ 18). The Policy covered, *inter alia*, losses and liabilities arising from any security breaches related to the operation of Plaintiff's satellite internet services. (*Id.* ¶ 20). On or about February 23, 2022, a security breach occurred on one of their networks, resulting in loss of system access for thousands of individual and business customers throughout Europe. (*Id.* ¶ 24). In response to the security breach, Plaintiff "immediately began [] efforts to restore connectivity and mitigate any losses or liabilities," including procuring and installing new modems for clients and investigating the cause and scope of the Cyber-attack. (*Id.* ¶¶ 25-26). Despite Plaintiff's efforts, supply chain and other issues resulted in Plaintiff's distributors being unable to provide affected customers with their expected internet access. (*Id.*) Plaintiff alleges the Policy provides coverage for the losses subsequent to the

---

and because the Court does not consider any new arguments set forth in Defendants' reply for purposes of this motion, the Court denies this request.

[2]  Relevant here, the Complaint alleges that Beazley wrote the subject Policy, and Syndicate 2623/623 are the two subscribers to the Policy responsible for the insurance. (Compl. at ¶ 8; Policy at 2). For purposes of this motion, the Court will refer to the syndicates together as Syndicate 2623/623.

[3]  The Policy is incorporated by reference into the allegations of the Complaint. (Compl. at n.2; "Policy," ECF No. 12-1, Ex. 1 at 1-76).

February 23rd breach.  (*Id.* ¶ 29).  Plaintiff accordingly began submitting claims to Syndicate 2623/623 in March 2022 for payment and reimbursement, and "tendering all claims against [Plaintiff to Syndicate 2623/623] for defense and indemnity coverage." (*Id.* ¶ 31).  However, Plaintiff alleges that despite Defendants' agreement to "the retention of certain vendors to assist" Plaintiff with the attack response, and Defendants' waiver of "consent objections to settlements of certain third-party claims", Defendants have failed to provide coverage for Plaintiff's claims for losses, liabilities, and defense costs under the pretense of ongoing investigation, while outright denying coverage in other instances.  (*Id.* ¶¶ 32-33).  The Complaint further alleges that the Policy provides that in the event of a lawsuit, Beazley agrees to submit to the jurisdiction of a court of competent jurisdiction within the United States.[4]  (Compl. at ¶ 13).  On August 9, 2022, Plaintiff filed a Complaint against Defendants asserting claims for declaratory relief, breach of contract, and breach of good faith and fair dealing.

In the pending motion, Defendants allege Plaintiff failed to demonstrate this Court has subject matter jurisdiction based on the following: (1) the member "Names" of Syndicates 2623/623, not the Syndicates themselves are the "real parties to the controversy," (Mot. at 5); (2) Plaintiff has failed to meet pleading requirements for diversity of citizenship with respect to each syndicate member and sub-member, (*id.* at 6); and (3) Plaintiff has failed to establish the amount in controversy with respect to each syndicate member, (*id.* at 8).

///

///

---

[4]     Plaintiff's attempt to argue that the Policy contains a "Choice of Law and Service of Suit" provision that dictates Plaintiff can bring an action in *any* court of their choice is plainly unavailing.  Subject matter jurisdiction cannot be conferred by consent, waiver, or forfeiture, and Defendants' agreement to be bound to Plaintiff's choice of jurisdiction only applies insofar as the Court has jurisdiction.  *See Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013).

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. Fed. R. Civ. P. 12(b)(1). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coal. v. United States Env't Prot. Agency*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

A defendant may pursue a Rule 12(b)(1) motion to dismiss for lack of jurisdiction either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations. *Savage v. Glendale Union High Sch.*, *Dist. No. 205, Maricopa Cnty*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The success of a facial challenge to jurisdiction depends on the allegations in the complaint and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial challenge the court must assume the allegations in the complaint are true and it must "draw all reasonable inferences in [plaintiff's] favor." *Id.*

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* If the moving party has "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage*, 343 F.3d at 1039 n.2). In looking to matters outside the pleadings, the Court must "resolve all disputes of fact in favor of the nonmovant . . . similar to the summary judgment standard." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). As with a motion for summary judgment, the party moving to dismiss for lack of subject matter jurisdiction "should prevail only if

the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060–61 (9th Cir. 2001) (citation omitted).

## IV.   DISCUSSION

### A.   LLOYD'S OF LONDON

"Lloyd's of London is an insurance market based in the United Kingdom in which persons and business entities, which are called 'Names,' can invest in a percentage of an insurance policy risk through 'Syndicates' ." (Mot. at 2). The Names are severally, but not jointly, liable for that fraction of the total risk on a policy. (*Id.* at 5). "Names do not operate independently. Instead, they group together for administrative convenience in 'Syndicates.' " (Ross Decl., ECF No. 7-2 at ¶ 3). The Syndicate is not managed by the individual Names, but by a "lead underwriter" appointed by the Names. *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.* (*Squibb I*), 160 F. 3d 925, 929 (2d Cir. 1998)

The Names at issue in the instant matter include "numerous special liability partnerships, limited liability partnerships, and individuals." (Mot. at 3). Syndicates 2623 and 623 own an 82% and 18% share of Plaintiff's Policy risk, respectively, and have a combined membership of 1,646 Names. (*Id.*)

### B.   SUBJECT MATTER JURISDICTION

Pursuant to 28 U.S.C. § 1332, a district court has diversity jurisdiction over all civil actions where the amount in controversy is greater than $75,000 exclusive of interest and costs, and where the civil action is between citizens of different states.

#### i.   DIVERSITY OF PARTIES

Defendants assert Plaintiff does not properly plead diversity of jurisdiction because the Complaint fails to consider the citizenship of the individual Names of the Syndicate. Defendants do not provide any information regarding the citizenship of the Names that comprise the Syndicates, but argue (1) "a Name still *could* be a resident of California or incorporated in Delaware," (*id.* at 7 (emphasis added)); (2) there is no factual basis to support Plaintiff's allegations made on information and belief, (*id.*); and (3) court's have

1    rejected similar allegations that group the Names together for citizenship purposes, (*id.* at
2    8).  Plaintiff asserts that Defendants status as an unincorporated association requires the
3    Court to look at the citizenship of each member, and that the Complaint adequately alleges
4    diversity accordingly.  (Opp'n at 10-13).

5         As an initial matter, Defendants' challenge to the Court's jurisdiction based on the
6    possibility that Names *could* be California citizens presents a facial—not a factual
7    challenge to Plaintiff's allegations of diversity jurisdiction.  *See NewGen, LLC v. Safe Cig,*
8    *LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (A party raising doubts about its citizenship while
9    "carefully avoid[ing] taking any position on its own citizenship" constitutes a facial attack).
10   Defendants carefully cast doubt as to the diversity of citizenship, but do not provide any
11   specific information or provide any factual evidence to demonstrate the Names'
12   citizenships differ from their residences.  Defendants submit an affidavit attesting to the
13   potential liability for one of the Syndicate's Names to support their assertion that the Name
14   could not meet the amount in controversy requirement, which constitutes a factual attack,
15   but fail to provide similar evidence rebutting Plaintiff's allegations regarding citizenship.
16   For these reasons, this Court finds Defendants only put forth a facial attack and the Court
17   accepts the allegations in the Complaint as true.  *Salter v. Quality Carriers, Inc.*, 974 F.3d
18   959, 964 (9th Cir. 2020).

19        Defendants' argument that Plaintiff's "citizenship allegations are insufficient to
20   establish complete diversity as a matter of law" because Plaintiff failed to allege the
21   citizenship of each Name, and instead "merely alleges in conclusory fashion, on
22   'information and belief,' that 'all of the members of each Defendant are United Kingdom
23   residents or United Kingdom companies, with principal places of business in the United
24   Kingdom[,]' ", (Mot. at 6), is unpersuasive.  Plaintiff's Complaint alleges "[o]n information
25   and belief, all of the members of each Defendant are United Kingdom residents or United
26   Kingdom companies, with principal places of business in the United Kingdom."  (Compl.
27   ¶ 10).  Plaintiff also asserts this Court has jurisdiction "due to the complete diversity of the
28   parties." (*Id.* ¶ 11).  Ordinarily, a failure to adequately plead a party's citizenship to satisfy

diversity jurisdiction requires dismissal of an action, however "facts supporting jurisdiction that are not reasonably ascertainable by the plaintiff" fall under the type of "unusual circumstance" in which "a party need not affirmatively allege the citizenship of an opposing party." *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014). As such, "in this situation it was sufficient for [plaintiff] to allege simply that the defendants were diverse to it . . . [and plaintiff] should . . . be[ ] permitted to plead its allegations on the basis of information and belief." *Id.*; *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) ("[A] defendant's allegations of citizenship may be based solely on information and belief."). Accordingly, at this juncture, Plaintiff's complaint sufficiently alleges diversity of citizenship.

### ii. AMOUNT IN CONTROVERSY

Defendants argue that Plaintiff fails to meet the amount in controversy requirement. (*Id.* at 8-9). In asserting subject matter jurisdiction, Plaintiff alleges "the amount in controversy set forth in this Complaint exceeds $75,000, exclusive of costs." (Compl. ¶ 11). Defendants do not dispute the overall amount in controversy but assert that the amount in controversy must be met for each individual Name within a Syndicate. Defendants submit an affidavit attesting that the Name with the lowest percentage of risk would be liable for only $666.00 under the Policy, and "even if [Plaintiff] were to prevail on its bad faith claim and obtain extra-contractual damages and attorneys' fees," that Name would still fail to meet the $75,000 threshold. (Mot. at 9). Defendants argue that as a result of this several liability, the Names are the real parties to the controversy, as the "Names are individually contractually committed to the insured," and that Syndicates themselves do not have a contractual relationship with the Insured. (*Id.* at 5). Plaintiff refutes these claims, arguing the Policy language indicates the Syndicates, with no mention of Names, are severally liable, and that the Policy's General Conditions state the Policy embodies all agreements between Plaintiff and the Syndicates related to the Policy. (Opp'n at 9–10). Plaintiff cites to an out-of-circuit district case to support this argument. The crux of the

1  issue is whether the Court looks to the Names, as Defendants suggest, or to the Syndicates
2  together, as Plaintiff suggests, to determine the amount in controversy.

3       Plaintiff's argument that the Names are not mentioned in the Policy is unavailing as
4  Names are synonymous with Underwriters, and the Underwriters are mentioned
5  throughout the Policy. *Bonny v. Society of Lloyd's,* 3 F.3d 156, 158 (7th Cir. 1993)
6  ("Individuals invest in Lloyd's and thereby obtain the right to participate in Lloyd's
7  insurance underwriting syndicates by becoming an Underwriting Member (a 'Name').");
8  *Shell v. R.W. Sturge*, Ltd., 55 F.3d 1227, 1228 (6th Cir. 1995) (Lloyd's is "an insurance
9  marketplace in which individual Underwriting Members, or Names, join together in
10 syndicates to underwrite a particular type of business."); *Haynsworth v. The Corporation*,
11 121 F.3d 956, 958 (5th Cir. 1997) ("Lloyd's is a 300–year–old market in which individual
12 and corporate underwriters known as 'Names' underwrite insurance."); *Stamm v. Barclays
13 Bank of New York*, 153 F.3d 30, 31 (2d Cir. 1998) ("Syndicates . . . are aggregations of
14 Names, without separate legal status, through which Plaintiff underwrote certain of these
15 policies."); *Majestic Ins. Co. v. Allianz Intern. Ins. Co.*, 133 F. Supp. 2d 1218, 1219 (N.D.
16 Cal. Mar. 9, 2001) ("Lloyd's members are anonymous underwriters commonly referred to
17 as 'Names.' ").

18      Plaintiff's reliance on a case from the District of Texas is misplaced.  (*See* Opp'n at
19 10 (citing *Cronin v. State Farm Lloyds, No. CIV.A.H-08-1983*, 2008 WL 4649653, at *6
20 (S.D. Tex. Oct. 10, 2008)).  The court in *Cronin* distinguished between a Texas Lloyd's
21 plan and a traditional Lloyd's Syndicate based upon Texas state law. *Cronin v. State Farm
22 Lloyds, No. CIV.A.H-08-1983*, 2008 WL 4649653, at *6 (S.D. Tex. Oct. 10, 2008) (citing
23 *Gaunt v. Lloyds Am. of San Antonio*, 11 F. Supp. 787, 790 (W.D. Tex. 1935)).  The *Cronin*
24 court rejected plaintiff's argument that the Texas Lloyd's member underwriters bore
25 several liability, which made each individual underwriter the real parties in interest.
26 *Cronin*, 2008 WL 4649653, at *5-7.  The court determined the association was authorized
27 to sue or be sued under Texas state law, and "[the entity] is the only real party in interest,
28 and the minimum jurisdictional amount must only be established as to [the entity]." *Id.* at

*6. Plaintiff does not cite, and the Court cannot find, any cases within the Ninth Circuit to support the assertion that this Court should look to the association as a whole to meet the jurisdictional amount.

Although the Ninth Circuit Court of Appeals has not opined on whether the Names or the association as a whole should be considered to determine the amount in controversy, the Court has held that claims against multiple defendants who are only severally liable cannot be aggregated to satisfy the amount in controversy requirement. *See Libby, McNeill, and Libby v. City Nat'l. Bank*, 592 F.2d 504, 510 (9th Cir. 1978) ("[T]he tests for aggregating claims of one plaintiff against multiple defendants and of multiple plaintiffs against one defendant are 'essentially the same . . . : the plaintiff's claims against the defendants must be common and undivided so that the defendants' liability is joint and not several.' ") (quoting *United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 683 n.9 (9th Cir. 1976)). As such, the Court finds the amount in controversy must be met as to each Name, as supported by *Libby, McNeill, and Libby*, and in line with the Second Circuit and sister courts within this Circuit who have weighed in on the subject. *See Squibb I*, 160 F.3d at 933 (stating that the rule prohibiting aggregation of claims against severally liable defendants applies to claims against Names who subscribed to a Lloyd's policy, and that "each and every Name would still have to satisfy the jurisdictional amount."); *Hamilton v. Certain Underwriters at Lloyd's of London Syndicates No. 1206, 1183 and 5000*, Case No.: 3:14-CV-906-CAB-JLB, 2015 WL 12660417 (S.D. Cal. 2015); *Certain Underwriters at Lloyd's of London Subscribing to Policy No. FINFR 1001771 v. Commonwealth Int'l, Inc.*, No. 2:12-cv-824-ODW (JCx), 2012 WL 2328215, at *1 (C.D. Cal. Jun. 19, 2012); *Traveler's Indemnity Co. of Connecticut v. Pulte Group, Inc.*, Case No. LA CV18-08994 JAK (JPRx), 2019 WL 1915760 (C.D. Cal. 2019); *Zidell Marine Corp. v. Beneficial Fire and Cas. Ins. Co.*, No. C03–5131 RBL, 2003 WL 27176596, *4 (W.D. Wash. Dec. 4, 2003); *PHL Variable Ins. Co. v. Cont'l Cas. Co.*, No. 19-CV-06799-CRB, 2020 WL 1288454, at *3 (N.D. Cal. Mar. 18, 2020); *Certain Underwriters at Lloyd's of London Syndicates v. Travelers Indem. Co.*, No. C06-5238 RBL, 2006 WL 1896341, at *2 (W.D. Wash. July 7,

2006). Based on the declaration submitted by Defendants stating the Name with the lowest percentage of risk has an individual liability of 0.00037%, or $666.00, well below the $75,000 jurisdictional minimum, (Ross Decl. at ¶ 4), and Plaintiff's failure to rebut the affidavit, Plaintiff has not met its burden in establishing the Court's jurisdiction.

## C. JURISDICTIONAL DISCOVERY

Plaintiff seeks the opportunity to conduct jurisdictional discovery to ascertain the citizenship of Defendants' Names and to amend the complaint to preserve the Court's jurisdiction in the event the motion to dismiss is granted. (Opp'n at 17). Plaintiff cites to *Squibb I*, 160 F.3d 925, 939-40,[5] for the proposition that when a Lloyd's Name is sued in an individual capacity, the characteristics of that name are determinative for jurisdictional purposes. (*Id.*) Defendants assert that jurisdictional discovery is improper because the Court lacks authority to order discovery where it lacks jurisdiction. (Reply at 9).

The Ninth Circuit has not directly addressed the issue, and there is otherwise a jurisdictional split on the matter of whether an underwriter can be sued in an individual capacity. *See Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) ("[Plaintiff] can no more dismiss individual names than it could sue a partnership and 'dismiss' any partners who are citizens of Indiana. A syndicate is in or out as a unit."); *but see Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 864 (5th Cir. 2003); *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 (3d Cir. 1999); *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies* (*Squibb II*), 241 F.3d 154, 162 (2d Cir. 2001); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1087 (11th Cir. 2010).

---

[5] The Second Circuit in *Squibb I* found that *Carden* "applies only to formal entities created under state law, it does not apply in a Lloyd's context where no formal entity is a party to the suit. The *Squibb I* court was unconvinced that Syndicates are formal entities because '[t]he contractual provision that obligates a Name to abide by the judgment rendered against any other Name runs vertically between the insured and each Name, not horizontally from Name to Name.' " *Corfield*, 355 F.3d at 862 (citations omitted).

Defendants do not directly address the appropriateness of a Name being sued in an individual capacity. (*See* Reply at 8-9).

The Court adopts the view adopted by a majority of courts within this circuit, and asserted by Plaintiff, (Opp'n at 9-10), finding Lloyd's of London is an unincorporated association and the Names are the real parties in interest to the litigation. *See Certain Underwriters at Lloyd's London v. Raytheon Co.*, 2001 WL 1836268 (N.D. Cal. Dec. 4, 2001); *Those Certain Underwriters at Lloyd's of London v. Eugene Horton, LLC*, 2012 WL 1642208 *4, n. 2 (W.D. Wash. May 10, 2012); *Zidell*, 2003 WL 27176596, at *9; *Travelers Indem. Co.*, 2006 WL 1896341, *1 (W.D. Wash. Jul. 7, 2006); *see also Humm v. Lombard World Trade, Inc.*, 916 F. Supp. 291, 298 (S.D.N.Y. 1996) ("[T]he Names are the real parties in interest because they are severally liable for the syndicates' risk under the Policy."); *Certain Underwriters at Lloyd's, London v. R&B Investments, LLC*, 621 F. Supp. 3d 198, 202 (D. Mass. 2022) (Allowing plaintiff Lloyd's of London to substitute the sole corporate member of the lead syndicate in its individual capacity to maintain federal jurisdiction is "unreasonable and unnecessarily formalistic in light of the Underwriters' explicit concession that each Name will be bound by the outcome.").

The Court is not convinced that there is sufficient legal basis to maintain a suit against an individual Name independently from the Names in their totality as the real parties in interest, as neither Plaintiff nor Defendants substantively discuss the matter.[6] Accordingly, Plaintiff has not established that further discovery is warranted because no "pertinent facts bearing on the question of jurisdiction are controverted [n]or . . . a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation marks omitted).

---

[6]   *See Carden v. Arkoma Associates*, 494 U.S. 185, 195–96 (1990) ([W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members."); *Johnson v. Columbia Prop. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n unincorporated association ... has the citizenships of *all* of its members.") (emphasis added).

## IV.   CONCLUSION

Based on the foregoing analysis, Defendants Motion to Dismiss is **GRANTED,**[7] without prejudice.  Plaintiff may file an amended complaint within thirty days from the date of the Order.

**IT IS SO ORDERED.**

DATED: September 14, 2023

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

---

[7]     Despite the Court's finding, it is clear that Lloyd's abuses the ambiguity in the law as both a sword and shield to opt in or out of federal court.  *See e.g., LA Rest. Ass'n v. Certain Underwriters at Lloyd's, London*, 573 F. Supp. 3d 1054, 1057 (E.D. La. Nov. 23, 2021) ("Lloyd's argues that the lead underwriter of the policy, Beazley Underwriting Ltd. ('Beazley'), is the 'real party in interest' because a service-of-suit clause in the Lloyd's policy makes all subscribing underwriters liable for a judgment entered against Beazley, so its citizenship is all that matters."); *TIG Ins. Co. v. Lloyd's Syndicate Number 1861*, 2006 WL 8460111, *2 (N.D. Cal. 2006) (Lloyd's argues that the Names within the Syndicate are "not [the] real parties in interest and need not be considered in the diversity analysis. Defendants argue that only the lead underwriter of Syndicate 2020, [ . . . ], should be considered for diversity purposes."); *Advanced Sleep Ctr., Inc., v. Certain Underwriters at Lloyd's London*, Case No. 2:14-cv-00592-SM-DEK, 2015 WL 4097069, *3 (E.D. La. July 7, 2015) (The court states, "In its supplemental briefing, Lloyd's argues: 'While the citizenship of each of the members of the Syndicates is important for the purposes of determining the citizenship of the unincorporated associations; the members should not be considered with regard to the amount-in-controversy because the members are not parties to the lawsuit.' ")